# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

TRANSAMERICA LIFE INSURANCE )
COMPANY, WESTERN RESERVE LIFE )
ASSURANCE CO. OF OHIO, and )
TRANSAMERICA FINANCIAL LIFE )
INSURANCE COMPANY, )          CASE NO.:  1:06-CV-00110-MWB
                                                   )
      Plaintiffs/Counterclaim )
      Defendants )
                                                   )
vs. )
                                                   )
LINCOLN NATIONAL LIFE INSURANCE )          **LINCOLN'S RESISTANCE BRIEF TO**
COMPANY, )          **TRANSAMERICA'S MOTION TO STAY**
                                                   )
      Defendant/Counterclaim )
      Plaintiffs )

D. Randall Brown (IN #15127-49)
(randy.brown@btlaw.com)
Gary C. Furst (IN #19349-64)
(gary.furst@btlaw.com)
Carrie Marie Raver (IN #25257-49)
(carrie.raver@btlaw.com)
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, IN  46802
Telephone:  (260) 423-9440
Facsimile:  (260) 424-8316
*PRO HAC VICE*

Denny M. Dennis
(dennis.denny@bradshawlaw.com)
Todd A. Strother
(strother.todd@bradshawlaw.com)
BRADSHAW, FOWLER, PROCTOR &
 FAIRGRAVE, P.C.
Suite 3700
801 Grand Avenue
Des Moines, Iowa  50309-8004

## Table of Contents

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL HISTORY AND PROCEDURAL OVERVIEW ........................................... 3

    A.   Timeline of Pertinent Facts.................................................................................. 3
    B.   Transamerica has Known About the '201 Patent Prosecution Since Early 2005.... 3
    C.   Transamerica Made a Tactical Decision to File this Lawsuit the Same Day the
         '201 Patent Issued, Rather than Seek Re-Examination. .......................................... 4
    D.   Current Procedural History – Trial is in December of this Year and Discovery is
         Nearly Complete. ................................................................................................. 5
    E.   The Alleged Prior Art that is the Subject of Re-Examination is Duplicative of
         Transamerica's Own Alleged Prior Art................................................................. 5
    F.   The *Ex Parte* Re-examination Process Should Not be Allowed to Unduly Delay
         this Matter. ......................................................................................................... 7

III. ARGUMENT AND AUTHORITY ...................................................................... 8

    A.   The Court has Discretion to Deny Transamerica's Motion to Stay. ....................... 8
    B.   Staying the Litigation Would Be Highly Prejudicial to Lincoln. ........................ 11
    C.   The Re-examination Process Is Not Likely to Simplify Issues for this Court....... 15
    D.   Discovery Is Nearly Complete and a Trial Date Has Been Set. .......................... 18
    E.   The Court Should Deny Transamerica's Alternative Request to Continue
         the Trial Date and Extend the Discovery Deadlines............................................. 19

IV.  CONCLUSION................................................................................................ 20

## I.   INTRODUCTION

Defendant/Counterclaim Plaintiff, Lincoln National Life Insurance Company, files this Resistance Brief in opposition to Transamerica's motion to stay.   The Court should deny Transamerica's motion for several reasons.   First and foremost, Transamerica made the tactical decision to file this lawsuit.   Transamerica raced to the courthouse and initiated this declaratory judgment action on August 8, 2006 – the very same day the '201 Patent issued – seeking, among other things, to invalidate the patent based upon alleged prior art.   (Dkt. #1).   Transamerica fought to keep the matter in this forum over an earlier-filed action in Federal Court in Indiana (Dkt. #s 12-13, 16) and expressly chose this forum rather than seeking re-examination of the patent in the United States Patent & Trademark Office ("PTO"). Now, after two years of comprehensive discovery, hundreds of pages of briefing devoted to claim construction, receipt of the Court's 200 plus-page tentative Markman order, a full day Markman hearing followed by additional briefing, receipt of the Court's final Markman order, and with a September 2, 2008 summary judgment deadline and trial around the corner in December, Transamerica seeks to indefinitely stay this action in favor of an "anonymous" third-party's re-examination request.   Transamerica's stay motion makes no sense given its haste in filing this lawsuit and its conscious decision not to seek re-examination at any time since the '201 Patent issued.

Transamerica's motion also belies the very premise of its declaratory judgment action that a "cloud" is hanging over Transamerica's business given the "uncertainty" regarding Lincoln's infringement claims.   Now – only 105 days from trial – Transamerica seeks to slam the brakes on the litigation in favor of a re-examination filed by an "unknown" third party.   The current situation differs dramatically from the many cases cited by Transamerica when the accused infringer was a party to the litigation and sought re-examination.   Transamerica's current willingness to wait for months, if not years, and to turn over its invalidity argument to a process where neither it nor the requester has any substantive say in the re-examination proceeding cannot be reconciled with the judicial admissions in

its declaratory judgment complaint.  Transamerica's motion should be rejected as nothing more than an attempt to delay the proceedings.

Second, Lincoln will be unduly prejudiced by a stay.  Lincoln is the rightful owner of the '201 Patent and is entitled to pursue infringement claims against Transamerica.  Lincoln's infringement claims are ripe for resolution following the Court's detailed <u>Markman</u> order and many months of intense discovery.  Lincoln's ability to pursue those claims against Transamerica is especially strong here because Transamerica decided to initiate federal court proceedings, rather than seek a re-examination.  In light of Transamerica's actions and the prejudice to Lincoln, the balance of the equities favors that the case should proceed as scheduled.

