# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, WESTERN RESERVE LIFE ASSURANCE CO. OF OHIO, and TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, | ) ) ) ) ) | CASE NO.: 1:06-CV-00110-MWB |
| Plaintiffs/ Counterclaim Defendants, | ) ) ) ) | |
| vs. | ) ) ) | **LINCOLN'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE DAVID R. CLEVELAND'S OPINIONS FOR** |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) ) ) ) | **SUMMARY JUDGMENT PURPOSES AND MOTION IN LIMINE NO. 1** |
| Defendant/Counterclaim Plaintiff. | ) ) | **TO EXCLUDE CLEVELAND FROM TESTIFYING AT TRIAL** |

D. Randall Brown (IN #15127-49)
(randy.brown@btlaw.com)
Gary C. Furst (IN #19349-64)
(gary.furst@btlaw.com)
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, IN  46802
Telephone:  (260) 423-9440
Facsimile:  (260) 424-8316
*PRO HAC VICE*

Denny M. Dennis
Todd A. Strother
BRADSHAW, FOWLER, PROCTOR &
  FAIRGRAVE, P.C.
Suite 3700
801 Grand Avenue
Des Moines, Iowa  50309-8004

ATTORNEYS FOR LINCOLN
NATIONAL LIFE INSURANCE
COMPANY

**Table of Contents**

Page

I.  INTRODUCTION ................................................................................................ 1

II. FACTUAL OVERVIEW ...................................................................................... 2

    A.  An Overview of Cleveland's Report and Opinions. ...................................................... 2

    B.  Cleveland is a Patent Lawyer, who has No Knowledge, Skill, Training,
        or Education Relevant to Annuities, the Administration of Annuities, or Financial
        Services Generally. ...................................................................................................... 3

    C.  Cleveland did not View the Written Description and New Matter Requirement
        from the Vantage Point of One Skilled in the Art. ....................................................... 6

III. ARGUMENT AND AUTHORITY ......................................................................... 7

    A.  Standard for Expert Qualifications Under Rule 702. .................................................... 7

    B.  The Court Should Disregard Cleveland's Opinions in Their Entirety and
        Exclude Him from Trial Because His Opinions are Inherently Unreliable as
        He Did Not (and Could not) Consider the '201 Patent from the Perspective of
        One of Ordinary Skill. .................................................................................................. 9

        1.  Transamerica's Written Description and New Matter Defenses Must be
            Viewed from the Vantage Point of One of Ordinary Skill in the Art. .................. 9

        2.  Neither Cleveland nor His Report Address the Ordinary Skill in the Relevant
            Art. ..................................................................................................................... 10

    C.  The Court Should Exclude Cleveland from Testifying and Disregard His
        Opinions in Their Entirety Because He Fails to Satisfy Rule 702. .............................. 13

    D.  Alternatively the Court Should Exclude Cleveland from Testifying at Trial
        Under Rule 403. ......................................................................................................... 16

IV. CONCLUSION .................................................................................................... 17

## I.      INTRODUCTION

The patent owner, Lincoln National Life Insurance Company ("Lincoln"), by counsel, files this Brief in support of its motion to exclude David R. Cleveland's (Transamerica's designated expert) opinions for all purposes.  Lincoln specifically requests: (1) that the Court disregard Cleveland's report (*APP 1652-1676* and *APP 1918-1942 (EX. DD)*)[1] when considering Transamerica's summary judgment motion, and (2) that the Court further preclude him from testifying at trial.  Transamerica has proffered Cleveland to opine regarding its written description defense under 35 U.S.C. §112, ¶ 1 and new matter defense under 35 U.S.C. §132(a).

The Court should preclude Cleveland from testifying at trial and disregard Cleveland's opinions on summary judgment because Cleveland does not satisfy the mandatory requirements under Rule 702 and did not consider the defenses from the perspective of one skilled in the art. Cleveland's report does not address who is a person of ordinary skill in the art, but yet he opines one of ordinary skill would determine that the '201 patent applications do not support certain claim limitations.  Not only are his opinions conclusory, but they are also uninformed. Cleveland has no skill, training, experience, or education relevant to the subject matter of the '201 Patent.  As such, the Court cannot ensure Cleveland's methodology and principles were sound and proper.  Cleveland is a patent lawyer, not an actuary, and has no experience that qualifies him to render opinions about variable annuities.  Indeed, Cleveland provides nothing more than a legal argument from one of Transamerica's lawyers repeating its invalidity assertions that the '201 Patent is invalid.  Because Transamerica cannot meet its burden and show Cleveland satisfies Rule 702, the Court should act as a gatekeeper and preclude Cleveland from testifying at trial.  For these same reasons, the Court should also disregard Cleveland's report and

