**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

TRANSAMERICA LIFE INSURANCE
COMPANY, WESTERN RESERVE
LIFE ASSURANCE CO. OF OHIO, and
TRANSAMERICA FINANCIAL LIFE
INSURANCE COMPANY,

        Plaintiffs,

vs.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

        Defendant.

No. C 06-110-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
TRANSAMERICA'S MOTIONS TO
AMEND PLEADINGS**

_____

**TABLE OF CONTENTS**

*I.* *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.* *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.* *The Motions To Amend Pleadings* . . . . . . . . . . . . . . . . . . . . . . 4

*II.* *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.* *Standards For Belated Amendments* . . . . . . . . . . . . . . . . . . . . . 6
    *B.* *Rule 16(b) Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        *1.* *Untimeliness of the proffered amendments* . . . . . . . . . . . . . 11
        *2.* *Diligence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            *a.* The *"inequitable conduct"* claim or defense . . . . . . . 13
            *b.* The *"patent-eligible subject matter"* claim or defense . 16
    *C.* *Alternative Rule 15 Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . 21
    *D.* *Further Implications* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*III.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I. INTRODUCTION

## A. Procedural Background

In its lengthy *Markman* ruling on claim construction, *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 550 F. Supp. 2d 865 (N.D. Iowa 2008), the court set out in some detail the procedural and factual background to the present litigation. The court will not repeat that background here. Rather, suffice it to say that Lincoln National Life Insurance Company (Lincoln) is the assignee of the patent-in-suit, United States Patent No. 7,089,201 B1 (the '201 patent), which is entitled "METHOD AND APPARATUS FOR PROVIDING RETIREMENT INCOME BENEFITS." On August 8, 2006, Transamerica[1] filed a Complaint For Declaratory Judgment (docket no. 1) initiating this action. In its Complaint, Transamerica asserts, in essence, that it is not infringing the '201 patent by selling various annuity product contracts. In contrast, in an Answer To Plaintiffs' Complaint And Patent Infringement Counterclaim (docket no. 14), filed December 29, 2006, Lincoln seeks declarations that the '201 patent is not invalid and that Transamerica is infringing it. Lincoln also seeks damages for infringement, injunctive relief from such infringement, and reasonable attorney fees for litigating this matter. Trial in this matter is currently set to begin on February 2, 2009.

In its original Complaint, Transamerica not only sought a declaration that it is not infringing the '201 patent, but also alleged that "the '201 patent is invalid under the provisions of 35 U.S.C. § 102 [anticipation], under the provisions of 35 U.S.C. § 103 [obviousness], and on other grounds." Complaint, ¶ 23. In its Answer To Lincoln

---

[1]As the court has done in prior rulings in this case, the court will refer to Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company collectively as "Transamerica."

2

National's Counterclaims (docket no. 20), filed January 23, 2006, Transamerica denied Lincoln's claims of infringement of the '201 patent, but did not assert any affirmative defenses, such as invalidity or unenforceability of the patent-in-suit. Subsequently, in its Amended And Substituted Complaint (docket no. 52) offered on November 1, 2007, the deadline to amend pleadings, and filed by leave of court on November 15, 2007, Transamerica clarified the accused products at issue and clarified that its asserted grounds for invalidity include 35 U.S.C. § 112 (inadequate specification). *See* Transamerica's Motion To File Amended And Substituted Complaint (docket no. 48), ¶¶ 3-4; Transamerica's Amended And Substituted Complaint (docket no. 52), ¶¶ 17 & 23. Also on November 1, 2007, Transamerica offered an Amended And Substituted Answer To Counterclaim, which asserted four "Affirmative Defenses & Other Matters": (1) Transamerica's non-infringement of the '201 patent; (2) absence of reckless or willful infringement by Transamerica; (3) Lincoln's lack of entitlement to recover for willful infringement as a matter of law; and (4) invalidity and unenforceability of the '201 patent "under the provisions of 35 U.S.C. § 102, under the provisions of 35 U.S.C. § 103, under the provisions of 35 U.S.C. § 112, and on other grounds." Amended And Substituted Answer To Counterclaim, Affirmative Defenses & Other Matters (docket no. 53). After Lincoln renewed its Answer and Counterclaim in response to the Amended And Substituted Complaint, Transamerica renewed its Answer To Counterclaim (docket no. 57) on December 6, 2007, but that Answer did not include the affirmative defenses mentioned above.

