**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

TRANSAMERICA LIFE INSURANCE
COMPANY, WESTERN RESERVE
LIFE ASSURANCE CO. OF OHIO, and
TRANSAMERICA FINANCIAL LIFE
INSURANCE COMPANY,

    Plaintiffs,

vs.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

    Defendant.

No. C 06-110-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING LINCOLN'S**
**OBJECTION TO MAGISTRATE**
**JUDGE'S ORDER GRANTING**
**TRANSAMERICA LEAVE TO FILE**
**A SECOND SUPPLEMENTAL**
**EXPERT REPORT**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 *B. The Motion To Supplement And The Challenged Order* . . . . . . . . . . . 3
 *C. Lincoln's Objection* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
 *D. Transamerica's Response* . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
 *A. Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
 *B. Review Under The Scheduling Order Standard* . . . . . . . . . . . . . . . 10
  *1. Was the ruling "contrary to law"?* . . . . . . . . . . . . . . . . . 10
  *2. Was the ruling "clearly erroneous"?* . . . . . . . . . . . . . . . . 13
 *C. Review Under Rule 26(e) Standards* . . . . . . . . . . . . . . . . . . . . 17
 *D. Review Under Rule 37(c) Standards* . . . . . . . . . . . . . . . . . . . . 18

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Thisis patent litigation comes before the court on one party's objections, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, to an order of a magistrate judge granting the opposing party's motion for leave to supplement its expert's report. The parties dispute whether the late supplementation of the expert's report complied with the requirements of the court's scheduling order, whether there was any substantial justification for the belated supplementation, and whether one party or the other will be prejudiced by allowing or prohibiting the belated supplementation.

## I. INTRODUCTION

### A. Procedural Background

This litigation involves United States Patent No. 7,089,201 B1 (the '201 patent), which is entitled "METHOD AND APPARATUS FOR PROVIDING RETIREMENT INCOME BENEFITS." The '201 patent is assigned to Lincoln National Life Insurance Company (Lincoln). On August 8, 2006, Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company collectively as "Transamerica," filed a Complaint For Declaratory Judgment (docket no. 1) initiating this action. In its Complaint, Transamerica asserts, in essence, that it is not infringing the '201 patent by selling various annuity product contracts. In contrast, in an Answer To Plaintiffs' Complaint And Patent Infringement Counterclaim (docket no. 14), filed December 29, 2006, Lincoln seeks declarations that the '201 patent is not invalid and that Transamerica is infringing it. Lincoln also seeks damages for infringement, injunctive

2

relief from such infringement, and reasonable attorney fees for litigating this matter. At the times pertinent here, trial in this matter was set to begin on December 1, 2008, but the trial was subsequently continued to February 2, 2009, to accommodate the court's schedule.

The pertinent part of the March 16, 2007, Scheduling Order, Discovery Plan, And Order On Miscellaneous Pretrial Matters (Scheduling Order) (docket no. 23) in this case provided for filing and supplementation of expert reports, as follows:

> Unless leave of court is applied for and given, no expert reports other than the Initial Expert Reports and the Rebuttal Expert Reports will be permitted, although generally, leave will be granted for a party to serve a supplemental expert report prepared and served promptly following the discovery of information not known or reasonably available to the party's expert at the time of the earlier report. Immediately following service of a supplemental expert report, the party offering the expert must make the expert available for deposition.

Scheduling Order (docket no. 23), "Discovery Plan," ¶ 9. Pursuant to the Scheduling Order, as subsequently amended, the deadline to serve Initial Expert Reports was May 1, 2008, and the deadline to serve Rebuttal Expert Reports was June 23, 2008.


### B. The Motion To Supplement And The Challenged Order

On October 22, 2008, Transamerica filed a Motion For Leave To Serve Supplemental Report Of A. Scott Logan (docket no. 107). Thus, Transamerica's motion to supplement its expert's report was filed more than five months after the deadline to serve its Initial Expert Report, four months after Lincoln's deadline to serve a Rebuttal Expert Report, and less than six weeks before trial was scheduled to begin. In its motion, Transamerica sought leave to amend paragraph 9 of the "Discovery Plan" in the

Scheduling Order to permit supplementation of a report by its expert based on what Transamerica contended was information discovered after the close of discovery, including (1) new factual assertions and documents revealed by Lincoln, and (2) an order issued by the United States Patent and Trademark Office (USPTO) on September 18, 2008, granting *ex parte* reexamination of the '201 patent. Somewhat more specifically, Transamerica sought leave to amend Mr. Logan's report to address the following matters: (1) what Transamerica alleged was Lincoln's new and inaccurate assertion that the '201 patent was not obvious owing to "secondary considerations," including "praise of others regarding the invention"; (2) what Transamerica alleged was Lincoln's new and inaccurate assertion that it invented the broad concept of "GMWBs," or guaranteed minimum withdrawal benefits in annuity plans; and (3) the USPTO's September 18, 2008, order granting an *ex parte* application for reexamination of the '201 patent on the basis of certain prior art, including what the parties call "the Fortis prior art reference," which Transamerica argued rebutted Lincoln's contention that such prior art was essentially the same as Equitable's "Golden '815 patent," which the original examiner had found did not bar the '201 patent. Lincoln resisted Transamerica's motion for leave to supplement the expert's report.