Third, staying this matter will not simplify the case as Transamerica suggests.  There are two pieces of alleged prior art that are the subject of the re-examination.  One, the Golden Patent, was of record during prosecution of the '201 Patent and vetted both by the patent examiner and the full Board of Patent Appeals.  The second, a prospectus of a contract allegedly offered by AXA Equitable Life Insurance Company describes an embodiment of the Golden Patent that Equitable was considering to sell.  Transamerica itself relies upon a later version of the Equitable prospectus and the Golden Patent for purposes of its invalidity contentions.  Given the anticipated time period for re-examination (if the re-examination request is granted), efficiency will be promoted by the Court proceeding with this case as scheduled.

Transamerica's alternative request that the discovery and summary judgment deadlines be extended and trial be continued should likewise be denied.  Not only does Transamerica fail to properly apply the "good cause" standard to alter the Court's longstanding deadlines, its own actions again show that good cause cannot be met.  Just eight weeks ago, when jointly moving to extend certain deadlines due to the unfortunate flooding in Cedar Rapids, Transamerica expressly represented

that: "counsel for all parties state that they wish to keep the present trial date of December 2008." (<u>Dkt. #70</u>:   Mot. ¶ 7).   The only thing that has changed since then is an "unknown" party's re-examination request.   The discovery deadline has passed, summary judgment motions are due next week, and the trial preparation phase is underway.   Transamerica simply cannot show that the intervening re-examination request prevents Transamerica from meeting these deadlines.

## II.    FACTUAL HISTORY AND PROCEDURAL OVERVIEW

### A.    <u>Timeline of Pertinent Facts.</u>

The following timeline, which is explained in more detail below, highlights certain relevant facts surrounding Transamerica's motion and Lincoln's resistance:

| 2/1/05 | 7/28/06 | 8/4/06 | 8/8/06 | 3/10/08 | 8/15/08 | 12/8/08 |
|---|---|---|---|---|---|---|
| \ | \ | \ | \ | \ | \ | \ |
| Lincoln sends the then-pending '201 Patent App. to Trans. (<u>Ex. 1</u>) | Lincoln's counsel advises Trans. that '201 Patent will issue on August 8 (<u>Ex. 2</u>) | Lincoln's counsel provides '201 Patent file history to Trans. (<u>Ex. 3</u>) | '201 Patent issues and Transamerica files this action (<u>Dkt. #1</u>). | Court issues 213 page <u>Markman</u> Order (<u>Dkt. #64</u>) | Discovery closes (<u>Dkt. #71</u>). | Trial begins |

### B.    <u>Transamerica has Known About the '201 Patent Prosecution Since Early 2005.</u>

In early 2005, the parties explored licensing opportunities under the pending '201 patent application and U.S. Patent No. 6,611,815.[1]   On February 1, 2005, Lincoln's counsel sent Transamerica's counsel the specification of the then-pending '201 Patent application.   (<u>Ex. 1</u>:  2/1/05 Corresp.).   Prior to sending the patent application, the parties executed a confidentiality agreement so that the '201 specification and a related application could be provided to Transamerica.   (<u>Id.</u>). Transamerica acknowledges that it received the specification in its declaratory judgment complaint:

---

[1] The '815 Patent is the subject of the lawsuit pending in the Northern District of Indiana between the parties.  <u>See</u> 1:04-cv-396-JVB-RBC.

3

> LNL initially provided written notice to Plaintiffs of the existence of a Patent Application No. 09/406,290 covering a method for the administration of an annuity product. LNL also provided Plaintiffs with a copy of the specification portion of the patent application then pending before the United States Patent and Trademark Office.

(Dkt. # 1:  Trans. D.J. Compl. ¶ 14).

On July 28, 2006, Lincoln's counsel notified Transamerica's counsel that the '201 Patent would issue on August 8, 2006. The parties' respective counsel spoke by telephone on July 28, 2006 and briefly discussed the forthcoming issuance of the '201 Patent. Following this conversation, Lincoln's counsel sent Transamerica's counsel a letter enclosing a copy of the PTO's "Issue Notification." (Ex. 2: 7/28/06 Corresp., Dkt. #1:  Trans. D.J. Compl. ¶ 15 ("LNL advised that Patent Application No. 09/406,290 was subject to an issue notification . . . ").

**C.  Transamerica Made a Tactical Decision to File this Lawsuit the Same Day the '201 Patent Issued, Rather than Seek Re-Examination.**

After receiving the issue notification for the '201 Patent, Transamerica immediately prepared to file this lawsuit without notice to Lincoln. Indeed, the "Issue Notification" later became Exhibit "A" to Transamerica's complaint. Transamerica's complaint in this regard provides:

> Subsequently, by letter of July 28, 2006, LNL advised that Patent Application No. 09/406,290 was subject to an Issue Notification from the United States Patent and Trademark Office. The Issue Notification stated that Patent Application No. 09/406,290 would issue as US Patent No. 7,089,201 ('201 patent) on August 8, 2006. A copy of the Issue Notification is appended hereto as Exhibit A.

(Dkt. #1:  Trans. D.J. Compl. ¶ 15).