---

[1] Transamerica submitted Cleveland's report twice – once without an affidavit (*APP 1652-1676*) and a second time with an affidavit (*APP 1918-1942*).

his opinions for summary judgment purposes.  If Cleveland is not qualified to testify at trial, his report cannot be considered for summary judgment.

Even if the Court determines Cleveland satisfies Rule 702, the Court should preclude him from testifying at trial under Rule 403.  Any relevance associated with Cleveland's opinions testimony is outweighed by the undue prejudice to Lincoln.

## II.        FACTUAL OVERVIEW

### A.        An Overview of Cleveland's Report and Opinions.

Transamerica has proffered Cleveland to opine regarding its written description defense under 35 U.S.C. §112, ¶1 and new matter defense under 35 U.S.C. §132(a).  (*APP 1653); (LinApp 483*).[2]  Through his report, Cleveland has opined regarding whether the specification of the '201 Patent conveys to one of ordinary skill in the art at the time of the filing of the patent applications that the inventors possessed the claimed invention.  (*APP* 1656-1668).  He has specifically opined that the asserted claims of the '201 Patent "were not literally present in any of the" '201 provisional applications or the utility application.  (*APP 1658*).  In Cleveland's "opinion, a person having ordinary skill in the art would conclude that the Collective Applications do not support the 'at least one of' limitation in Claim 35's step (a), and that the Named Inventors were not in possession of Claim 35's step (a) as of the '201 application's September 24, 1999 filing date."  (*APP 1662*).  Cleveland further opines that "a person having ordinary skill in the art would conclude that the Collective Applications do not support 35's step (e), and that the Named Inventors were not in possession of Claim 35's step (e) as of the '201 application's September 24, 1999 filing date."  (*APP 1668*).

---

[2] All materials that are cited in this Brief either accompanied Transamerica's summary judgment motion and are abbreviated as "*APP*" or accompany Lincoln's appendix as "*LinApp*".

As discussed below, however, Cleveland did not address the written description and new matter issues from the perspective of one skilled in the art.  Cleveland's report is silent regarding the requisite skill set.  This silence is not surprising because he has no experience in the field of annuities that would enable him to opine whether the patent applications support the asserted claims.

**B.    Cleveland is a Patent Lawyer, who has No Knowledge, Skill, Training, or Education Relevant to Annuities, the Administration of Annuities, or Financial Services Generally.**

Cleveland is a patent lawyer who lacks the requisite training to proffer the opinions at issue in this case.  His report provides that he went to law school, he is "a Minnesota lawyer," "a registered US patent attorney," and "a solicitor for England and Wales."  (*APP 1653*). Cleveland's "patent practice primarily involves chemical, mechanical, and optical inventions." (*Id.*).  He spent "the first 20 years of [his] legal career working in the 3M Office of Intellectual Property Counsel."  (*APP 1654*).

Despite the fact that the '201 Patent relates to annuities, Cleveland has admittedly "not work[ed] with annuities."  (*Id.*).  Cleveland's resume, like his report, discloses no knowledge, skill, experience, training, or education relative to the fields of annuities or actuarial science. (*APP 1676*).  Cleveland testified that he has never designed an annuity product, that he has never assisted in the design of an annuity product, and that he has never been asked to review annuity product descriptions in the past and provide comments.  (*LinApp 487*).  In a withdrawn report from the action pending in the Northern District of Indiana, Cleveland states:  "I am not an actuary and will not pretend to be one." (*LinApp 231*).[3]  Cleveland similarly testified during his

---

[3] The parties are currently involved in litigation relating to Lincoln's U.S. Patent No. 5,611,815. The lawsuit is pending in the Northern District of Indiana.  *See* 1:04-cv-396 and 1:06-cv-317.

deposition that: "I don't hold myself out as a person skilled in the art of variable annuity design."

(*LinApp 488*); (*see also LinApp 493-494*).