Transamerica did not seek leave to amend its pleadings again until November 5, 2008, more than a year after the November 1, 2007, deadline for amendments in the March 16, 2007, Scheduling Order (docket no. 23), almost two-and-one-half years after the suit was filed *by Transamerica*, more than two months after the extended August 15,

3

2008, deadline for the close of discovery, and two months or more after the extended September 2, 2008, deadline for dispositive motions.

## B. The Motions To Amend Pleadings

This matter comes before the court pursuant to Transamerica's November 5, 2008, Motion To Further Amend Its Amended And Substituted Complaint (D.I. 52) (docket no. 121), which seeks leave to add a claim that the patent-in-suit is unenforceable owing to "inequitable conduct"; Transamerica's November 5, 2008, Motion To Further Amend Its Amended Answer To Lincoln's Counterclaim (D.I. 53) (docket no. 122), which seeks leave to add an affirmative defense of unenforceability of the patent-in-suit owing to "inequitable conduct"; and Transamerica's November 25, 2008, Motion To Amend Pleadings To Include A Defense And Claim For Declaratory Judgment Under 35 U.S.C. § 101 (docket no. 156), which seeks leave to add a claim and defense of invalidity of the patent-in-suit for failure to claim "patent-eligible subject matter." The court will refer to these motions collectively as the Motions To Amend Pleadings. The Motions To Amend Pleadings were originally assigned to Chief United States Magistrate Judge Paul A. Zoss, who had set a hearing on the November 5, 2008, motions (docket nos. 121 & 122) for December 3, 2008. However, on the undersigned's direction, and consistent with the court's statements in a status conference on November 25, 2008, the Motions To Amend Pleadings were all reassigned to the undersigned and the December 3, 2008, hearing was canceled. *See* Order (docket no. 163).

The Motions To Amend Pleadings have now been resisted by Lincoln and fully briefed by the parties. Although Transamerica requested oral arguments on the earlier Motions To Amend Pleadings, and the court has a strong preference for hearing oral arguments when they are requested by the parties, the court's crowded schedule has not

4

permitted timely scheduling of such oral arguments, and the issues presented in the motions are not novel. Therefore, the motions are now deemed fully submitted on the written submissions.[2]

In support of each of its Motions To Amend Pleadings, Transamerica contends that new facts and new circumstances, including what Transamerica asserts is a change in the law regarding "patent-eligible subject matter" under 35 U.S.C. § 101 in the recent *en banc* decision from the Federal Circuit Court of Appeals in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008), warrant granting it leave to assert new claims and defenses. Lincoln opposes the proposed amendments on the ground that the proposed amendments are untimely and without good cause, where they are offered well after the November 1, 2007, deadline, and the circumstances demonstrate that Transamerica could reasonably have asserted these claims and defenses before the deadline for amendments.

---

[2] The court notes that, in considering Transamerica's Motions To Amend Pleadings, the court has also considered the arguments of the parties in the court-ordered briefing on the impact of *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (*en banc*) on this litigation. *See* Lincoln's November 18, 2008, Brief Regarding *In re Bilski* (docket no. 140); Transamerica's November 18, 2008, Statement Regarding The Impact Of The *Bilski* Decision On The Conduct Of This Action (docket no. 145), and comments and arguments made by the parties at the status conference on November 25, 2008. The court also notes that the disposition of Transamerica's Motions To Amend Pleadings will necessarily have an impact upon Transamerica's November 24, 2008, Motion To Amend Scheduling Order (docket no. 154), which seeks amendment of the Scheduling Order to permit the parties to address certain "*Bilski* issues," and Transamerica's November 18, 2008, Motion For Summary Judgment That All Asserted Claims Of The '201 Patent Are Invalid Under 35 U.S.C. § 101 For Failure To Claim Patent-Eligible Subject Matter (docket no. 149), which relies on *Bilski*, and may also have an impact on other pending motions or portions of other pending motions.

5

## II.  LEGAL ANALYSIS

### A.  Standards For Belated Amendments

In patent litigation, the Federal Circuit Court of Appeals applies the law of the regional circuit in reviewing orders granting or denying leave to amend a pleading, because the question is not unique to patent law. *See Net MoneyIN, Inc. v. VeriSign, Inc.*, ___ F.3d ___, ___, 2008 WL 4614511, *3 (Fed. Cir. Oct. 20, 2008); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1124 (Fed. Cir. 2004); *Ferguson Beauregard/ Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., L.L.C.*, 350 F.3d 1327, 1342 (Fed. Cir. 2003).  An order granting or denying leave to amend is generally reviewed by the Eighth Circuit Court of Appeals for abuse of discretion.  *See MSK EyEs, Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, ___ F.3d ___, ___, 2008 WL 4763442, *11 (8th Cir. Nov. 3, 2008) (stating this standard for denial of leave to amend); *Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969, 974 (8th Cir. 2008) ("Allowing or denying the amendment of a complaint is reviewed for abuse of discretion." (citing *Hammer v. City of Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003), in turn citing *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 545 (8th Cir. 1998)).[3]