Chief United States Magistrate Judge Paul A. Zoss, to whom Transamerica's motion had been assigned, held a hearing on the motion on October 29, 2008. In the course of the hearing, Judge Zoss observed,

> [I]ts obvious to me that both parties have had a chance to dissect [the supplemental report] in detail, both parties have gone, in particular Lincoln has gone through it and picked it apart so I don't think its any great surprise or any great, uh, it's not that long and it's not that detailed and it deals with some very discrete limited issues whether they are beyond the whether they are justified or not, I find there is no sufficient prejudice or problem. . . .

4

Hearing Transcript (Lincoln's Exhibit 2), p. 18, *ll.* 2-7. That same day, Judge Zoss issued an Order (docket no. 116), granting Transamerica's motion, finding that Lincoln "has not shown it will suffer sufficient prejudice to deny the motion." Judge Zoss did make clear, however, that his order did not allow amendment of Transamerica's Prior Art Statement, nor did it take any position on the admissibility at trial of the supplemental opinions contained in the report. Judge Zoss also directed Transamerica to produce Mr. Logan for a supplemental deposition as soon as possible, but not later than November 5, 2008; permitted Lincoln to offer supplemental evidence or opinions using experts already designated without seeking leave to file an additional rebuttal expert report; and permitted Lincoln to designate an additional expert witness, if necessary, to rebut Mr. Logan's supplemental expert report. As noted above, at the time of Judge Zoss's ruling, trial in this matter was set to begin on December 1, 2008, but trial in this matter was subsequently continued to February 2, 2009, to accommodate the court's schedule, and Mr. Logan's supplemental deposition has been reset for December 19, 2008.

### C. Lincoln's Objection

This matter comes before the court pursuant to Lincoln's November 12, 2008, Rule 72 Objection To Order Granting Plaintiffs' Motion For Leave To Serve Second Supplemental Expert Report of A. Scott Logan (Lincoln's Objection) (docket no. 127), which challenges Judge Zoss's October 29, 2008, Order. In its Objection to Judge Zoss's October 28, 2008, Order granting Transamerica leave to supplement its expert's report, Lincoln argues that the Order was clearly erroneous and contrary to Rules 16, 26, and 37 of the Federal Rules of Civil Procedure, Local Rules 16 and 26, and the court's Scheduling and Pretrial Orders, as well as well-settled Eighth Circuit law.

5

More specifically, Lincoln argues that, instead of applying the standard in the Scheduling Order—*i.e.*, whether the information prompting the supplemental report was "not known or reasonably available to the party's expert at the time of the earlier report," *see* Scheduling Order, "Discovery Plan," ¶ 9—or the Rule 37(c) standard, which requires a determination of whether the belated supplement is "substantially justified or harmless," Judge Zoss placed the burden on Lincoln to show that it would be prejudiced by the belated supplemental report. Lincoln also argues that Judge Zoss permitted the supplementation of Mr. Logan's expert report even though Transamerica has known since this lawsuit was initiated that Claim 35 of the '201 patent was directed to GMWBs and has known about the Fortis prior art reference on which Mr. Logan would now opine for years, but Transamerica made a decision not to rely upon the Fortis prior art reference in connection with its invalidity defenses—indeed, Transamerica previously listed the Fortis reference as relevant prior art, then withdrew it in subsequent filings. Lincoln also argues that allowing the belated supplementation of Mr. Logan's expert report does prejudice Lincoln, because it comes on the eve of trial and injects entirely new prior art into the case, without affording Lincoln an opportunity for the exponentially expanded discovery that such new prior art would warrant. Lincoln contends that the opportunity to challenge the admissibility of Mr. Logan's supplemental opinions is cold comfort, where the supplementation of Mr. Logan's opinions should not have been allowed at all. Lincoln contends that Transamerica should not benefit from the fortuitous continuance of the trial, particularly where the continuance was not part of Judge Zoss's erroneous reasoning, and the continuance still does not permit Lincoln adequate opportunity to address the supplemental opinions.