Racing to the Court and filing its complaint, Transamerica represented that it had standing because Lincoln provided '201 Patent information to Transamerica "under threat of patent infringement litigation and, further, in an attempt to have Plaintiffs enter into a license . . . ." (Id. at ¶ 18). Transamerica further represented to the Court that it needed the Court's assistance to resolve these issues and give it peace of mind:

> Plaintiffs hold a real and reasonable apprehension that each, individually or collectively, will be subject to patent infringement suit by LNL under the '201 patent.

(Id. ¶ 21).[2]

## D.    Current Procedural History – Trial is in December of this Year and Discovery is Nearly Complete.

Under the Court's scheduling order, as modified, discovery closed on August 15, 2008,[3] and trial begins on December 8, 2008.  (Dkt.# 71).  In addition, the dispositive motion deadline is a mere six (6) days away (September 2, 2008) from the hearing date on the stay motion.  (Id. ¶ 3).  Given the advanced stages of the case, the parties have each produced/exchanged hundreds of thousands of pages of documents and served numerous sets of discovery.  The parties have also conducted over 30 depositions in this matter and in the co-pending Indiana patent litigation.  (See N.D. Ind. Case No. 1:04-cv-396-JVB-RBC).  Countless hours were spent by the parties and the Court on claim construction issues resulting in a 213-page Markman Order issued March 10, 2008.  (Dkt. #64).

## E.    The Alleged Prior Art that is the Subject of Re-Examination is Duplicative of Transamerica's Own Alleged Prior Art.

The third-party request for re-examination was submitted to the PTO on July 30, 2008.  The two references that are the subject of the request for examination are U.S. Patent No. 5,933,815 issued to Jerome Golden and an alleged Equitable Prospectus for an annuity contract that is based on the Golden Patent.  On August 7, 2008, Transamerica filed a notice and tendered to the Court the third-party request for re-examination.  (Dkt. #72).  In its brief, Transamerica writes:

> Transamerica's counsel was not involved in the filing of the Request.  **To counsel's knowledge**, Transamerica itself also played no role in the filing of the Request.

---

[2] See Missouri Housing Dev. Comm'n v. Brice, 919 F.2d 1306, 314 (8th Cir. 1990) (holding that admissions in the pleadings were binding despite the fact that the admitting party later produced evidence contrary to those admissions); Fox Sports Net North, L.L.C. v. Minnesota Twins Partnership, 319 F.3d 329, 335 n.4 (8th Cir. 2003) (noting the admissions in the complaint are binding, and arguments to the contrary are viewed in "an unpersuasive light").

[3] Per the parties' agreement, only one deposition remains to be completed.  Lincoln has agreed to make a named inventor who was deposed in the Indiana action available for a second deposition.

(Dkt. #73-2:  Trans. Br. at 14-15) (emphasis added).  Transamerica, in essence, is silent as to whether it played a role in preparing, reviewing, or filing the re-examination request.[4]

The alleged prior art upon which the "third party" relies duplicates Transamerica's alleged prior art.  Indeed, Transamerica has known about this alleged prior art no later than October 15, 2007, when Transamerica identified the Equitable prospectus and Golden Patent in its supplemental interrogatory answer.  (Ex. 4:  Excerpt from Trans. Supp. Interr. Ans. No. 9).  Transamerica has also recently tendered its prior art statement pursuant to the Court's scheduling order and again relies upon the Golden Patent and an Equitable prospectus for alleged prior art purposes.[5]  (Ex. 5:  Trans. Prior Art State.).

In addition to the duplicative nature of the alleged prior art that is the subject of the re-examination and Transamerica's alleged prior art statement, the Golden Patent was extensively cited by the Patent Examiner during prosecution of the '201 Patent.  (Ex. 6:  '201 File Hist. Excerpt).  Lincoln further believes that the Equitable Prospectus will not have any impact upon the claims of the '201 Patent as issued because the prospectus merely implements the Golden Patent.   Indeed, the Golden Patent is assigned to Equitable, and when describing the invention provides, in part, that "the client provides the assets to an insurance company, such as the inventor's assignee The Equitable Life Assurance Society of the United States . . . ."  (Golden Patent at 7, col. 7, lns. 2-7)

---

[4] It is clear that the "unknown" party has communicated with Transamerica.  According to the PTO's website, the re-examination request has not yet been docketed and is not yet "public" knowledge.  (Ex. 9:  PTO Transaction Hist. for '201 Patent).  However, Transamerica filed a notice with this Court about the re-examination on August 7, 2008.  The burden is squarely upon Transamerica to confirm whether it had any knowledge about or involvement in the re-examination request.  During the recent Rule 30(b)(6) deposition of Transamerica, however, Transamerica's counsel refused to allow the corporate designee to testify about Transamerica's communications with third parties about the validity of the '201 Patent or whether Transamerica has entered into any joint defense agreements with third parties.

[5] Transamerica's version of the Equitable Prospectus is dated 1996, rather than 1995 as set forth in the re-examination request.