According to his report, he has "some familiarity with financial instruments" because he worked for the St. Paul Companies after he graduated from college in 1974.  (*APP 1653-54*). Cleveland's "familiarity" was explored during his deposition.  Cleveland testified that he had a minor in math and that he might have been a "research assistant" at the St. Paul Companies almost thirty (30) years ago:

> Q.    All right.  So that the training or experience that you've just referenced would include your math degree in 1974, your service as a law clerk for a securities lawyer that I assumed would have been in the mid to late 1970s?
> A.    It was '77 through '78.
> Q.    And then your work at the St. Paul Companies as an intern and research assistant from 1974 to 1977?
> A.    The work as an intern was in the human resources department and probably didn't have a bearing on this, but the work is what I think as a research assistant if I remember the title I believe does.
> Q.    So we're clear though, the education and training that you're referencing is education and training that all occurred prior to 1980?
> A.    Yes.
> Q.    And from 1979 through your engagement in this case, you had no involvement whatsoever in the field of variable annuities?
> A.    Yes.  That's fair to say.

(*LinApp 496-497*); (*see also LinApp 490*).  Cleveland testified that he started at the St. Paul Companies while he was a first-year law student and worked nights.  (*LinApp 489*).  In any event, Cleveland's very limited experience working with "financial instruments" as a possible "research assistant" predates the filing date of the '201 Patent by almost thirty (30) years.[4]

After leaving the St. Paul Companies, Cleveland worked as an in-house attorney for 3M and left 3M in 1999 "to start a solo legal practice, and in 2001 joined with two other partners to

---

[4] The provisional application that matured into the '201 Patent was filed on September 25, 1998. (*APP 1738*).  At that time, Cleveland had been a lawyer for over 20 years.  Cleveland's report provides: "I have been a Minnesota lawyer and a registered US patent attorney since 1979 . . . ."  (*APP 1653*).

start our present firm." (*APP 1654*).  As a patent attorney, Cleveland similarly lacks any relevant

experience with even the broader field of financial services.  He testified:

> Q.     Is it fair to say that you have not authored any patent application that would relate to the field of variable annuities?
> A.     Correct.
> Q.     Is it fair to say that you have not prosecuted any patent applications that relate to the field of variable annuities?
> A.     Correct.
> Q.     And the same would be true with respect to the field of actuarial sciences generally; that being you haven't authored or prosecuted any patents relating to the field of actuarial scientists?
> A.     Correct.
> Q.     If we broaden it to financial services, do you have any experience either authoring or prosecuting patents relating to the field of financial services?
> A.     No I think is an appropriate answer.

(*LinApp 485-486*).

Indeed, the first time Cleveland has ever been involved with annuities is by virtue of his

litigation-induced work for Transamerica.  (*LinApp 488*).  In this regard, Cleveland conceded:

> **Q.     From 1977[5] through the point in time in which you were engaged by the Transamerica Companies in the Lincoln cases, did you have any involvement whatsoever with variable annuity products?**
> **A.     I did not.**
> *   *   *
> Q.     And from 1979 through your engagement in this case, you had no involvement whatsoever in the field of variable annuities?
> A.     Yes.  That's fair to say.
> Q.     And in your prior work at St. Paul, although you learned of the variable annuity products that were in existence at that time, you did no work whatsoever with respect to those variable annuities?
> **A.     I did not work on variable annuities.**
> **Q.     At any point in your career?**
> **A.     Correct, until having been retained and asked to read all of the documents I've read for this case.**

(*LinApp 491, 497-498*) (emphasis added).

---

[5] In 1977, Cleveland left his "research assistant" position at the St. Paul Companies.  (*LinApp 490-491*).

C.    **Cleveland did not View the Written Description and New Matter Requirement from the Vantage Point of One Skilled in the Art.**

Given Cleveland's lack of any knowledge, skill, training, or education relevant to the administration of annuity products specifically or financial services generally, it is not surprising Cleveland's report does not address who is one of ordinary skill.  Both Cleveland's report and his deposition testimony make clear that the written description defense must be determined from the vantage point of one with ordinary skill.  Through his report, Cleveland has opined that "a person having ordinary skill in the art would conclude" the patent applications would not support certain asserted claims.  (*APP 1656-1669*).  During his deposition, Cleveland conceded the written description requirements must be viewed by one of ordinary skill in the art and that he is not such a person:

> Q.   Now, one thing you and I can agree on I hope is that the question of whether or not the written description requirement is fulfilled is one of fact, correct?
> A.   Correct.
> Q.   And it is a question that is viewed or addressed with an vantage point of one skilled in the art?
> A.   Correct.
> Q.   In your report, have you at anyplace identified what you thought the level of skill in a particular art is?
> A.   I did not set out what I believe the level of skill in the art is in this report.
> Q.   And it's also fair to say, based on your prior testimony, that you are not one of ordinary skill in the art of variable annuities, correct?
> A.   I don't hold myself out as being so.