More specifically, as the Eighth Circuit Court of Appeals has explained, "there is no absolute right to amend [pleadings]." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007); *accord Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008); *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005).  At a minimum, Transamerica's Motions To Amend Pleadings implicate the standards for leave to amend under both Rule 15(a) and Rule 16(b) of the Federal Rules of Civil

---

[3]Denial of leave to amend a complaint based on futility, however, is reviewed *de novo*. *See In re NVE Corp. Sec. Litig.*, 527 F.3d 749, 752 (8th Cir. 2008).

6

Procedure. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).[4] Under Rule 15(a), when leave to amend is not sought "as a matter of course"—*i.e.*, before being served with a responsive pleading or within 20 days after serving the pleading if no responsive pleading is allowed and trial has not yet been set, *see* FED. R. CIV. P. 15(a)(1)—leave to amend pleadings should still be "freely given when justice so requires." *See* FED. R. CIV. P. 15(2)(a). Even under this standard, however, "[a] district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Sherman*, 532 F.3d at 715 (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005), with internal quotation marks omitted); *Baptist Health*, 477 F.3d at 544 (also observing that "a court may deny the motion based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility"). When leave to amend is sought only after the deadline for

---

[4]Where, as here, a proffered amendment involves belated assertion of an affirmative defense, Rule 8(c), which requires affirmative defenses to be pleaded in an answer, is also implicated, and "'[g]enerally, failure to plead an affirmative defense results in a waiver of that defense.'" *Sherman*, 532 F.3d at 714-15 (quoting *First Union Nat'l Bank v. Pictet Overseas Trust Corp.*, 477 F.3d 616, 622 (8th Cir. 2007)). Lincoln has argued that Transamerica waived its "new" defenses of "inequitable conduct" and lack of "patent-eligible subject matter," but the court finds that it need not consider whether the defenses have been raised in a manner that does not result in unfair surprise, excusing technical failure to comply with Rule 8(c), because Rule 8(c) is not an absolute bar to a party's belated attempt to plead an affirmative defense, *see id.*, and the court finds other bases for disposition of Transamerica's Motions To Amend Pleadings.

7

amendments in a Rule 16 scheduling order, however, the request for leave to amend also implicates Rule 16(b)'s "good cause" requirement. *Id.* (citing FED. R. CIV. P. 16(b)(4)).

As the court in *Sherman* explained,

> The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit. In *Popoalii [v. Correctional Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)], we stated that "[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule." 512 F.3d at 497 (citing Rule 16(b) (emphasis added)). Moreover, we said so in the context of a discussion of the Rule 15 amendment standard, unmistakably concluding that Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a). *Id.* Because Popoalii filed her motion to amend her complaint five months after the scheduling deadline for amending pleadings, "[u]nder [Rule] 16(b), Popoalii needed to show cause in order to be given leave to amend." *Id.*
>
> The approach taken in *Popoalii* is derived directly from the plain language of Rule 16(b), which states both that district courts must issue a scheduling order limiting the time to amend the pleadings, and that a scheduling order "may be modified only for good cause." When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional. To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998); *see also Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to

8

seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."); *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005), *cert. denied,* 549 U.S. 811, 127 S. Ct. 48, 166 L. Ed. 2d 20 (2006) (applying the same approach); *O'Connell v. Hyatt Hotels of P.R.,* 357 F.3d 152, 154-55 (1st Cir. 2004) (same); *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000) (same); *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992) (same).

*Sherman*, 532 F.3d at 716 (emphasis in the original). Thus, where, as here, the movant's motion to amend is filed well after the deadline for amendment of pleadings in a scheduling order, this court is *required* to apply the "good cause" standard of Rule 16(b). *Id.*

In *Sherman*, the Eighth Circuit Court of Appeals provided further clarification of the Rule 16(b) "good cause" standard:

> The good-cause inquiry required under Rule 16(b) is more narrow than the analysis undertaken by the district court. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins,* 464 F.3d 813, 822 (8th Cir. 2006); *see also* Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.,* 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements"). Our cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order. *See, e.g., Rahn,*

464 F.3d at 822 (affirming the district court's denial of Rahn's request for a modification of the scheduling order because the record made clear that Rahn did not act diligently to meet the order's deadlines); *Barstad v. Murray County,* 420 F.3d 880, 883 (8th Cir. 2005) (affirming the district court's denial of leave to amend the Barstads' complaint under Rule 16(b) because the Barstads had eight months to request an amendment of the scheduling order and "knew of the claims they sought to add when they filed the original complaint"); *Freeman v. Busch,* 349 F.3d 582, 589 (8th Cir. 2003) (affirming, under Rule 16(b), the district court's denial of Freeman's motion to amend her complaint because she provided no reasons why the amendment could not have been made earlier or why her motion to amend was filed so late).