### D. Transamerica's Response

Transamerica filed a Response (docket no. 158) to Lincoln's Objection on November 26, 2008. In its Response, Transamerica argues that Judge Zoss's order should be affirmed, because Mr. Logan's supplemental report is timely under Rule 26(e)(2), where no portion of the scheduling order required supplementation more than thirty days before trial, citing this court's decision in *United States v. Hawley*, 562 F. Supp. 2d 1017, 1030 (N.D. Iowa 2008). Transamerica also reiterates the argument that it made to Judge Zoss that its supplementation of Mr. Logan's expert report was properly based on new information, in the form of new factual assertions and documents disclosed by Lincoln concerning the scope of the '201 patent and Lincoln's supposed invention of the entire range of GMWBs, which the Fortis prior art reference rebuts, and the USPTO's recent order granting *ex parte* reexamination of the '201 patent in light of certain prior art, which demonstrates that Lincoln's arguments about non-obviousness are incorrect. Thus, Transamerica argues that its supplemental expert report was "substantially justified," within the meaning of Rule 37(c), by Lincoln's new arguments about its invention of GMWBs and its change concerning the alleged conception date and effective date for patent priority, as well as by the USPTO's reexamination order. Transamerica also argues that supplementation of its report is "harmless" within the meaning of Rule 37(c), and Lincoln should not be heard to complain otherwise, where Lincoln injected the new information on which the supplemental report is based after the close of discovery, and Lincoln itself has been aware of the Equitable annuity products, the Golden '815 patent, and the Fortis prior art reference for years. Transamerica also argues that the continuance of the trial date is relevant here, because it demonstrates that Lincoln will have two additional months to prepare any necessary rebuttal evidence that Lincoln believes is necessary to challenge the prior art addressed in Mr. Logan's supplemental report. On the

other hand, Transamerica argues that it will be prejudiced by exclusion of highly relevant evidence, which is too harsh a sanction for any untimeliness of its supplemental report under the circumstances of this case, where that untimeliness results from Lincoln's conduct, not Transamerica's lack of diligence.

## II. LEGAL ANALYSIS

### A. Standard Of Review

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, "[t]he district judge in the case must consider timely objections [to a magistrate judge's ruling on nondispositive matters] and modify or set aside any part of the order that is clearly erroneous or contrary to law." FED. R. CIV. P. 72(a). Thus, review under Rule 72(a) requires consideration of both a "clearly erroneous" prong and a "contrary to law" prong, *i.e.*, review of both the magistrate judge's findings of fact and the magistrate judge's determination and application of legal standards, respectively.

Although the Eighth Circuit Court of Appeals has not addressed the standard of review under Rule 72(a), it has observed, in another context, that "clear error" is a "deferential standard of review" that allows the reviewing court to reverse "only . . . when the entire record definitely and firmly illustrates that the lower court made a mistake." *United States v. Marshall*, 411 F.3d 891, 894 (8th Cir. 2005) (citing *United States v. Quintana*, 340 F.3d 700, 702 (8th Cir. 2003), and *United States v. Causor-Serrato*, 234 F.3d 384, 389 (8th Cir. 2000)). Other Circuit Courts of Appeals have provided comparable formulations of the "clearly erroneous" standard in the Rule 72(a) context. *See, e.g., Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006) ("In reexamining this question [upon objections to a magistrate judge's ruling on a non-dispositive matter], the district court was required to 'defer to the magistrate judge's ruling unless it [was] clearly

erroneous or contrary to law.'" *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Grimes v. City & County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991)). Under the clearly erroneous standard, 'the reviewing court [must] affirm unless it "on the entire evidence is left with the definite and firm conviction that a mistake has been committed."' *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L.Ed. 746 (1948))."); *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) ("Like the district court, we review these factual findings under the 'clearly erroneous' rubric. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This means that we must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, we 'form a strong, unyielding belief that a mistake has been made.' *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)."); *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard [under Rule 72(a)] means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made."). So have federal district courts. *See Vision Center Northwest, Inc. v. Vision Value, L.L.C.*, 2008 WL 5191456, *1 (N.D. Ind. Dec. 10, 2008) (slip op.); *Catskill Development, L.L.C. v. Park Place Entertainment Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002); *Westefer v. Snyder*, 472 F. Supp. 2d 1034, 1036-37 (S.D. Ill. 2006).

The Eighth Circuit Court of Appeals also has not opined on the meaning of the "contrary to law" prong of review under Rule 72(a). One federal district court has explained, however, that "[a]n order may be deemed contrary to law [within the meaning of Rule 72(a)] 'when it fails to apply or misapplies relevant statutes, case law or rules of

9

procedure.'" *Catskill Development, L.L.C.*, 206 F.R.D. at 86 (quoting *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000)).