**F.    The *Ex Parte* Re-examination Process Should Not be Allowed to Unduly Delay this Matter.**

Any person at any time may file an *ex parte* re-examination request.  35 U.S.C. § 301.  The re-examination proceeding is limited to patents and printed publications.   Id..   For the Court's convenience, flow charts showing the re-examination process are attached as Exhibit 7.   Upon receiving a request for re-examination, the PTO must determine whether "a substantial new question of patentability" affecting any claim has been raised.   See 37 CFR § 1.510(b)(1).   This threshold determination is supposed to occur within three months from the re-examine request's filing date.  See 37 CFR § 1.515.  In the event a decision is made to re-examine, the patent owner has two months to file an optional statement pointing out why the claims are believed to be patentable.  37 CFR § 1.530. If the patent owner files such a statement, the requester has two months to file a reply.  Both the patent owner's statement and requester's reply are considered by the Patent Examiner when preparing the first office action.  The first office action should be mailed within six weeks after the requestor's due date for filing the reply (or the deadline for the statement if no statement is filed).  Thus, the Patent Examiner may not mail the first office action until over eight months (3 months + 2 months + 2 months + 6 weeks) after the requestor's filing date.

Here, the re-examination request was filed on July 30, 2008.  In short, the procedure described above means that even if the PTO accepts the re-examination request, an initial office action will not be received until mid-2009, or months after the scheduled trial in this matter.

Moreover, the procedure after the first office action will be time consuming.  In the first office action, the Patent Examiner could determine that some or all the claims are patentable.  If not, the Examiner could initially reject one or more claims.  At that point, the patent owner would have two months to respond.  See Manual of Patent Examining Procedure ("MPEP"), at Section 2263.[6]   The

---

[6] If litigation is stayed for purposes of the re-examination, this deadline is one month.

examiner will then have at least one month to consider the response and either accept the claims or issue another office action.  This process can be repeated.  If the Patent Examiner determines the claims are not patentable, the patent owner can appeal to the Patent Board of Appeals.  The appeal involves a briefing by both the Patent Examiner and the patent owner over a period of months. Typically, several months elapses before the Board renders a decision.  If the Board affirms the Patent Examiner's rejections, the patent owner may file an appeal with the Federal Circuit Court of Appeals. Several months (if not a year or more) could go by prior to a decision by the Federal Circuit. Accordingly, it could take several years for the re-examination proceeding to fully play out.  On average, the re-examination time period alone is a full two years.  (Ex. 8:  PTO *Ex Parte* Re-Exam. Filing Data – 12/31/07, ¶7).

### III.   ARGUMENT AND AUTHORITY

**A.   The Court has Discretion to Deny Transamerica's Motion to Stay.**

Contrary to Transamerica's suggestion, the law does not mandate this matter be stayed.  Indeed, all of the decisions cited by Transamerica (except for one) are easily distinguished because the party seeking the stay was **not** the accused infringer who filed a declaratory judgment action.[7]  It is well recognized that this Court has the inherent power to "control disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936); Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing Landis for the proposition that district courts have the inherent power to "manage their dockets and stay proceedings").  "The power to stay proceedings call for 'an exercise of a sound discretion. . . .  If

---

[7] The only decision cited by Transamerica in which an accused infringer filed a declaratory judgment and also sought to stay the action is Network Appliance v. Sun Microsystem, 2008 WL 2168917 (N.D. Cal. 2008).  There, however, the declaratory judgment plaintiff/accused infringer was also a patent owner who was also asserting infringement claims. In other words, Network Appliance and Sun Microsystems were competitors with competing patent portfolios.  Moreover, the patents subject to re-examination were those owned by the plaintiff, Network Appliance, and not those subject to the declaratory judgment action brought by the plaintiff.

there is even a 'fair possibility' that the stay will harm another party, the party seeking a stay must make out a 'clear case of hardship or inequity in being required to go forward.'" George Kessel Int'l Inc. v. Classic Wholesale, Inc., 544 F. Supp. 2d 911, 912-13 (D. Az. 2008) (quotation omitted).

Numerous courts have denied motions to stay and "[a] court is under no obligation to delay its own proceeding by yielding to ongoing PTO patent re-examinations, regardless of their relevancy to infringement claims which the court must analyze." NPT, Inc. v. Research In Motion, Ltd., 397 F. Supp. 2d 785, 787 (E.D.Va. 2005) (citing Viskase Corp. v. Am. Nat'l Can Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("The [district] court is not required to stay judicial resolution in view of the [PTO] re-examinations."); see also Viskase Corp. v. Am. Nat'l Can Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001) (finding that the district court did not abuse its discretion by denying the motion for stay); Hoechst Celanese Corp. v. BP Chem. Ltd., 78 F.3d 1575, 1584 (Fed. Cir. 1996) (affirming the district court's decision to deny a motion for stay when the trial was set to begin in six months); Ecolab, Inc. v. FMC Corp., 2007 WL 1582677, *3 (D. Minn. 2007) (denying the motion for stay and suspecting a tactical reason for the moving party seeking a stay and re-examination given that the moving party chose not to seek a re-examination upon learning of the prior art references); Ariad Pharms., Inc. v. Eli Lilly & Co., 2005 WL 1342721, *1 (D. Mass. 2005) (denying motion for stay based on belief that a delay would be prejudicial to the patentee); Cognex Corp. v. Nat'l Instruments Corp., 2001 WL 34368283, *1 (D. Del. 2001) (denying stay motion); Freeman v. Minnesota Mining & Mfg. Co., 661 F. Supp. 886, 887 (D. Del. 1987) (stating that the district court litigation would proceed despite a PTO re-examination); Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999) (denying motion for stay as prejudicial because the case was pending for two years and substantial discovery had been completed); Toro Co. v. L.R. Nelson Corp., 1984 U.S. Dist. LEXIS 24816, *4-6 (C.D. Ill. 1984) (denying a motion for stay due to the late stage of litigation and the presence of summary judgment motions that would