(*LinApp 493*).  Despite his admitted lack of experience, Cleveland believes that he "can offer testimony on the application of [the] law to the facts . . . ." (*LinApp 492-493*).[6]  He nonetheless agrees the level of skill "impacts" his analysis and conceded the standard is "very high":

---

[6] Not surprisingly, there has been no disagreement between Cleveland and Transamerica's counsel about the application of law to the facts.  (*LinApp 495-496*).  Perhaps most telling is Cleveland's decision not to address the requisite skill set given his prior opinion on that issue.  In the Indiana patent litigation, Cleveland opined in a withdrawn report that a person of ordinary skill in the art would be an actuary with annuity experience.  (*LinApp 510-511*).  After he learned Transamerica's "key" technical

**Q.     And you agree that the level of skill in the art actually will affect the analysis, won't it?**

**A.     I think it will.**  And in reading the many documents in this case, I've had an opportunity both to appreciate the way -- better appreciate the way in which these products are designed, and also, frankly, **to appreciate that the level of skill is very high.**

>     I mean these are smart people.  They're -- you know, they're -- it's an area that I'm -- you know, I have some respect for.

(*LinApp 515*) (emphasis added).

## III.     ARGUMENT AND AUTHORITY

### A.     Standard for Expert Qualifications Under Rule 702.

Federal Rule of Evidence 702 requires that this Court ensure all expert testimony is relevant and reliable.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  The rule provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see also United States v. Vesey*, 338 F.3d 913, 916-17 (8th Cir. 2003); *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3rd Cir. 2003) (The Court focuses "on the trilogy of restrictions on expert testimony:  qualification, reliability and fit.")  (citations omitted).  In *Daubert*, the Supreme Court established a framework for determining whether proffered expert testimony meets Rule 702.  The Eighth Circuit has reasoned that under *Daubert*,

---

expert (Scott Logan) was not an actuary, Cleveland conveniently decided not to opine regarding the issue. (*LinApp 510-515*).  Although he testified this information did not influence his decision not to address who is one of ordinary skill in the art, Cleveland (as discussed above) knows the "level of skill is very high." (*LinApp 515*).

"district courts must act as gatekeepers to 'insure that proffered expert testimony is both relevant and reliable.'" *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003) (citation omitted).

Under the *Daubert* "reliability prong," the court must determine whether the principles and methodology used to support an expert's testimony are valid. The trial court must preliminarily determine "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Kudabeck v. Kroger Co.*, 338 F.3d 856, 860 (8th Cir. 2003) (citations omitted). In addressing the reliability prong, "the witness must have sufficient expertise to assist the trier of fact." *Id.* at 859. Stated differently: "A district court judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 901 (7th Cir. 1994). A trial court's focus is on the methodology and applied principles, not an expert's conclusion. *Daubert*, 509 U.S. at 595. Similarly, the court's gatekeeping role should not interfere with a jury, "'whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence.'" *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 138 (N.D. Iowa 2003) (citations omitted).

The second step of the *Daubert* analysis is essentially a relevance inquiry, and the district must ensure that the proposed expert testimony will aid the trier of fact. *Kudabeck*, 338 F.3d at 860. The proffered testimony "must fit" the issue to which the expert is testifying. *Daubert*, 509 U.S. at 591.

The Supreme Court in *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999) emphasized that a district court's gatekeeping function to ensure that "all" expert testimony is both reliable and relevant. *Id.* at 141. Although *in limine* hearings are generally recommended before a *Daubert* determination, the only requirement is that the parties "have an adequate

opportunity to be heard." *Pioneer Hi-Bred*, 219 F.R.D. at 139. This Court has previously held that "the opportunity to present written arguments and supporting submissions can "constitute 'an adequate opportunity to be heard.'" *Id.* Here, the parties will have a sufficient opportunity to be heard through the existing summary judgment schedule and the pretrial briefing schedule.