*Sherman*, 532 F.3d at 716-17.

Applying this standard, the court in *Sherman* held that the proffered amendment to assert a "preemption" defense should have been denied, because leave to amend to assert the defense was not sought until almost eighteen months after the deadline to amend pleadings had expired, and even though the defense was "purely legal," it was not asserted until two-and-one-half years after the suit was filed, a month after the close of discovery, a month after it was raised in a summary judgment motion, and eight months after the movant was aware of the applicability of the defense. *Id.* at 717-18. The court also rejected the movant's contentions that it had been diligent in asserting the belatedly proffered defense. *Id.* Similarly, in *MSK EyEs*, the Eighth Circuit Court of Appeals found that it was not an abuse of discretion to deny leave to amend pleadings when the motion was filed months after the Rule 16 deadline for amendment, years after the action was commenced, and after the moving party had notified the opposing party that it was moving for summary judgment. *See MSK EyEs*, ___ F.3d at ___, 2008 WL 4763442 at *11.

In short, "good cause" for a belated amendment under Rule 16(b) requires a showing that, despite the diligence of the movant, the belated amendment could not reasonably have been offered sooner. *Sherman*, 532 F.3d at 716-18.

## B.  Rule 16(b) Analysis

As in *Sherman*, this court finds that Transamerica cannot satisfy the "good cause" requirement and leave to amend should be denied, because the proffered amendments are not only untimely under the court's scheduling order, but Transamerica has not shown that, despite its diligence, the belated amendments could not reasonably have been offered sooner. *See Sherman*, 532 F.3d at 716-18 (the focus of the "good cause" standard for belated amendments under Rule 16(b) is the diligence of the movant). The court will explain this conclusion in more detail.

### 1.    Untimeliness of the proffered amendments

Much as in *Sherman*, Transamerica's proffered amendments are patently untimely. They are offered a year after the November 1, 2007, deadline to amend pleadings in the scheduling order, and even to the extent that the "patent-eligible subject matter" defense is "purely legal," it was not asserted until almost two-and-one-half years after the suit was filed *by Transamerica*. *Sherman*, 532 F.3d at 717. Moreover, the new claims and defenses were not offered until more than two months after the extended August 15, 2008, deadline for the close of discovery and two months or more after the extended September 2, 2008, deadline for dispositive motions. *Id.* at 717-18. Furthermore, Transamerica did not seek leave to assert the "patent-eligible subject matter" defense until after Transamerica filed a motion for summary judgment on that defense, even though the defense was not yet part of the case. *Id.* at 717-18. Thus, unless Transamerica can show that, despite its diligence, it could not have asserted the claims and defenses presented in

11

its proffered amendments sooner, the untimeliness of the proffered amendments would bar them. FED. R. CIV. P. 16(b)(4); *Sherman*, 532 F.3d at 716-18.

## 2. Diligence

Transamerica asserts that it can show "good cause" for its belated amendments, because the circumstances demonstrating the viability of the new claims and defenses, including the change in the test for "patent-eligible subject matter" under 35 U.S.C. § 101 in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (*en banc*), were not apparent until well after the deadline for leave to amend. Thus, Transamerica asserts that it has promptly and diligently presented its proffered amendments. Lincoln disagrees, arguing that all of the circumstances giving rise to the belatedly offered claims and defenses were known to Transamerica well before the deadline for leave to amend and that Transamerica's new counsel is simply second-guessing tactical decisions of former counsel to forego these claims and defenses and, in doing so, seeks to burden Lincoln with additional claims and defenses, and perhaps additional discovery, shortly before trial.