## B. Review Under The Scheduling Order Standard

### 1. Was the ruling "contrary to law"?

A magistrate judge's order on a non-dispositive matter may be set aside, *inter alia*, because it is "contrary to law." FED. R. CIV. P. 72(a). Here, the applicable law for determination of whether supplementation of Transamerica's expert report was permissible was, first and foremost, the Scheduling Order in this case, which set deadlines for serving initial, rebuttal, and supplemental expert reports. Rule 16(b) of the Federal Rules of Civil Procedure expressly states that the district court "must issue a scheduling order," FED. R. CIV. P. 16(b)(1); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (recognizing that Rule 16(b) states that the district court must issue a scheduling order), and provides, further, that such a scheduling order may "include other appropriate matters" besides those specifically listed. FED. R. CIV. P. 16(b)(3)(B)(vi). As the undersigned has repeatedly observed, most recently in this case, "'The Magistrate's Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *See Eischeid v. Dover Constr., Inc.*, 217 F.R.D. 448, 454 (N.D. Iowa 2003) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)); *see also Transamerica Life Ins Co. v. Lincoln Nat'l Life Ins Co.*, 2008 WL 5142182, *10 (N.D. Iowa Dec. 5, 2008) (slip op.) (docket no. 167) (same); *Swanson v. Van Otterloo*, 177 F.R.D. 645, 646 (N.D. Iowa 1998) (same); *Waitek v. Dalkon Shield Claimants Trust*, 908 F. Supp. 672, 687 (N.D. Iowa 1995) (same); *Widmer-Baum v. Chandler-Halford*, 162 F.R.D. 545, 556 (N.D. Iowa 1994) (same); *Tyler v. Iowa State Trooper Badge No. 297*, 158 F.R.D. 632, 636 (N.D. Iowa 1994) (same); *Rouse v.*

10

*Farmers State Bank of Jewell, Iowa*, 866 F. Supp. 1191, 1198 (N.D. Iowa 1994) (same); *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 507, 510 (N.D. Iowa 1992) (same). Rather, the scheduling order is an important tool in controlling litigation and managing dockets, as reflected in Rule 16(b)'s requirement of such an order and "good cause" for its modification. *Id.* at 454-55.

As noted above, the Scheduling Order expressly states the standard for obtaining leave to supplement an expert's report to be whether the information prompting the supplemental report was "not known or reasonably available to the party's expert at the time of the earlier report." *See* Scheduling Order, "Discovery Plan," ¶ 9. Nothing in Judge Zoss's October 29, 2008, Order indicates that he applied this standard, because there is no reference whatsoever in the Order to whether or not Transamerica's supplemental expert report was prompted by information not known or reasonably available to the party's expert at the time of the earlier report, even if there were extensive arguments about that fact in "the parties' voluminous filings" and "arguments of counsel" upon which the ruling was ostensibly based. *See* Order (docket no. 116), 1. Rather, that Order shows that the only standard Judge Zoss explicitly applied was whether or not Lincoln had shown that it would be "prejudiced" by the supplemental report. *Id.* (granting Transamerica's motion, because Lincoln "has not shown it will suffer sufficient prejudice to deny the motion").

Similarly, the Scheduling Order required a determination of whether a supplemental report based on new information "not known or reasonably available to the party's expert at the time of the earlier report" was "prepared and served *promptly* following the discovery of [such new] information." *See* Scheduling Order, "Discovery Plan," ¶ 9 (emphasis added). Again, nothing in Judge Zoss's October 29, 2008, Order indicates that he considered the timeliness of Transamerica's supplemental report, notwithstanding that

11

Transamerica's motion for leave to supplement its expert's report was only filed a little less than six weeks before the trial date, and Lincoln argued that Transamerica had long known about the information on which the supplemental report was based.

Because Rule 16 permits the court's Scheduling Order to "include other appropriate matters," *see* FED. R. CIV. P. 16(b)(3)(vi), the Scheduling Order permissibly provided the standards for supplementation of an expert's report. The magistrate judge's failure to apply that standard was, thus, contrary to law, and the October 28, 2008, Order may be set aside on this ground alone. *See* FED. R. CIV. P. 72(a) (a magistrate judge's ruling on a non-dispositive matter must be set aside if it was, *inter alia*, "contrary to law"); *see also Catskill Development, L.L.C.*, 206 F.R.D. at 86 ("An order may be deemed contrary to law [within the meaning of Rule 72(a)] 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" (quoting *Tompkins*, 92 F. Supp. 2d at 74)).

Transamerica argues that Judge Zoss's use of a "prejudice" standard was, nevertheless, legally correct, assuming that Transamerica had failed to timely supplement the expert's report, because Rule 37(c) does not bar untimely disclosed evidence or information if the late disclosure was "substantially justified" or is "harmless." *See* FED. R. CIV. P. 37(c)(1). Even if the "harmless" standard for allowing use of late disclosed information or evidence equates to the "prejudice" to the opposing party, as Transamerica apparently contends, the burden should have been placed on the proponent of the late-disclosed evidence or information, Transamerica, to show the *lack* of "prejudice" to the opposing party or that the belated disclosure was "harmless" to the opposing party, not on the party opposing supplementation, Lincoln, to show that it *was* prejudiced, as Judge Zoss's Order allocated the burden in this case. Logically, because leave to supplement was required, the burden was on the party seeking such leave to demonstrate that the requirements for obtaining such leave had been met. Judge Zoss turned the Rule 37(c)

12

standard and the Scheduling Order standard on their heads, making supplementation automatic, absent a showing of cause to disallow the supplement, instead of requiring the proponent to demonstrate that leave to supplement should be granted.