may be dispositive of the validity issues); Gladish v. Tyco Toys, Inc., 1993 WL 625509, *3 (E.D. Cal. 1993) (denying the plaintiff's motion for stay while noting that the plaintiff was long aware of the prior art references and chose the district court forum); Wayne Automation Corp. v. R.A. Pearson Co., 782 F. Supp. 516, 519-20 (E.D. Wa. 1991) (denying the motion for stay given prejudice on the nonmoving party because of the likely length of the delay, discovery being nearly complete, and the trial date being set); Enprotech Corp. v. Autotech Corp., 1990 WL 37217, *1-2 (N.D. Ill. 1990) (denying motion for stay finding "[m]ost compelling . . . the fact that discovery here is almost complete and the case is set for trial.").

In determining whether to grant a stay motion, district courts consider the following three factors:  (1) whether a stay unduly prejudices or creates a tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues; and (3) whether discovery is complete and whether a trial date has been set.  Xerox Corp., 69 F. Supp. 2d at 406-07.  These three factors, when properly analyzed, demonstrate that Transamerica's motion should be denied.  In analyzing these factors, Transamerica, in essence, ignores the advanced nature of this case, underestimates the prejudice to Lincoln, and overestimates the re-examination's ability to simplify issues for this Court.  It would be highly prejudicial to Lincoln to have this case come to a screeching halt after substantial time and effort has been spent on discovery and having had the Court engage in a substantial amount of work by, for example, issuing a claim construction order.  Lincoln is a rightful patent owner of the '201 Patent and is entitled to pursue infringement claims against those who infringe its patent rights.  As explained in greater detail below, the more likely result of the re-examination is not a simplification of the issues, but rather the same or a more complex case.  With trial 105 days away, the practical reality is that this Court will be fully ready to resolve the dispute between the parties, whereas re-examination

proceedings may not be resolved for years. These factors warrant a denial of Transamerica's motion for stay.

**B.**     **Staying the Litigation Would Be Highly Prejudicial to Lincoln.**

A statistic conveniently left out by Transamerica is that, on average, a re-examination takes 24 months or two years. (Ex. 8: PTO *Ex Parte* Re-Exam Filing Data - 12/31/2007, ¶ 7); see also In re Columbia Univ. Patent Litig., 330 F. Supp. 2d 12, 16 (D. Mass. 2004) (denying a motion to stay pending re-examination that at that time on average would take 21 months). Therefore, despite the fact that the re-examination statutes call for re-examinations to be processed under "special dispatch," the practical reality is that re-examination process may take years. Moreover, resolution of a re-examination may be extended for even longer with appeals first to the Board of Patent Appeals and Interference and then to the Federal Circuit. See NPT, Inc. v. Research In Motion, Ltd., 397 F. Supp. 2d 785, 788 (E.D. Va. 2005) (denying a motion for stay and stating, "Reality and past experience dictate that several years might very well pass from the time when a final office action is issued by the PTO to when the claims are finally and officially 'confirmed' after appeals."); Lexington Lasercomb I.P.A.G. v. GMR Prods., Inc., 442 F. Supp. 2d 1277, 1278 (S.D. Fla. 2006) (denying a stay because "a stay of this action could result in an [sic.] delay of months, if not years."). A stay dragging on for years is the practical reality, and would be highly prejudicial to Lincoln. District courts have routinely denied motions for stay in light of such substantial delays because such delays are prejudicial. See, e.g., George Kessel Int'l Inc., 544 F. Supp. 2d at 913 ("[T]he Court is reluctant to issue a stay of indefinite length."); Am. Ceramicraft, Inc., 1993 U.S. Dist. LEXIS 19950 at *27 ("The re-examination is not likely to settle the controversy over the [patent at issue] any time in the near future, and hence Plaintiffs' need for declaratory judgment remains very much alive."). Prejudice to Lincoln is especially apparent here with discovery nearly complete, summary judgment motions to be filed by September 2, 2008, and a December 2008 trial date. Wayne Automation Corp., 782 F. Supp. at 519-20 (denying the

motion for stay given prejudice on the nonmoving party because of the likely length of the delay, discovery being nearly complete, and the trial date being set).

Lincoln also has the right for this Court to hear and address its counterclaim of patent infringement.  As the patent holder, Lincoln has rights to exclude others from practicing the invention of the '201 Patent.  This point cannot be minimized or overlooked.  See NPT, Inc., 397 F. Supp. 2d at 788 ("[T]he essence of patent protection is that a party legally deemed to have infringed one or more patents shall be liable to the patent holder for damages."); George Kessel Int'l Inc., 544 F. Supp. 2d at 913 (noting that a stay would prejudice the patentee by allowing the alleged infringement to continue indefinitely); Soverain Software LLC v. Amazon.com, Inc., 356 F. Supp. 2d 660, 663 (E.D. Tx. 2005) (denying motion for stay given that a stay would prejudice the non-moving party's ability to protect its property rights).