A district court's ruling upon the admissibility of proffered expert testimony is reviewed under an abuse of discretion standard. *General Electric v. Joiner*, 522 U.S. 136, 141-43 (1997). Transamerica, as the proponent of Cleveland's testimony, bears the burden of establishing that his testimony and his report are admissible. *Chapman v. LabOne*, 460 F. Supp. 2d 989, 995 (S.D. Iowa 2006) (citation omitted); *Daubert*, 509 U.S. at 595, n.10 (citation omitted). For the reasons discussed below, Transamerica cannot show that Cleveland's opinions satisfy Rule 702 and the *Daubert* analysis. Accordingly, the Court should preclude him from testifying at trial and should also disregard his opinions for summary judgment purposes. *See Schuller v. Great-West Life & Annuity Ins. Co.*, 2005 U.S. Dist. LEXIS 37264, at *18 (W.D. Iowa 2005) (reasoning at the summary judgment stage that: "The affidavit of an 'expert' may also be stricken if the individual does not meet the standards of Federal Rule of Evidence 702 and *Daubert* . . . .").

**B.** **The Court Should Disregard Cleveland's Opinions in Their Entirety and Exclude Him from Trial Because His Opinions are Inherently Unreliable as He Did Not (and Could Not) Consider the '201 Patent from the Perspective of One of Ordinary Skill.**

**1.** **Transamerica's Written Description and New Matter Defenses Must be Viewed from the Vantage Point of One of Ordinary Skill in the Art.**

To satisfy the written description requirement, a patent as a whole need only convey to one of ordinary skill in the art that the inventor possessed the claimed invention at the time of filing. *Reiffin v. MicroSoft Corp.*, 214 F.3d 1342, 1346 (Fed. Cir. 2000). The written description requirement must be viewed from the vantage point of one of ordinary skill in the art. *Yingbin-*

*Nature (GuangDong) Wood Indus. Co. v. Int'l Trade Co.*, 535 F.3d 1322, 1335 (Fed. Cir. 2008) (stating the patent "application must 'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession of the invention.'") (citation omitted).

The prohibition against new matter under 35 U.S.C. §132(a) provides that:  "No amendment shall introduce a new matter into the disclosure of the invention."  The relevant inquiry under Section 132(a) is one of ordinary skill in the art would have determined from the original application that the applicant was in possession of the new/amended subject matter at the filing date for the original application.  *Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985).  This standard is the same as the written description standard.  *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003) (reasoning that "a rejection of an amended claim under §132 is equivalent to a rejection under §112, first paragraph.") (citation omitted).

## 2.   Neither Cleveland nor His Report Address the Ordinary Skill in the Relevant Art.

As a matter of law, Cleveland's opinions must be considered from the perspective of one of ordinary skill in the art.  His report and accompanying opinions are premised upon whether one of ordinary skill in the art would determine whether the inventors possessed the asserted invention.  (*APP 1656-1669*).  During his deposition, Cleveland admitted that the written description requirement was to be addressed from the perspective of one skilled in the art and further conceded his report did not address this skill set.  (*LinApp 493*).  Cleveland further testified that he was not one of ordinary skill.  (*Id.*).  Moreover, he conceded the level impacts his analysis.  (*LinApp 515*).

This is precisely the circumstance in which the Court should act as a gatekeeper and exclude Cleveland's opinions in their entirety and preclude him from testifying at trial.  This Court's decision in *Maytag Corp. v. Electrolux Home Prods., Inc.*, 448 F. Supp. 2d 1034 (N.D. Iowa 2006), *aff'd*, 224 Fed. App. 972 (Fed. Cir. 2007), is instructive in this regard.  There, the Court considered whether a patent met the written description requirement of 35 U.S.C. §112.  In so reasoning, the Court addressed the sufficiency of expert affidavits.  *Id.* at 1076-1078.  Maytag (the patentee) relied upon affidavits from two experts – Dr. Hall and Professor Jay Kesan.[7]  The Court disregarded the affidavits reasoning:

> What Maytag offers on the scope of the written description are only unsupported expert opinions that can be of no assistance to the trier of fact.  As such, those opinions do not generate any genuine issues of material fact that the written description, even to one of ordinary skill in the art, would disclose [certain claim limitations].