In *Sherman*, the court found "no change in the law, no newly discovered facts, or any other changed circumstances" that made the defense more viable after the scheduling deadline for amending pleadings, suggesting that such circumstances, if present, might have constituted "good cause" for an otherwise belated amendment. *Sherman*, 532 F.3d at 718 (also finding that the movant had became aware of the applicability of the defense months before moving to amend to assert the defense); *see also Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (finding that either information learned through discovery or a change in the law that occurred after the deadline to amend in the scheduling order constituted good cause to extend the deadline to amend). However, the court in *Sherman* expressly rejected the movant's contention that its belated determination of the merits of the defense constituted "good cause," because the court viewed that

12

contention as a concession that the movant had not explored the applicability of the defense before the summary judgment stage of the litigation, and had the movant been diligent, "it would have performed this research at the outset of the litigation, and at least prior to the scheduled deadline for adding affirmative defenses." *Id.* The court also observed that treatment of a defense as an affirmative defense "presupposes that, in a typical case, a diligent defendant will be able to plead the defense on the basis of the complaint alone, at the outset of the litigation." *Id.*; *see also Leary v. Daeschner*, 349 F.3d 888, 908 (6th Cir. 2003) (holding that, where a party could have pleaded the claim or defense within the parameters of the court's scheduling order, because the party was aware of the underlying facts and circumstances giving rise to the claim or defense, lack of diligence and unwarranted delay, not "good cause," are present).

With this guidance, the court turns to the question of Transamerica's diligence in asserting the new claims and defenses in this case.

### a. The "inequitable conduct" claim or defense

To determine whether a party was diligent in asserting a claim or defense, the court deems it appropriate to consider what would be required to prove such a claim or defense. The Federal Circuit Court of Appeals recently summarized the requirements for proof of "inequitable conduct" as follows:

> The evidentiary standard for determining whether there was inequitable conduct in obtaining a patent that is otherwise valid was set forth by this court, sitting en banc for the purpose, in *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867 (Fed. Cir. 1988). The court explained that "[t]o be guilty of inequitable conduct, one must have intended to act inequitably," and held: "Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and

convincing evidence." *Id.* at 872. Mistake or negligence, even gross negligence, does not support a ruling of inequitable conduct. The court held:

> We adopt the view that a finding that particular conduct amounts to "gross negligence" does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.

*Id.* at 876. When both materiality and deceptive intent have been established the district court determines, in the court's discretion, whether inequitable conduct has occurred; appellate review is on this basis. *See id.* at 876 ("As an equitable issue, inequitable conduct is committed to the discretion of the trial court and is reviewed by this court under an abuse of discretion standard. We, accordingly, will not simply substitute our judgment for that of the trial court in relation to inequitable conduct.").

*Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1353 (Fed. Cir. 2008).

Here, there can be no dispute that Transamerica knew of Lincoln's supposed failure to disclose certain allegedly material prior art in its prosecution of the '201 patent, which is the basis for Transamerica's "inequitable conduct" claim or defense, long before the deadline for amendments to pleadings in this case. *Id.* (first requirement of "inequitable conduct" is failure to disclose material information). Although Transamerica asserts that it did not have an adequate basis to assert materiality until the PTO accepted the petition for reexamination of the '201 patent essentially on the basis of the prior art Transamerica has relied upon, as Lincoln points out, Transamerica repeatedly cited that prior art, and asserted that it was material, long before the deadline for amendments. As to the second element of an "inequitable conduct" claim or defense, "deceptive intent," the Federal Circuit Court of Appeals has made clear that deceptive intent cannot be inferred from

14

materiality alone. *See Abbott Labs.*, 544 F.3d at 1354-56 (citing *Kingsdown*, 863 F.2d at 872). Rather, there must be a separate factual basis for the "intent to deceive" element of an "inequitable conduct" claim or defense. *Id.* at 1355-56. On the other hand, "[I]n the absence of a credible explanation, intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information." *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d at 1181, 1191 (Fed. Cir. 2006). Here, as Lincoln points out, Transamerica's own arguments show that Transamerica knew before the deadline for amendments that Lincoln was aware of the allegedly highly material but undisclosed prior art, for example, through Lincoln's "competitive intelligence group," and that Lincoln at least arguably knowingly failed to disclose that prior art in the prosecution of the '201 patent. Transamerica also admits that it considered asserting an "inequitable conduct" claim earlier in the litigation, before the deadline for amendments, but made a tactical decision not to assert the claim at that time, because of the difficulties of proving it. Indeed, Transamerica argues that Lincoln only made certain disclosures to the PTO in support of a separate patent on June 13, 2007, upon learning that Transamerica intended to file an "inequitable conduct" claim in this case concerning the '201 patent, but Transamerica has since withdrawn that claim.[5] Thus, Transamerica had adequate information about material non-disclosures and deceptive intent to assert an "inequitable conduct" claim before the deadline to amend.