Therefore, the October 29, 2008, Order was "contrary to law," in that it failed to apply the correct legal standards to the determination of whether or not leave should be granted to Transamerica to supplement its expert's report, and as such, this court must set aside that Order. *See* FED. R. CIV. P. 72(a) ("The district judge in the case *must* consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." (emphasis added)).

### 2.    *Was the ruling "clearly erroneous"?*

Although the court has concluded that the October 29, 2008, Order must be set aside as "contrary to law," because Judge Zoss failed to apply the correct legal standards to determine whether or not leave to supplement Transamerica's expert's report should be granted, the court will also consider whether that Order was "clearly erroneous," the other prong of Rule 72(a) review. *See* FED. R. CIV. P. 72(a) (the district court must set aside a magistrate judge's order that is "contrary to law" or "clearly erroneous"). This court believes that the Order is "clearly erroneous," because "the entire record definitely and firmly illustrates that the [magistrate judge] made a mistake." *Marshall*, 411 F.3d at 894 (explaining the "clear error" standard of review in a non-Rule 72(a) context); *accord Allen*, 468 F.3d at 658 (stating a similar formulation of the "clearly erroneous" standard under Rule 72(a)); *Phinney*, 199 F.3d at 4 (same); *Weeks*, 126 F.3d at 943 (same).

The correct legal standard for leave to supplement an expert's report here, as set forth in the Scheduling Order, is whether the information prompting the supplemental report was "not known or reasonably available to the party's expert at the time of the

earlier report." *See* Scheduling Order, "Discovery Plan," ¶ 9. Here, Transamerica admits that both parties have been aware (since at least early 2006) that Fortis was the first to publicly disclose and offer for sale a GMWB and that Transamerica identified, and then withdrew, the Fortis product as relevant prior art in its interrogatory responses. Thus, Transamerica plainly cannot meet the requirements of the Scheduling Order to supplement is expert's report, if knowledge of the prior art in question is all that was reasonably required to prompt inclusion of that prior art in Transamerica's initial expert report.

Transamerica asserts that, at the time that its initial expert report was due, however, Lincoln was not asserting that it had invented GMWBs. Thus, Transamerica argues that things changed significantly after the deadline for its initial expert report, because Lincoln unexpectedly and untimely (and inaccurately) asserted that it, not Fortis, invented GMWBs. Transamerica also argues that things changed when the USPTO issued its order granting *ex parte* reexamination of the '201 patent on September 18, 2008, on the basis of certain prior art, including the Fortis prior art reference, which rebuts Lincoln's contention that such prior art was essentially the same as other prior art references considered by the original examiner and found not to bar the '201 patent. This argument appears to the court to be, in essence, that Transamerica did not know the *relevance* of the information in question until after it served its initial expert's report, not that it did not know about the information, and that belated discovery of the *relevance* of the information should satisfy the requirements for supplementation under the Scheduling Order.

The court finds that neither of Transamerica's contentions based on new *relevance* of the information because of changed circumstances demonstrates that Transamerica's supplemental expert's report would satisfy the requirements for supplementation under the Scheduling Order. This is so, because even the "changed circumstances" on which Transamerica relies were not the first circumstances to demonstrate the *relevance* of the

14

information *already known to Transamerica*, even if newly *relevant* information could satisfy the standard for supplementation of an expert's report under the Scheduling Order. It has been clear since this litigation was initiated that the validity of the '201 patent's GMWB provisions in light of prior art was an issue in the case, and it is equally clear that Transamerica recognized the relevance of the Fortis prior art reference to that issue by initially disclosing it in an earlier identification of relevant prior art, but that Transamerica then made a strategic decision not to rely on the Fortis prior art reference in later prior art statements. This court also reiterates its previous rejection of the USPTO's September 18, 2008, order for *ex parte* reexamination of the '201 patent as a change in circumstances warranting the injection of new issues into this case. Transamerica's belated recognition of the relevance of certain prior art purportedly based on the USPTO's acceptance of a petition for reexamination of the '201 patent based on prior art that Transamerica already knew about—and in at least one instance, had asserted, then withdrawn—is actually a concession that Transamerica had not adequately explored the applicability of the prior art in light of what Transamerica already knew. *Cf. Transamerica Life Ins Co. v. Lincoln Nat'l Life Ins Co.*, 2008 WL 5142182, *8 (N.D. Iowa Dec. 5, 2008) (slip op.) (docket no. 167) (holding that Transamerica's belated determination of the merits of a claim or defense in light of the USPTO's order granting reexamination of the '201 patent did not constitute "good cause" for belated amendment of the pleadings, particularly where Transamerica had asserted, then withdrawn the defense, because the belated determination was actually a concession that Transamerica had not adequately explored the applicability of the claim or defense before the deadline to amend the pleadings in light of what Transamerica already knew).