Moreover, this Court has the opportunity to reach a decision as to the validity of the '201 Patent first.  In fact, the alleged new question of patentability in the third party's re-examination request is likely to be essentially identical to Transamerica's invalidity arguments.  As set forth above, the only difference between the alleged prior art that is the subject of the re-examination request and Transamerica's Equitable prospectus is that Transamerica's copy is dated 1996, not 1995.  If the Court determines that Transamerica does not infringe or that the '201 Patent is invalid, then the case is over. Another district court in a future proceeding, or the PTO upon re-examination, may determine that the claims of the '201 Patent are invalid.  This situation exists in every case involving a patentee in an industry with multiple infringers.  This is also the situation that any party found to infringe a valid patent faces from subsequent litigations involving the same patent claim(s).  A patentee may obtain a finding that its patent is not invalid and infringed in one lawsuit only to have another court subsequently deem the very same patent claims invalid.  If a stay were granted in every such situation,

justice would be effectively denied to the patentee.  Therefore, the possibility that the PTO may find certain claims of the '201 invalid possibly years from now does not warrant a stay.  This is particularly true given the late stage of this litigation and the investments made by both parties and this Court.

"If there is even a 'fair possibility' that the stay will harm another party, the party seeking a stay must make out a 'clear case of hardship or inequity in being required to go forward.'"  <u>George Kessel Int'l Inc.</u>, 544 F. Supp. 2d at 912-13 (quoting <u>CMAX, Inc. v. Hall</u>, 300 F.2d 265, 269 (9th Cir. 1962)) (emphasis added).  Transamerica does not face hardships in moving forward.  First, and significantly, Transamerica initiated this declaratory judgment action to promptly eliminate or remove uncertainty concerning their products and/or the validity of a patent.  <u>See</u> <u>In re Columbia University Patent Litig.</u>, 330 F. Supp. 2d 12, 17 (denying the motion to stay pending the PTO's re-examination while noting, "Eliminating this uncertainty is the very reason that the plaintiffs brought these declaratory judgment actions.").  Transamerica chose to initiate this lawsuit and continue this lawsuit rather than initiate its own re-examination of the '201 Patent, when they certainly had the option to do so.

Second, by initiating the lawsuit, Transamerica does not have any financial hardship concerns in pursuing its litigation.  Transamerica, a large insurance company, has not indicated any financial hardships in continuing the litigation.  Lincoln, the party facing the expenses of litigating and possibly responding to the PTO re-examination, stands ready to defend its patent and to pursue its rights against the infringers.

Third, Transamerica has known about both pieces of prior art that form the basis of the request for re-examination for months.  Indeed, Transamerica cited both to the Golden Patent and the Equitable prospectus in its October 15, 2007, supplemental answer to Lincoln's Interrogatory No. 9. (<u>Ex. 4</u>:  Excerpt from Trans. Supp. Interr. Ans. No. 9).  Through this interrogatory, Lincoln sought the basis for Transamerica's invalidity defenses and Transamerica cited the reference at issue in the re-

examination request.  Despite being aware of the prior art references, and aware of their ability to request re-examination, Transamerica continued to pursue the alleged invalidity of the '201 Patent through this forum and does not (because it cannot) allege that the art that is the subject of the re-examination request has recently surfaced.  See Ariad Pharms., Inc. v. Eli Lilly & Co., 2005 WL 1342721, *1 (D. Mass. 2005) (denying a motion to stay based on the court's skepticism that the "prior art relied upon has only recently surfaced" and finding that "delaying resolution of this dispute is likely to be far more prejudicial to plaintiff than moving ahead will be for defendant.").

In fact, Transamerica's request to indefinitely stay this litigation is unusual for a declaratory judgment plaintiff.  By seeking to indefinitely stay this litigation, Transamerica will subject themselves to ever-increasing liability and a period of uncertainty that is likely to extend for years.  See Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC, 464 F. Supp. 2d 481, 483-86 (D. Md. 2006) (denying the motion for stay and noting the prejudice to the alleged infringer for having to continue to operate without knowing whether its activities will subject them to patent infringement liability).

Transamerica's request for a stay suggests that it is using a third party's request for re-examination to their tactical advantage, i.e., to delay the final deadlines of summary judgment and the trial set by this Court.  See Ecolab, Inc., v. FMC Corp., 2007 WL 1582677, *3 (D. Minn. 2007) (denying the motion for stay and suspecting a tactical reason for the moving party seeking a stay and re-examination based on the moving party choosing not seek a re-examination upon learning of the prior art references and waiting until after it received unfavorable summary judgment results).  As noted above, the filing of this lawsuit was Transamerica's decision.  Even though Transamerica has had the opportunity and right to request a re-examination of the '201 Patent's claims, they have chosen not to.  However, now having received the Court's claim construction order and with summary judgment

deadlines looming, Transamerica seeks to stay this case.  If Transamerica is using the request for re-examination to their tactical advantage, then that cuts against a stay.  Id.

Lincoln intends to vigorously defend the '201 Patent during the re-examination.  Should Lincoln receive an unfavorable result at the PTO, it intends to utilize all its options for appeal, including appeals to the Board of Patent Appeals and Interferences and the Federal Circuit.  To borrow a phrase used by another district court, "the ['201 patent] is far from dead."  Am. Ceramicraft, Inc., 1993 U.S. Dist. LEXIS 19950 at *27 (denying for a second time a motion for stay based on the unlikelihood of the re-examination resolving issues of validity "any time in the near future" and "[a]s long as the validity of the [patent at issue] remains in doubt, none of the parties here can put this matter behind them and go about the business of manufacturing and selling minilights.").  Therefore, given the immense amount of resources already spent by Transamerica and Lincoln and this Court, the fact that the case is a mere three months from trial, and the re-examination has yet to be even granted, it is best for the case to proceed forward to resolution.