*Id. at 1076*.  The Court specifically found that the affidavit of Dr. Hall was "merely conclusory" and his asserted conclusion "plainly [did] not follow from the premise."  *Id.* at 1077.[8]  The Court's decision to disregard Professor Kesan's opinions is compelling:

> Unlike Dr. Hall, Prof. Kesan does purport to provide reasoning and support from the written description for his opinions.  **Nevertheless, to the extent that his opinions are only legal conclusions – as is the case with his opinions about what the law makes clear and his further opinions about what constitutes an adequate written description – Prof. Kesan's opinions can properly be**

---

[7]  Professor Kesan, like Cleveland, is a patent lawyer.  *See* http://www.law.illinois.edu/faculty/directory/JayKesan.

[8]  Cleveland's asserted conclusions likewise "plainly do not follow from the premise."  By way of example, Cleveland opines the '201 Patent applications do not show the inventors possessed the invention step involving "monitoring for an unscheduled withdrawal." His opinion in this regard is directly contrary to the first provisional application for the '201 Patent.  When addressing this aspect of the invention, the inventors state in the first provisional application:  "Second, because the variable annuity contract is never annuitized under this distribution program, a lump sum or partial account value withdrawal capability still resides with the variable deferred annuity contract owner(s).  However, withdrawals in excess of the amounts stated by the insurer to keep the guaranteed payout program in place may alter or may terminate the program."  (*APP 1754*).  The Court through its *Markman* Order ultimately determined that unscheduled withdrawals meant excess withdrawals.

**excluded from the summary judgment record**. *See In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d at 905 ("[W]hen the expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements [from the summary judgment record]."). Moreover, to the extent that Prof. Kesan's legal conclusions, including his conclusion that "teardrop-shaped grooves" are identified in the written description only as part of a "preferred embodiment," are contrary to this court's interpretation of the written description in light of *Gentry Gallery, Tronzo,* and *Johnson Worldwide Associates*, concerning the scope of a written description that describes only one form of a limitation and touts the advantages of that one form and never refers to the "teardrop-shaped grooves" in any reference to specific structures as only "preferred embodiments," Prof. Kesan's legal conclusions must be disregarded. **Again, the court concludes that Prof. Kesan's opinions on this point have no adequate support, would not be helpful to the trier of fact, and as such, fail to generate genuine issues of material fact on the question of the scope of the written description that would preclude summary judgment**. *See In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d at 905; *Larson*, 414 F.3d at 941; *Eckelkamp*, 315 F.3d at 868.

*Id.* at 1077-78 (emphasis added).

As in *Maytag*, the Court should exclude Cleveland's opinions in their entirety. Like Professor Kesan, Cleveland has opined regarding the sufficiency/scope of the '201 patent applications and whether those applications satisfy the written description requirement. As a matter of law, the written description and new matter issues must be considered from the perspective of a person of ordinary skill in the art.[9] This is precisely what Cleveland did not (and cannot) do. As such, his opinions are not helpful, lack any meaningful analysis, and should be disregarded. Moreover, "to the extent his opinions are only legal conclusions – as is the case with his opinions about what the law makes clear and his further opinions about what constitutes an adequate written description – [Cleveland's] opinions can properly be excluded . . . ." *Maytag Corp.*, 448 F. Supp. 2d at 1078. It is for the Court, not Cleveland, to instruct the jury about the

---

[9] In this regard, Cleveland is a mere mouthpiece for Transamerica's defenses acting as if he were an unbiased witness wanting to testify from the witness stand, rather than advocate from counsel's podium. In fact, there is no "opinion" that Cleveland can offer that Transamerica's counsel cannot make in the form of argument.

law.  *See Farmland Indus. v. Frazier-Parrott Commodities*, 871 F.2d 1402, 1409 (8th Cir. 1989)

(reasoning a party's expert witness "could not testify regarding the requirements of the law.");

*see also Superior Aluminum Alloys, LLC v. Fire Insur. Co.*, 2007 U.S. Dist. LEXIS 46691, at

*25 (N.D. Ind. 2007) ("experts are not permitted 'to render an opinion as to questions which are

matters of law for the court . . . .'") (*quoting* 2 Michael H. Graham, *Handbook of Federal

Evidence* §704.1 (5th ed. 2001)).  For this reason alone, the Court should disregard Cleveland's

opinions and preclude him from testifying at trial.