To put it another way, Transamerica not only should have, but did, consider asserting an "inequitable conduct" defense prior to the scheduling deadline to add such a

---

[5]Lincoln responds to the allegation of belated disclosure in the examination of the other patent by explaining that the disclosures were actually made at the deadline for disclosures in that examination, not because of Transamerica's threat to assert an "inequitable conduct" claim in this case.

claim or defense, *cf. Sherman*, 532 F.3d at 718 (expecting a diligent party to research a defense at least prior to the deadline for amendments, if not at the outset of the litigation), but chose not to assert the claim or defense in a timely manner. *See Leary*, 349 F.3d at 908 (holding that, where a party could have pleaded the claim or defense within the parameters of the court's scheduling order, because the party was aware of the underlying facts and circumstances giving rise to the claim or defense, lack of diligence and unwarranted delay, not "good cause," are present). Even supposing that Transamerica only belatedly determined the merits of the defense, based, for example, on the PTO's acceptance of a petition for reexamination of the '201 patent based on prior art that Transamerica had also been asserting, that belated determination does not constitute "good cause," because it is actually a concession that Transamerica had not adequately explored the applicability of the claim or defense before the deadline to amend in light of what Transamerica already knew. *Cf. Sherman*, 532 F.3d at 718 (belated determination of the merits of a claim or defense is a concession that the party did not adequately explore the merits of the claim or defense prior to the applicable deadline).

Therefore, the court concludes that Transamerica did not diligently pursue an "inequitable conduct" claim or defense and, thus, lacks "good cause" for its untimely assertion of such a claim or defense. Consequently, Transamerica's November 5, 2008, Motion To Further Amend Its Amended And Substituted Complaint (D.I. 52) (docket no. 121), and November 5, 2008, Motion To Further Amend Its Amended Answer To Lincoln's Counterclaim (D.I. 53) (docket no. 122) will be denied.

### b. The "patent-eligible subject matter" claim or defense

Transamerica hangs its "good cause" argument concerning its belated assertion of its "patent-eligible subject matter" claim or defense under 35 U.S.C. § 101 on a change in the standard for such a claim or defense in the October 30, 2008, *en banc* decision of

16

the Federal Circuit Court of Appeals in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008). The parties agree that, in *Bilski*, the Federal Circuit Court of Appeals established that a single test, the "machine-or-transformation test," applies to the determination of "patent-eligible subject matter" under 35 U.S.C. § 101. In so holding, the Federal Circuit Court of Appeals rejected the "*Freeman-Walter-Abele*" or "algorithm" test, thereby abrogating *In re Freeman*, 573 F.2d 1237 (CCPA 1978); *In re Walter*, 618 F.2d 758 (CCPA 1980); and *In re Abele*, 684 F.2d 902 (CCPA 1982), and also rejected the "useful, concrete, and tangible result" test, thereby abrogating *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (*en banc*); *State Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998); and *AT&T Corp. v. Excel Communications, Inc.*, 172 F.3d 1352 (Fed. Cir. 1999), and also rejected other tests. *See Bilski*, 545 F.3d at 958-61. This court understands *Bilski* to clarify which one of several tests previously applied by the courts should apply to determine "patent-eligible subject matter," rather than to make a new test out of whole cloth. Nevertheless, even assuming that *Bilski* created "new law," the court concludes that *Bilski* does not excuse Transamerica's untimely assertion of a "patent-eligible subject matter" claim or defense.

Transamerica's primary problem with the timing of its assertion of this claim or defense is, again, its concession that it timely considered pursuing such a claim or defense, but decided that it would be too hard to prove in this case.[6] Even to the extent that *Bilski* may have made such a claim or defense appear more viable, *see Sherman*, 532 F.3d at 718 (considering whether a change in the law, newly discovered facts, or any other changed circumstances made a defense more viable after the scheduling deadline for amending

---

[6]Transamerica did timely assert a claim that another of Lincoln's patents did not relate to "patent-eligible subject matter" in other litigation between the parties.