Nor, for that matter, was Transamerica's motion for leave to supplement its expert's report "promptly" offered after Transamerica purportedly learned of or learned of the

15

relevance of the information upon which the proffered supplemental report is based, as the Scheduling Order requires. *See* Scheduling Order, "Discovery Plan," ¶ 9 (a supplemental report will be allowed if it was "prepared and served *promptly* following the discovery of [new] information" (emphasis added)). Again, Transamerica admits that both parties have been aware (since at least early 2006) that Fortis was the first to publicly disclose and offer for sale a GMWB and that Transamerica identified, and then withdrew, the Fortis product as prior art in its interrogatory responses. Waiting two years after learning of the prior art in question to offer a supplemental expert's report based on that prior art certainly is not "promptly" offering the supplement. A supplement concerning the validity of a patent involving GMWBs also was not offered "promptly" where it was offered long after the initiation of litigation that plainly involved the validity and scope of that patent's GMWB provisions. Again, the USPTO's order for reexamination at best offered support for arguments that Transamerica had already considered and made a strategic decision not to pursue, so that the USPTO's order does not set the start date for "prompt" disclosure of a supplemental expert's report.

Thus, any finding by Judge Zoss—implicit at best—that Transamerica's supplemental expert's report was based on information "not known or reasonably available to the party's expert at the time of the earlier report" and that the supplemental report was "promptly" offered, *see* Scheduling Order, "Discovery Plan," ¶ 9, was "clearly erroneous," and must be set aside. FED. R. CIV. P. 72(a) (the district judge must set aside a magistrate judge's order on a non-dispositive matter that is "clearly erroneous").

## C. Review Under Rule 26(e) Standards

Transamerica argues that Judge Zoss's Order allowing it to supplement its expert's report should be affirmed, because Mr. Logan's supplemental report is timely under Rule 26(e)(2), where no portion of the scheduling order required supplementation more than thirty days before trial. Transamerica cites this court's decision in *United States v. Hawley*, 562 F. Supp. 2d 1017, 1030 (N.D. Iowa 2008), in support of this argument. This court notes that Judge Zoss's Order makes no such Rule 26(e) analysis, but the court will, nevertheless, consider the merits of Transamerica's argument based on Rule 26(e).

In *Hawley*, this court addressed the timeliness of a supplement to an expert's report under Rule 26(e), as follows:

> [A]s to expert witnesses, Rule 26(e)(2) of the Federal Rules of Civil Procedure provides that a party has a duty to supplement both information included in an expert's report and information given during the expert's deposition and, of more interest here, provides that "[a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." FED. R. CIV. P. 26(e); *see also Wegener [v. Johnson]*, [527 F.3d 687,] 690-91 [(8th Cir. 2008)] (the timeliness of supplemental expert disclosures is controlled by Rule 26(e)). Rule 26(a)(3) provides, in turn, that, "[u]nless the court orders otherwise, these [pretrial] disclosures must be made at least 30 days before trial." FED. R. CIV. P. 26(a)(3). Hawley does not assert, and the court does not find, that any earlier deadline is applicable pursuant to a court order. The court finds that the challenged supplemental expert disclosures were made on or before May 28, 2008, more than thirty days before trial is scheduled to begin on June 30, 2008. Therefore, the government's supplementation of its expert disclosures more than thirty days before trial was timely. *Id.*

*Hawley*, 562 F. Supp. 2d at 1030.

17

The problem for Transamerica's reliance on Rule 26(e)(2) and *Hawley* for the timeliness of its supplemental expert report is that, unlike the situation in *Hawley*, the Scheduling Order in this case *does* otherwise provide for supplementation of an expert's report. *See id.* (finding that no earlier deadline than the one provided in Rule 26(e)(2) and Rule 26(a)(3) was applicable pursuant to a court order). The Scheduling Order provides supplementation will only be allowed if the supplemental report is "prepared and served *promptly* following the discovery of [new] information." Scheduling Order, "Discovery Plan," ¶ 9 (emphasis added). The Scheduling Order does not include any catchall language, such as "and no later than" the deadline for pretrial disclosures pursuant to Rule 26(a)(3). As the court explained, above, the supplemental report was not "promptly" offered in this case. Therefore, even had Judge Zoss relied on Rule 26(e)(2) and *Hawley* to find that Transamerica's supplemental expert report was timely, such reliance would have been contrary to law and clearly erroneous, because the Scheduling Order, not Rule 26(e)(2), states the standards for supplementation of expert reports in this case, and any finding that the standards of the Scheduling Order were satisfied would have been clearly erroneous. FED. R. CIV. P. 72(a) (a magistrate judge's order on non-dispositive matters must be set aside if it is "clearly erroneous" or "contrary to law").