## C.    The Re-examination Process Is Not Likely to Simplify Issues for this Court.

Contrary to Transamerica's assertion, the re-examination proceeding is not destined to reduce this Court's burden.  (Dkt. #73-2:  Trans. Br. at 9).  In fact, it is just as likely (or more likely) to maintain or increase the complexity of the case.  Given the weakness of the prior art references included in the request for re-examination, this Court faces the very realistic possibility that no changes will be made to the '201 Patent or changes to the claims will not remove Transamerica's infringing products from still falling within the scope of one or more of the claims.[8]  In two possible outcomes, this Court, which is only a few months away from trial, will likely have to refamiliarize itself with all

_____

[8] As discussed above, the two references submitted in the request for re-examination are the Golden Patent and an Equitable prospectus.  The Golden Patent was extensively addressed during the prosecution of the '201 Patent.  (Ex. 6:  '201 File Hist. Excerpt).  The Equitable reference is a prospectus for a contract, which represents a commercial embodiment of the Golden Patent.

of issues that are presently fresh within the Court's mind. In such a situation the case has not been simplified by the re-examination.

To the extent Transamerica presents the statistic that there is a "70% likelihood that the re-examination proceeding will result in cancellation or modification of the claims" to imply that there is a 70% chance no claims will remain after the re-examination, it is disingenuous. (Dkt. #73-2: Trans. Br. at 14). A complete cancellation of the '201 Patent's claims would surely simplify this case. However, the likelihood of the PTO canceling all the claims is 12%. (Ex. 8: *Ex Parte* Re-Exam. Filing Data - 12/31/07, ¶8). The district court, in Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC, recognized that it was highly unlikely that the patent claims would be cancelled. See also Soverain Software LLC v. Amazon.com, Inc., 356 F. Supp. 2d 660, 662 (E.D. Tx. 2005) (denying the motion for stay noting that the case was not likely to be substantially simplified given that claims are canceled in only 12% of re-examinations). Therefore, it is more likely that this Court will have returned to it claims to analyze. Akzenta Paneele + Profile GmbH, 464 F. Supp. 2d at 483-86 (noting that "even after re-examination, invalidity will continue to be an issue so a stay would not preserve many resources."); see also IMAX Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005) (denying the motion for stay "[b]ecause even after the re-examination, invalidity would continue to be an issue (unless all claims were cancelled), a stay would not preserve many resources.") (citations omitted).

If, as Transamerica suggests, one or more claims are amended, the result of re-examination may be an increase in complication to this district court litigation. With surviving amended claims, this Court may then have the additional burden of having to determine whether the scope of the re-examined claims have been substantively changed from the original claims. This analysis will be required to determine whether Transamerica's infringement liability extends from the original issue

date of the '201 Patent or from the issuance of the re-examined patent.  Tennant Co. v. Hako Minuteman, Inc., 878 F.2d 1413, 1417 (Fed. Cir. 1989) (examining, for purposes of determining infringement liability from the original date of a patent's issuance, whether a re-examination amendment from "moveable first wall section" to "moveable first bottom wall section" was "without substantive change or are legally 'identical' to the claims in the original patent.").  In other words, this Court will have to engage in another round of briefing and oral argument similar to the claim construction process now completed.  Certainly, in such a situation, this district court proceeding will not be simplified by the re-examination, but will instead, be complicated by it.

Transamerica suggests that even if claims survive the re-examination and are returned back to this Court, this Court is better off because "the PTO proceeding would be instructive."  (Dkt. #73-2: Trans. Br. at 15).[9]  Transamerica's suggestion, however, undervalues the strength and advantages presented by litigation in this Court.  Indeed, these very strengths prompted Transamerica to file this lawsuit in the first place.  District courts may consider a wider range and types of evidence and arguments.  In re Columbia Patent Litig., 330 F. Supp. 2d at 15-16 (citing Manual of Patent Examining Procedure § 2216 ("Question relating to grounds of rejections other than those based on prior art patents or printed publications should not be included in the request [for re-examination] and will not be considered by the examiner if included.")).  In district court litigations, the parties engage in a process "far more adversarial than re-examination and reissue proceedings before the PTO."  Id. at 16 (citing MPEP § 1901.07 and 37 C.F.R. § 1.550(g) (discussing the limited involvement of the re-examination request and third parties)).  "Therefore, judicial proceedings have a significant advantage in reaching a correct result."  Id.

---

[9] Transamerica's argument in this regard is double talk.  Transamerica has not conceded that the claims are patentable over the Golden Patent that was "of record" during the '201 Patent prosecution.  Rest assured, if the claims are allowed a second time over Golden, Transamerica will maintain its invalidity argument.

In addition to capable counsel for Transamerica and Lincoln providing their evidence and arguments for their respective positions, this Court will have the advantage of having already gone through the claim construction process, which serves as the foundation for the validity and infringement analysis. Because of the late stage of this litigation, any benefits obtained by receiving a decision from the PTO, and possibly the Board of Patent Appeals and Interferences and/or the Federal Circuit is substantially minimized by the district court process and the extended time this Court would likely have to wait for such a decision. The Court should deny Transamerica's motion.