**C.**     **The Court Should Exclude Cleveland from Testifying and Disregard His Opinions
in Their Entirety Because He Fails to Satisfy Rule 702.**

As noted above, Cleveland is a patent attorney.  Cleveland is not a person with **any**

education, training, experience or skill (let alone ordinary skill) in the design, development, sale

or administration of annuity products.  He admits that he has not worked with annuities and

neither his report nor resume disclose any relevant experience.  Cleveland's deposition testimony

reinforced that the Court should block Transamerica's attempt to call him as a trial witness:

> Q.    Have you ever designed an annuity product?
> A.    No.
> Q.    Have you ever assisted in the design of an annuity product?
> A.    No.
> Q.    Have you ever been asked to review a description of an annuity product in
>       the past and provide comments on it?
> A.    No.

(*LinApp 487*).  Indeed, the first and only time Cleveland has worked with annuities is from his

litigation work with Transamerica.  (*LinApp 491*); (*LinApp 491a*); (*LinApp 491b*).  Cleveland's

lack of relevant experience is a second and independent reason for the Court to exclude his

opinions and preclude him from testifying at trial.

Legal opinions and accompanying testimony from patent attorneys who do not satisfy

Rule 702 should be excluded by courts.  For example, the Federal Circuit "has on numerous

occasions noted the impropriety of patent lawyers testifying as expert witnesses and giving their opinion regarding the proper interpretation of a claim as a matter of law, the ultimate issue for the court to decide." *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. 1997). Although patent attorneys may serve as experts, they should do so only after the court first determines Rule 702 has been satisfied. *See Kumho Tire*, 526 U.S. at 147 (reasoning that 702 applies to all expert testimony); *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1208-09 (D. Nev. 2008) (disregarding a report from a patent attorney who was educated as an engineer and stating "[s]idestepping the relevance issue allows a party to retain and present argument of outside counsel as expert factual evidence. This is impermissible . . . under Federal Rule of Evidence 702 . . . .").

In *Engineered Prods. Co. v. Donaldson Co., Inc.*, 313 F. Supp. 2d 951, 1006 (N.D. Iowa 2004), this Court addressed whether a patent attorney (Miller) could serve as an expert at trial and opine regarding infringement. The Court applied Rule 705 to find that it was permissible for the patent attorney to opine regarding the ultimate issue of infringement and noted that whether the patent attorney was "a person skilled in the art really goes to the weight, not the admissibility, of [the] testimony." *Id*. at 1008. Lincoln reasonably believes that the Court's *Engineered Prods.* decision is not applicable. As discussed above, Cleveland's opinions – as a matter of law – must be considered from the vantage point of a person with ordinary skill. Further, the Court extensively cited Rule 705, not Rule 702. In any event, and to the extent that the Court believes that its decision in *Engineered Prods.* is sufficiently analogous to the facts here, Lincoln respectfully requests that the Court find that Cleveland is not qualified to testify irrespective of whether he is or is not one of ordinary skill. Cleveland simply is not qualified to testify because he does not satisfy Rule 702.

This Court's subsequent *Maytag* decision is instructive.  As indicated above, the Court excluded opinions from a patent lawyer (Kesan) regarding a written description issue because his opinions lacked adequate support, were not helpful, and were in the form of legal conclusions. *Maytag*, 448 F. Supp. at 1077-78.

The district court's decision in *Tel-Lock, Inc. v. Thomson Consumer Electronics*, 2005 U.S. Dist. LEXIS 7224 (N.D. Ill. 2005) is also instructive.  In *Tel-Lock*, the court considered and ultimately disregarded an expert report from a patent lawyer by applying Rule 702 and the Federal Circuit's decision in *Endress*.  *Id.* at *21-24.  The proffered expert (like Cleveland) was an attorney who specialized in intellectual property law, but lacked expertise in the underlying field.  The court disregarded the attorney's entire testimony regarding the issue of obviousness, reasoning:

> Bowman admittedly lacks ordinary skill in the art applicable to the 543 patent or any other particular technical discipline beyond his skills in the art of patent prosecution and procedures.  *See* Bowman Dep. at 69, lns. 4-6.  The court cannot imagine how an individual lacking even ordinary skill in the relevant art can offer reliable expert testimony regarding the same art.  As a result, the court will not consider Bowman's testimony or the Bowman affidavit as it relates to the issue of obviousness.