17

pleadings), and even if Transamerica could not have predicted the outcome in *Bilski*, as it contends here, the court finds that Transamerica's belated determination of the merits of the defense, based, for example, on a change in the law in *Bilski*, does not constitute "good cause," because that belated determination is actually a concession that Transamerica had not adequately explored the applicability of the claim or defense before the deadline to amend in light of what Transamerica already knew. *Cf. Sherman*, 532 F.3d at 718 (belated determination of the merits of a claim or defense is a concession that the party did not adequately explore the merits of the claim or defense prior to the applicable deadline); *see also Leary*, 349 F.3d at 908 (holding that, where a party could have pleaded the claim or defense within the parameters of the court's scheduling order, because the party was aware of the underlying facts and circumstances giving rise to the claim or defense, lack of diligence and unwarranted delay, not "good cause," are present). Although *Bilski* may have made a "patent-eligible subject matter" claim or defense more viable, Transamerica certainly knew or should have known that the Federal Circuit Court of Appeals was considering the standards for "patent-eligible subject matter" *en banc* in *Bilski*,[7] and should have preserved such a claim or defense by timely asserting it, even if Transamerica could not predict what rule would ultimately come out of the *en banc* decision. At the latest, Transamerica should have asserted the "patent-eligible subject matter" claim or defense in February 2008, when the Federal Circuit Court of Appeals granted *en banc* review in *Bilski*. Had Transamerica done so, and had this court applied a different standard than the one ultimately chosen in the *en banc* decision in *Bilski* to such a claim or defense, Transamerica would have been entitled to application of the *Bilski*

---

[7] Indeed, one of Transamerica's attorneys filed an *amicus* brief in *In re Bilski* in April 2008.

18

standard on appeal. *See, e.g.*, *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1368 (Fed. Cir. 2004).

Contrary to Transamerica's contentions, however, the application of *Bilski* to whether the '201 patent involves "patent-eligible subject matter" under 35 U.S.C. § 101 is not inevitable, whether or not this court initially addresses such a claim or defense. Transamerica's reliance on *Sulzer Textil*, 358 F.3d at 1368, for this proposition is misplaced. In *Sulzer Textil*, the Federal Circuit Court of Appeals found that, subsequent to the district court's order excluding certain evidence on the basis of the appellate court's decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000) (*en banc*) ("*Festo I*"), the Supreme Court had vacated the appellate court's decision and changed the applicable law in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ("*Festo II*"). *Sulzer Textil*, 358 F.3d at 1368. "In these circumstances," the court explained, "it is the new law that governs the appeal." *Id.* (citing *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 282 (1969), as noting that, "if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed"). The circumstances here are obviously different: The question here is not whether the appellate court will apply a "new rule" to a "patent-eligible subject matter" claim or defense on appeal, even though this court has applied a different rule prior to the announcement of the "new rule," the question here is whether Transamerica is entitled to assert an otherwise untimely claim or defense of "patent-eligible subject matter." The question now before the court, therefore, is *not* a question controlled by any "new rule" in *Bilski* concerning "patent-eligible subject matter," but by the "good cause" standard in Rule 16(b) as explained in *Sherman*, 532 F.3d at 716-18. Here, for the reasons stated above, Transamerica has failed to establish "good cause" for belated assertion of a "patent-eligible

19

subject matter" claim or defense. Thus, the appellate court will have no basis to apply a "new rule" to a claim or defense that is not part of this litigation at all and to which this court has not applied an "old rule."[8]

This court also observes that, if an appellate court would inevitably consider a claim or defense on appeal, even though that claim or defense was not timely asserted in the trial court, then the requirement of a scheduling order and the "good cause" requirement for modification of that scheduling order in Rule 16 would be eviscerated. *See, e.g., Sherman*, 532 F.3d at 716 (noting that the plain language of Rule 16(b) states both that district courts must issue a scheduling order limiting the time to amend the pleadings, and that a scheduling order "may be modified only for good cause," and also noting that "[t]o permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) 'would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure'" (quoting *Sosa*, 133 F.3d at 1419)). As the undersigned has repeatedly observed, "'The Magistrate's Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *See Eischeid v. Dover Constr., Inc.*, 217 F.R.D. 448, 454 (N.D. Iowa 2003) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)); *Swanson v. Van Otterloo*, 177 F.R.D. 645, 646 (N.D. Iowa 1998) (same); *Waitek v. Dalkon Shield Claimants Trust*, 908 F. Supp. 672, 687 (N.D. Iowa 1995) (same); *Widmer-Baum v. Chandler-Halford*, 162 F.R.D. 545, 556

---

[8]Although Transamerica's reliance on *Sulzer Textil* for the proposition that the Federal Circuit Court of Appeals will inevitably apply *Bilski* to a claim or defense that has not even been properly raised in this litigation is demonstrably—indeed, obviously—wrong, the court will assume that Transamerica's argument is based simply on a mistaken reading of *Sulzer Textil*. Whatever the reason, Transamerica's reading is a flummadiddle.