## D. Review Under Rule 37(c) Standards

Transamerica also argues that Judge Zoss's ruling granting it leave to supplement its expert's report should be affirmed under Rule 37(c) standards. Although Judge Zoss did not cite such standards in the challenged Order, Transamerica argues that allowing supplementation here was consistent with the "substantially justified" standard in Rule 37(c) and that exclusion of the supplemental report is too harsh a sanction for any untimeliness of its disclosure. Transamerica again cites this court's decision in *United*

18

*States v. Hawley*, 562 F. Supp. 2d 1017 (N.D. Iowa 2008), in support of this contention. Again, this court notes that Judge Zoss's Order makes no such Rule 37(c) analysis, but the court will, nevertheless, consider the merits of Transamerica's argument based on Rule 37(c), where Transamerica contends that the magistrate judge's use of a "prejudice to Lincoln" standard equates with the "harmlessness" standard of Rule 37(c), and otherwise argues that supplementation here satisfies Rule 37(c)'s "substantially justified" standard.[1]

In *Hawley*, this court "'"start[ed] with the premise that a district court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the Court's pretrial order."'" *Hawley*, 562 F. Supp. 2d at 1030 (quoting *Life Plus Int'l v. Brown*, 317 F.3d 799, 803 (8th Cir. 2003), in turn quoting *Dabney v. Montgomery Ward & Co.*, 692 F.2d 49, 51 (8th Cir. 1982) (internal quotations omitted), *cert. denied*, 461 U.S. 957 (1983)). The court explained, further,

> However, when a party fails to make a timely disclosure of evidence, for example, by failing to provide information or identify a witness in compliance with Rule 26(a) or (e) of the Federal Rules of Civil Procedure, "the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson,* 527 F.3d 687, 691-92 (8th Cir. 2008). As the Eighth Circuit Court of Appeals just recently explained,
>
> > The district court may exclude the information or testimony as a self-executing sanction unless the party's

---

[1]The court has already concluded, above, that even if the "prejudice to Lincoln" standard applied by Judge Zoss otherwise equates to the Rule 37(c) "harmlessness" standard, Judge Zoss improperly placed the burden on Lincoln to show that it was prejudiced by the supplementation, rather than on Transamerica to show that the supplementation did not prejudice Lincoln. The court specifically reiterates that conclusion as to the proper allocation of the burden to show "harmlessness" of a late disclosure under Rule 37(c).

> failure to comply is substantially justified or harmless.
> Fed. R. Civ. P. 37(c)(1). When fashioning a remedy,
> the district court should consider, inter alia, the reason
> for noncompliance, the surprise and prejudice to the
> opposing party, the extent to which allowing the
> information or testimony would disrupt the order and
> efficiency of the trial, and the importance of the
> information or testimony. *Sellers v. Mineta,* 350 F.3d
> 706, 711-12 (8th Cir. 2003); *see also Marti v. City of
> Maplewood,* 57 F.3d 680, 683 (8th Cir. 1995) (setting
> forth a variety of possibly relevant factors).
>
> *Wegener,* [527 F.3d] at 691-92. The court has noted,
> however, "that the district court's discretion narrows as the
> severity of the sanction or remedy it elects increases." *Id.* at
> 692-93.

*Hawley*, 562 F. Supp. 2d at 1029-30. In *Hawley*, this court concluded that the resisting party had not been unfairly surprised by any of the purportedly belated supplementation of the government's discovery responses, even if they were technically untimely, and that, where disclosure might have been technically untimely, the government had offered substantial reason for noncompliance. *Id.* at 1030.

The court concludes that neither Rule 37(c) nor the application of that rule in *Hawley* requires the court to allow Transamerica's belated supplementation of its expert's report in this case. First, for the reasons stated, above, in application of the Scheduling Order standard—which led the court to conclude that Transamerica had not offered the supplemental report "promptly following the discovery of information not known or reasonably available to the party's expert at the time of the earlier report," *see* Scheduling Order, "Discovery Plan," ¶ 9—the court now finds that Transamerica's failure to supplement its expert report sooner based on the information in question was not "substantially justified" under Rule 37(c). It has been clear since this litigation was