**D.      Discovery Is Nearly Complete and a Trial Date Has Been Set.**

The third factor weighs heavily in Lincoln's favor. Discovery is nearly complete. The parties have served numerous interrogatories, over 125 document requests, and several requests for admission. The parties have exchanged many hundreds of thousands of pages of documents. The parties have taken over 30 depositions in this case and in the related Indiana litigation involving the same parties. The parties have served multiple expert reports. Simply put, discovery has been extensive and the parties have spent a considerable amount of time and money.

The parties have already engaged in and completed claim construction briefing. The Court expended great resources and energy in arriving at a claim construction order, which sets the foundation for both the infringement and validity portions trial. Remington Arms Co. v. Modern Muzzleloading, Inc., 1998 WL 1037920, *1-2 (M.D.N.C. 1998) (denying the motion for stay and finding that a stay would result in "a waste of time and judicial resources" when "considerable monies" that have already been spent on discovery and dispositive motions); see also Wayne Automation Corp., 782 F. Supp. at 519 (denying the motion for stay in part on the extensive discovery conducted and a trial date having been set); Enprotech Corp. v. Autotech Corp., 1990 WL 37217, *1-*2 (N.D. Ill. 1990) (denying motion for stay finding "[m]ost compelling . . . the fact that discovery here is almost complete and the case is set for trial."); Toro Co. v. L.R. Nelson Corp., 1984 U.S. Dist. LEXIS 24816, *4-*6

(C.D. Ill. 1984) (denying a motion for stay due to the late stage of litigation and the presence of summary judgment motions that would may be dispositive of the validity issues).

Finally, this Court has already set a trial date of December 8, 2008.  <u>Soverain Software LLC v. Amazon.com, Inc.</u>, 356 F. Supp. 2d 660, 663 (E.D. Tx. 2005) ("[T]he Court places great importance on going to trial on the date set in the scheduling order unless extraordinary circumstances arise.  The Court does not believe that re-examination is necessarily such an extraordinary circumstance in this patent case.").  The third factor weighs heavily in favor of denying the motion for stay.

**E.** **The Court Should Deny Transamerica's Alternative Request to Continue the Trial Date and Extend the Discovery Deadlines.**

"Modifying a schedule requires 'a showing of good cause'" under Rule 16.  <u>Saul v. Dominiack</u>, 2007 WL 2682526, at *2 (N.D. Iowa 2007) (quoting Fed. R. Civ. P. 16(b)).  "'The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements.'"  <u>Saul</u>, 2007 WL 2682526 at *2 (quoting <u>Rahn v. Hawkins</u>, 464 F.3d 813, 822 (8th Cir. 2006)).  "Rule 16(b) analysis does not focus on the prejudice to the non-moving party, but rather on the showing of good cause and diligence of the moving party."  <u>Metro Produce Distributors, Inc. v. City of Minneapolis</u>, 473 F. Supp. 2d 955, 964 (D. Minn. 2007).

Transamerica has not properly applied the "good cause" standard.  Transamerica makes no argument regarding why it cannot meet the existing summary judgment deadline or why discovery should be extended because of the re-examination request.  Transamerica has set forth no reason, let alone a showing of good cause, as to why these deadlines could not have been met if its counsel were to act diligent.  <u>See Bruckelmyer v. Ground Heaters, Inc.</u>, 2003 WL 21524741, at *2 (D. Minn. 2003) (denying a motion to stay discovery until dispositive motions were decided reasoning in part that "if, as the Defendants now proclaim, justice required the type of stay that they now seek, we find it implausible that they would not have earlier sought Court intervention to accomplish that result.").

Indeed, Transamerica recently represented to the Court that it desired "to keep the present trial date" in

a joint motion. (Dkt. #70: Mot., ¶7). The intervening re-examination request simply could not have

impacted the diligence of Transamerica's counsel, especially if the request was filed by an "unknown"

third party.

## IV.   CONCLUSION

For the reasons contained in Lincoln's resistance brief, the Court should deny Transamerica's

motion in its entirety.

Respectfully submitted,


_s/ Gary C. Furst_____
D. Randall Brown (IN #15127-49)
(randy.brown@btlaw.com)
Gary C. Furst (IN #19349-64)
(gary.furst@btlaw.com)
Carrie Marie Raver (IN #25257-49)
(carrie.raver@btlaw.com)
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, IN  46802
Telephone:  (260) 423-9440
Facsimile:  (260) 424-8316
*PRO HAC VICE*

Denny M. Dennis
(dennis.denny@bradshawlaw.com)
Todd A. Strother
(strother.todd@bradshawlaw.com)
BRADSHAW, FOWLER, PROCTOR &
  FAIRGRAVE, P.C.
Suite 3700
801 Grand Avenue
Des Moines, Iowa  50309-8004

ATTORNEYS FOR THE
DEFENDANT/COUNTERCLAIMANT,
LINCOLN NATIONAL LIFE INSURANCE
COMPANY

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the above and foregoing document has been served this 25th day of August 2008, via electronic mail and via United States mail and addressed to the following counsel of record:

Glenn Johnson, Esquire
Sarah J. Gayer, Esquire
Kevin H. Collins, Esquire
SHUTTLEWORTH & INGERSOLL, P.L.C.
500 U.S. Bank Building
P.O. Box 2107
Cedar Rapids, IA  52406

*s/ Gary C. Furst*
Gary C. Furst

FWDS01 DRB 233883v1

21