*Id.* at *24-25.

The district court in *Shuffle Master* reached a similar result.  There, the court distinguished other cases[10] that allowed patent attorneys to testify in a field without experience because the approach avoided the required Rule 702 analysis:

> Sidestepping the relevance issue allows a party to retain and present the argument of outside counsel as expert factual evidence.  This is impermissible both under Federal Rule of Evidence 702 and under the rules of professional conduct.

---

[10] The court criticized the decisions in *Talarico v. Marathon Shoe Co.*, 182 F. Supp. 2d 102 (D. Me. 2002) and *Rieiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1145 (N.D. Cal. 2003).

553 F. Supp. 2d at 1209. *See also Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("However, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."); *Vidir Machine, Inc. v. United Fixtures Co.*, 2005 U.S. Dist. LEXIS 46032, *10-11 (M.D. Pa. 2005) (excluding testimony of patent lawyer at a *Markman* hearing that merely bolstered the party's legal conclusions being argument to its counsel).

As in *Maytag, Tel-Lock* and *Shuffle Master*, this Court should preclude Cleveland from testifying at trial and exclude all of his opinions under Rule 702. Cleveland has no experience, education, or training in the field of annuities. He merely reviewed the patent applications and then opines that one of ordinary skill in the art would not understand how to use the invention because the claim fails to satisfy patent law requirements. Cleveland, who has no relevant training skill, education, or experience simply has no base line, foundation, and no business to make such opinions. This is a second and independent reason to exclude Cleveland's opinions.

**D.      Alternatively the Court Should Exclude Cleveland from Testifying at Trial Under Rule 403.**

Even if the Court determines that Cleveland satisfies Rule 702, the Court should preclude him from testifying under Rule 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Here, there is no probative value to Cleveland's opinions. His opinions can be made in the form of a legal argument by Transamerica's own counsel. Moreover, the risk of unfair prejudice, confusion, and misleading of the jury is extremely likely where, as here, Cleveland is doing nothing more than advancing Transamerica's invalidity assertions. *See Vidir Machine, Inc.*, 2005 U.S. Dist. LEXIS 46032 at *10-11 (excluding testimony of patent lawyer at a *Markman* hearing that merely bolstered the party's legal conclusions being argument to its

counsel).  The risk of the jury relying upon Cleveland as an unbiased witness when, in fact, he is

advancing Transamerica's legal arguments as a lawyer, justifies his exclusion under Rule 403.

### IV.    CONCLUSION

For all the foregoing reasons, Lincoln respectfully requests that the Court grant this

Motion and:

(1)    Disregard and exclude Cleveland's opinions and his accompanying report
(*APP 1652-1676* and *APP 1918-1942*) when considering Transamerica's
summary judgment motion; and

(2)    Preclude Cleveland from testifying at trial regarding Transamerica's
written description defense under 35 U.S.C. §112, ¶1 and new matter
defense under 35 U.S.C. §132(a).

Respectfully submitted,

*s/ D. Randall Brown*
D. Randall Brown (IN #15127-49)
(randy.brown@btlaw.com)
Gary C. Furst (IN #19349-64)
(gary.furst@btlaw.com)
BARNES & THORNBURG LLP
600 One Summit Square
Fort Wayne, IN  46802
Telephone:  (260) 423-9440
Facsimile:  (260) 424-8316
*PRO HAC VICE*

Denny M. Dennis
Todd A. Strother
BRADSHAW, FOWLER, PROCTOR &
  FAIRGRAVE, P.C.
Suite 3700
801 Grand Avenue
Des Moines, Iowa  50309-8004

ATTORNEYS FOR LINCOLN
NATIONAL LIFE INSURANCE
COMPANY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the above and foregoing document has been served this 26th day of September, 2008, via the Court's ECF system to the following counsel of record:

> Glenn Johnson, Esquire
> Sarah J. Gayer, Esquire
> Kevin H. Collins, Esquire
> SHUTTLEWORTH & INGERSOLL, P.L.C.
> 500 U.S. Bank Building,
> P.O. Box 2107
> Cedar Rapids, IA  52406

*s/ D. Randall Brown*
D. Randall Brown

FWDS01 GCF 234636v1