(N.D. Iowa 1994) (same); *Tyler v. Iowa State Trooper Badge No. 297*, 158 F.R.D. 632, 636 (N.D. Iowa 1994) (same); *Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994) (same); *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 507, 510 (N.D. Iowa 1992) (same). Rather, the scheduling order is an important tool in controlling litigation and managing dockets, as reflected in Rule 16(b)'s requirement of such an order and "good cause" for its modification. *Id.* at 454-55.

Therefore, the court concludes that Transamerica did not diligently pursue a "patent-eligible subject matter" claim or defense and, thus, lacks "good cause" for its untimely assertion of such a claim or defense. Consequently, Transamerica's November 25, 2008, Motion To Amend Pleadings To Include A Defense And Claim For Declaratory Judgment Under 35 U.S.C. § 101 (docket no. 156) will be denied.

### C. Alternative Rule 15 Analysis

Even if the proper standard here was not the "good cause" standard under Rule 16(b), but the "freely given when justice so requires" standard under Rule 15(a), the court would still deny Transamerica's Motions To Amend Pleadings. Again, under Rule 15(a), "[a] district court appropriately denies the movant leave to amend if 'there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Sherman*, 532 F.3d at 715 (quoting *Moses.com Sec., Inc.*, 406 F.3d at 1065, with internal quotation marks omitted); *Baptist Health*, 477 F.3d at 544 (also observing that "a court may deny the motion based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility"). There may be circumstances in which justice would require the court to grant leave to amend based on an unforeseen

21

change in the law. This is not such a case, however, because, for essentially the reasons stated above, Transamerica unduly delayed asserting the claims and defenses it now wishes to assert, even after the *factual* bases for such claims or defenses were readily apparent, and the *legal* bases for such claims or defenses were not wholly lacking. Moreover, Transamerica failed to assert these claims and defenses, even upon the prior occasion when it amended its Complaint and its Answer To Lincoln's Counterclaim to assert other invalidity and unenforceability claims or defenses. At least as to the "inequitable conduct" claim and defense, there is also an inference of dilatory motive, in that, more than a year ago, Transamerica threatened such a claim or defense, then withdrew it, only to reassert it just three months before trial.

Therefore, in the alternative, and in an abundance of caution, the court finds that it would also deny Transamerica's Motions To Amend Pleadings under Rule 15 standards.

### D. Further Implications

As the court noted at the outset of this ruling, the disposition of Transamerica's Motions To Amend Pleadings will necessarily have an impact upon Transamerica's November 24, 2008, Motion To Amend Scheduling Order (docket no. 154), which seeks amendment of the Scheduling Order to permit the parties to address certain "*Bilski* issues," and Transamerica's November 18, 2008, Motion For Summary Judgment That All Asserted Claims Of The '201 Patent Are Invalid Under 35 U.S.C. § 101 For Failure To Claim Patent-Eligible Subject Matter (docket no. 149), which relies on *Bilski*, and may also have an impact on other pending motions or portions of other pending motions. Because the court will deny Transamerica's Motions To Amend Pleadings, it follows that Transamerica's November 24, 2008, Motion To Amend Scheduling Order should also be denied as moot, because there are no "*Bilski* issues" in the case. Likewise, Transamerica's

November 18, 2008, Motion For Summary Judgment That All Asserted Claims Of The '201 Patent Are Invalid Under 35 U.S.C. § 101 For Failure To Claim Patent-Eligible Subject Matter should be stricken, because there is no § 101 claim or defense in this case.

## III. CONCLUSION

Upon the foregoing,

1.     Transamerica's November 5, 2008, Motion To Further Amend Its Amended And Substituted Complaint (D.I. 52) (docket no. 121) is **denied**;

2.     Transamerica's November 5, 2008, Motion To Further Amend Its Amended Answer To Lincoln's Counterclaim (D.I. 53) (docket no. 122) is **denied**;

3.     Transamerica's November 25, 2008, Motion To Amend Pleadings To Include A Defense And Claim For Declaratory Judgment Under 35 U.S.C. § 101 (docket no. 156) is **denied**;

4.     Transamerica's November 24, 2008, Motion To Amend Scheduling Order (docket no. 154) is **denied as moot**; and

5.      Transamerica's November 18, 2008, Motion For Summary Judgment That All Asserted Claims Of The '201 Patent Are Invalid Under 35 U.S.C. § 101 For Failure To Claim Patent-Eligible Subject Matter (docket no. 149) is **stricken**.

**IT IS SO ORDERED.**

**DATED** this 5th day of December, 2008.

_Mark W. Bennett_
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

23