20

initiated that the validity of the '201 patent's GMWB provisions in light of prior art was an issue in the case, and it is equally clear that Transamerica recognized the relevance of the Fortis prior art reference to that issue by initially disclosing it in an earlier identification of relevant prior art, but that Transamerica then made a strategic decision not to rely on the Fortis prior art reference in later prior art statements. Also, the USPTO's September 18, 2008, order for *ex parte* reexamination of the '201 patent does not "substantially justify" the belated supplementation of the expert's report, which injects new issues into the case, because Transamerica's belated recognition of the relevance of certain prior art purportedly based on the USPTO's acceptance of a petition for reexamination of the '201 patent because of prior art that Transamerica already knew about—and in at least one instance, had asserted, then withdrawn—is actually a concession that Transamerica had not adequately explored the applicability of the prior art in light of what Transamerica already knew. *Cf. Transamerica Life Ins Co. v. Lincoln Nat'l Life Ins Co.*, 2008 WL 5142182, *8 (N.D. Iowa Dec. 5, 2008) (slip op.) (docket no. 167) (holding that Transamerica's belated determination of the merits of a claim or defense in light of the USPTO's order granting reexamination of the '201 patent did not constitute "good cause" for belated amendment of the pleadings, particularly where Transamerica had asserted, then withdrawn the defense, because the belated determination was actually a concession that Transamerica had not adequately explored the applicability of the claim or defense before the deadline to amend the pleadings in light of what Transamerica already knew). To put it another way, Transamerica offers no adequate reason for noncompliance with the Scheduling Order's deadline for disclosure and supplementation of expert reports. *See Hawley*, 562 F. Supp. 2d at 1029 (considering whether there are "adequate reasons for noncompliance" as the first factor in a four-factor test for the appropriate remedy for untimely disclosures under Rule 37(c)'s "substantially justified" and "harmless" standard).

Nor can the court find that the belated supplementation of Transamerica's expert's report would be "harmless" within the meaning of Rule 37(c). Even if Lincoln was not actually surprised by injection of new issues in the expert's supplemental report, because it had also been aware of most or all of the prior art on which the supplemental report is based, Lincoln was certainly prejudiced by belated injection of issues based on that prior art, because it is now severely hampered in its ability to prepare to address Transamerica's reliance on additional prior art such a short time before trial and long after discovery has closed. *Id.* (the second factor in the analysis of the remedy for untimely disclosure under Rule 37(c) is surprise and prejudice to the non-movant). To remedy that prejudice, the court would have to disrupt the order and efficiency of the trial, *see id.* (third factor in determination of the remedy for untimely disclosure under Rule 37(c) is disruption to the order and efficiency of the trial), even though the trial has been continued for two months after the trial date toward which the parties were working at the time of the challenged Order allowing supplementation of the expert's report, if for no other reason than because it was unrealistic to expect Lincoln to analyze the supplemental report, depose the expert, and prepare a rebuttal report within the compressed time available, while pursuing other pretrial preparations.[2] Finally, the importance of the supplemental report, *see id.* (final factor), is severely undercut by Transamerica's initial reliance upon some of the prior art

_____

[2]In this regard, Judge Zoss's findings on the record in the hearing on Transamerica's motion to supplement that "both parties have had a chance to dissect [the supplemental report] in detail, both parties have gone, in particular Lincoln has gone through it and picked it apart so I don't think its any great surprise or any great, uh, it's not that long and it's not that detailed and it deals with some very discrete limited issues whether they are beyond the whether they are justified or not, I find there is no sufficient prejudice or problem," Hearing Transcript at p. 18, *ll.* 10-15, were clearly erroneous, because they plainly did not reflect the full complexity of adequately responding to the supplemental report.

on which the supplemental report is based, then withdrawal of that reliance in favor of reliance on other prior art that Transamerica plainly thought was more important.

Therefore, Transamerica's supplemental expert report would not be allowed, even under the Rule 37(c) "substantially justified" and "harmless" standard.

### III. CONCLUSION

Upon the foregoing, the court finds that the magistrate judge's October 29, 2008, Order (docket no. 116), granting Transamerica's October 22, 2008, Motion For Leave To Serve Supplemental Report Of A. Scott Logan (docket no. 107), is both "contrary to law" and "clearly erroneous" within the meaning of Rule 72(a). The court also finds that the supplemental report should not be allowed under either Rule 26(e)(2) or Rule 37(c).

THEREFORE, Lincoln's November 12, 2008, Rule 72 Objection To Order Granting Plaintiffs' Motion For Leave To Serve Second Supplemental Expert Report of A. Scott Logan (Lincoln's Objection) (docket no. 127) **is sustained**, the magistrate judge's October 29, 2008, Order (docket no. 116) **is set aside**, and Transamerica's October 22, 2008, Motion For Leave To Serve Supplemental Report Of A. Scott Logan (docket no. 107) **is denied**.

**IT IS SO ORDERED.**

**DATED** this 18th day of December, 2008.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

23