**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

TRANSAMERICA LIFE INSURANCE
COMPANY, WESTERN RESERVE
LIFE ASSURANCE CO. OF OHIO, and
TRANSAMERICA FINANCIAL LIFE
INSURANCE COMPANY,

       Plaintiffs,

vs.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

       Defendant.

No. C 06-110-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING MOTIONS IN
LIMINE CONCERNING CERTAIN
EVIDENCE AND ARGUMENTS**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A. Applicable Rules Of Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      *1.   Rule 104* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      *2.   Other rules of evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *B. Evidence Of The PTO's Reexamination Of The '201 Patent* . . . . . . . . 7
      *1.   The evidence in question* . . . . . . . . . . . . . . . . . . . . . . . . 7
      *2.   Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . . 7
      *3.   Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   *C. Evidence Of "Commentary" From The Court's Claim Construction
      Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      *1.   The evidence in question* . . . . . . . . . . . . . . . . . . . . . . . . 14
      *2.   Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 15
      *3.   Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
           *a.   The role of the court's claim constructions in a jury
               trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

         **b.**     *The admissibility of contrary constructions, rejected constructions, and the court's "commentary"* . . . . . 18

  **D. Deposition Testimony Of Frank Alan Camp** . . . . . . . . . . . . . . . . . 27
       **1.** *The evidence in question* . . . . . . . . . . . . . . . . . . . . . . . . 27
       **2.** *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 28
       **3.** *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

  **E. Evidence Of Inadequacies Of The PTO Or Certain Patents** . . . . . . . 32
       **1.** *The evidence in question* . . . . . . . . . . . . . . . . . . . . . . . 32
       **2.** *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 33
       **3.** *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

  **F. Evidence Of Erroneous Infringement And Damages Theories** . . . . . . 38
       **1.** *The evidence in question* . . . . . . . . . . . . . . . . . . . . . . . 38
       **2.** *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 39
       **3.** *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

The parties in this patent litigation have filed numerous motions in limine. The court addressed the motions concerning experts in a separate ruling. Therefore, this ruling addresses only the six motions concerning evidence and arguments not involving expert opinions.

## I. INTRODUCTION

This litigation involves United States Patent No. 7,089,201 B1 (the '201 patent), which is entitled "METHOD AND APPARATUS FOR PROVIDING RETIREMENT INCOME BENEFITS." The '201 patent is assigned to Lincoln National Life Insurance

Company (Lincoln). On August 8, 2006, Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company collectively as "Transamerica," filed a Complaint For Declaratory Judgment (docket no. 1) initiating this action. In its Complaint, Transamerica asserts, in essence, that it is not infringing the '201 patent by selling various annuity product contracts. In contrast, in an Answer To Plaintiffs' Complaint And Patent Infringement Counterclaim (docket no. 14), filed December 29, 2006, Lincoln seeks declarations that the '201 patent is not invalid and that Transamerica is infringing it. Lincoln also seeks damages for infringement, injunctive relief from such infringement, and reasonable attorney fees for litigating this matter.

Trial in this matter was set to begin on December 1, 2008, but the trial was subsequently continued to February 2, 2009, to accommodate the court's schedule, and new deadlines were established for pretrial motions. Specifically, pursuant to the October 31, 2008, Order Resetting Trial, Final Pretrial Conference, Setting Deadlines And Restating Requirements for Final Pretrial Order (Order Resetting Trial) (docket no. 118), the court set a deadline of November 18, 2008, for all motions in limine, with responses due December 5, 2008, and replies due December 10, 2008, although replies were expressly "not encouraged." Order Resetting Trial, § XI.[1] In compliance with the deadlines in the Order Resetting Trial, the parties filed the following motions now before the Court: Lincoln's Motion In Limine No. 2 To Preclude Evidence Of The Pending Reexamination Of The '201 Patent At Trial (docket no. 131); Transamerica's Motion In

---

[1]The Order Resetting Trial also provided that "all *Daubert* motions must be filed on or before November 18, 2008," with responses due December 5, 2008, and replies, again not encouraged, due December 10, 2008. Order Resetting Trial, § XII. The court resolved *Daubert* and other challenges to experts in a separate order (docket no. 214) dated January 5, 2009.

Limine To Exclude Any Reference To The Commentary In The Court's Claim Construction Order Or The Parties' Rejected Claim Construction Positions (docket no. 132); Transamerica's Motion In Limine To Exclude The Deposition Testimony of Frank Alan Camp (docket no. 133); Lincoln's Motion In Limine No. 4 To Exclude Evidence And Arguments Relating To (1) Alleged Inadequacies Of The PTO, (2) Business Method Patents, Or (3) Tax Planning Patents (docket no. 135); Transamerica's Motion In Limine To Exclude All Evidence Relating And Any Reference to Infringement Theories That Are Erroneous As A Matter of Law (docket no. 143); and Transamerica's Motion In Limine To Exclude All Evidence Relating And Any Reference To Damages Theories That Are Erroneous as a Matter of Law (docket no. 147).

Oral arguments have been requested on some or all of these motions. However, the court's crowded schedule has not permitted the timely scheduling of such oral arguments, and the court finds that all of the motions have been extensively briefed, so that it is unlikely that the oral arguments will enhance the court's understanding of the issues presented. Therefore, the motions are deemed fully submitted on the written submissions.

The court will consider each of these motions in turn in its legal analysis. However, the court will first summarize the standards applicable generally to motions to exclude evidence.

## II. LEGAL ANALYSIS

### A. Applicable Rules Of Evidence

#### 1. Rule 104

As a preliminary matter, the court notes that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such

4

preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. Unless otherwise indicated, the court concludes that preliminary determination of the admissibility of the evidence put at issue in the parties' Motions In Limine will likely serve the ends of a fair and expeditious presentation of issues to the jury.

### 2. *Other rules of evidence*

Most of the parties' requests to exclude evidence are based on relevance and potential prejudice pursuant to Rules 401, 402, and 403. Therefore, the court will summarize the standards for admissibility or exclusion of evidence under these rules.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not.

Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. As the Eighth Circuit Court of Appeals has recently explained,

Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of discretion. *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006). Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis." *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

*United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007); *United States v. Farrington*, 499 F.3d 854, 858-59 (8th Cir. 2007). The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)).

Where evidence may otherwise be inadmissible pursuant to Rule 403, the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice of such evidence. *See, e.g, United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A]

6

limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

With these rules in mind, the court turns to consideration of the admissibility of the challenged categories of evidence.

## B. Evidence Of The PTO's Reexamination Of The '201 Patent

The first motion now before the court is Lincoln's Motion In Limine No. 2 To Preclude Evidence Of The Pending Reexamination Of The '201 Patent At Trial (docket no. 131). Lincoln contends that any evidence relating to the USPTO's *ex parte* reexamination of the '201 patent should be excluded. Transamerica asserts that such evidence is admissible.

### 1. The evidence in question

In the late summer of 2008, the United States Patent and Trademark Office (USPTO) issued an order granting a third party's *ex parte* request for reexamination of the '201 patent, finding a substantial question of patentability over certain prior art not considered by the examiner in the original prosecution of the patent. In November 2008, the USPTO sent the patent to the examiner, but the PTO has not yet issued any office action on the reexamination.

### 2. Arguments of the parties

Lincoln contends that evidence of the reexamination proceedings is inadmissible pursuant to Rule 402, because the Federal Circuit Court of Appeals has recognized that the grant of a reexamination request is not probative of the patentability or invalidity of the patent in question. Lincoln points out that, while most requests for reexamination are

granted, only a relatively small percentage of those requests result in a finding of unpatentable claims. In the alternative, Lincoln argues that such evidence should be excluded pursuant to Rule 403, because even if somehow relevant, it is more prejudicial than probative. Lincoln also points out that other courts have recognized the prejudicial nature of evidence of reexamination proceedings, because such evidence may improperly influence or confuse the jurors in their application of the presumption of patent validity. Finally, Lincoln argues that granting its motion will promote judicial economy, because it will make it more likely that the jury's verdict will be sustainable.

In its Response, Transamerica argues that the reexamination order demonstrates that there are substantial questions of patentability based on prior art that Lincoln has asserted is merely cumulative of prior art already considered by the examiner, so that the reexamination proceedings rebut or refute Lincoln's assertions. Transamerica contends that Lincoln should not be allowed to assert that the Equitable 1995 prior art reference on which the reexamination is based is cumulative to references considered by the examiner during original prosecution of the patent unless Transamerica is allowed to introduce statements from the PTO that disprove those assertions. Transamerica also argues that the reexamination confirms the arguments that it and its expert, Mr. Logan, have been asserting throughout this litigation and lends credibility to those arguments. Transamerica also argues that any potential unfair prejudice from this evidence within the meaning of Rule 403 that might otherwise arise would be alleviated by a limiting instruction pursuant to Rule 105. For example, Transamerica argues that Lincoln could request a limiting instruction allowing Transamerica to introduce evidence of the '201 reexamination only for purposes of establishing that a "substantial new question of patentability" exists based on the Equitable 1995 reference and to refute positions taken by Lincoln and its experts that this prior art is cumulative to references considered by the examiner during

8

prosecution of the '201 Patent. At a minimum, Transamerica argues that Lincoln should stipulate to what it describes as "the main factual and legal premises of the '201 reexamination," consisting of the following: (1) that the Equitable 1995 reference adds a new teaching to claims 35-42 of the '201 Patent; (2) that the Equitable 1995 reference teaches at least "a variable annuity plan with guaranteed payments that continue after the account is exhausted"; (3) that the Equitable 1995 reference was not previously considered by the examiner during prosecution and thus is not equivalent to the Golden '815 patent; and (4) that the new teaching presented by the Equitable 1995 reference is such that a reasonable examiner would consider it to be important in deciding whether to allow claims 35-42 of the '201 patent.

In its Reply, Lincoln argues that Transamerica admits that evidence regarding the pending reexamination proceedings is not relevant to validity issues and that, for this reason alone, Lincoln's motion in limine regarding evidence of such proceedings should be granted. Similarly, Lincoln contends that a limiting instruction is not appropriate, because the purportedly "good purpose" for which Transamerica wishes to offer the evidence is precisely to use the preliminary grant of reexamination to prove its invalidity defense or its rejected inequitable conduct defense. Lincoln points out that Transamerica has not cited any cases allowing admission of evidence of PTO reexamination proceedings, where Lincoln has cited cases uniformly excluding such evidence.

### 3. *Analysis*

As Lincoln contends, the Federal Circuit Court of Appeals has "take[n] notice that the grant by the examiner of a request for reexamination is not probative of unpatentability. The grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met (*i.e.*, that a 'substantial new question of patentability' has been raised, 35 U.S.C. § 303), does not establish a likelihood of patent

invalidity." *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) (affirming lower court, which had, *inter alia*, excluded such evidence). Indeed, the Federal Circuit Court of Appeals observed that, at least at that time, "The Annual Report of the Patent and Trademark Office for 1994 states that 89% of the reexamination requests were granted that year, but only 5.6% of the reexamined patents were completely rejected with no claims remaining after reexamination." *Id.* at 1584 n.2. Lincoln has pointed to evidence that rejection of claims on reexamination remains very low. *See* Lincoln's Exhibit 1 (PTO Ex Parte Re-Exam Filing Data – 12/31/07, ¶ 10(b), showing that there is still only a 12% likelihood that all patented claims will be canceled).

Federal district courts have relied on *Hoechst* or the decision of the lower court in *Hoechst* to conclude that evidence of incomplete patent reexamination proceedings are inadmissible at trial on patent infringement claims and invalidity defenses. For example, the district court in *Amphenol T & M Antennas, Inc. v. Centurion Intern., Inc.*, 69 U.S.P.Q.2d 1798, 2002 WL 32373639 (N.D. Ill. 2002), reasoned as follows:

> In *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 846 F. Supp. 542, 547 (S.D. Tex. 1994), *aff'd*, 78 F.3d 1575 (Fed. Cir. 1996), the court observed that 86% of requests for reexamination are granted (ATM has provided a slightly higher current percentage) but only 12% of those grants result in a rejection of all patented claims. There is thus a substantial likelihood that the Patent Office will uphold the patentability of some or all of ATM's claims.
>
> In declining to continue the trial of this case pending the conclusion of the reexamination proceedings, this court was aware of the possibility that a jury verdict in ATM's favor might ultimately have to be set aside. But on the eve of trial, the court must consider how best to achieve a reliable and sustainable verdict in this case, regardless of the ultimate decision by the Patent Office. Is it by advising the jury that the Patent Office has found that Centurion has raised

"substantial new questions of patentability," thus putting in the jury's hands the issue of the extent to which, if any, the presumption of validity attaches to a patent which is the subject of reexamination proceedings? Or is it by treating this patent as presumptively valid as any other and not advising the jury that the Patent Office is taking another look, thus allowing the jury to reach its own independent conclusion concerning the validity of the patent? The court concludes that the better answer is the second. If Centurion succeeds in persuading the Patent Office that some or all of ATM's patent is invalid, a jury verdict in favor of ATM in this case will almost certainly have to be set aside, in whole or in part; thus if Centurion wins before the PTO, Centurion will win regardless of what this jury is told. But if this court allows the jury to hear evidence that could call into doubt the presumption of validity, the jury returns a verdict for Centurion and the reexamination proceedings end in a reaffirmation of the patent's claims, the verdict will be seriously undermined. This result is not necessary. If the jury is instructed that the patent is presumed valid, the evidence of the reexamination proceedings is excluded and Centurion wins, that verdict will be manifestly sustainable. If, following such a trial, ATM wins, that verdict will also be manifestly sustainable, unless the PTO invalidates some or all of ATM's claims.

Besides enhancing the likelihood that a sustainable verdict will be achieved in this case, excluding evidence of the reexamination proceedings makes sense for another reason. As a probative matter, the Patent Office's decision to grant reexamination casts the validity of the patent into some doubt, but only to a small degree. Indeed, the Federal Circuit has stated that "the grant by the examiner of a request for reexamination is not probative of unpatentability." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996). The likelihood that some or all of the patent will be invalidated as a result of the reexamination proceedings is impossible to calculate with any reasonable degree of certainty, but statistically, it is not great. *See id.* at 1584 n.2 (citing

11

> statistics for rejection of all claims). While the PTO will not
> apply the presumption of validity to the reexamination
> proceedings, it may well conclude that the patent is sustainable
> over Centurion's challenge. And yet, telling the jury that the
> patent has been called into question by the Patent Office may
> significantly influence the jury's application of the presumption
> of validity and significantly prejudice ATM. The prejudicial
> potential of this evidence far outweighs any probative value it
> may have. *See* Fed.R.Evid. 403.
>
> Insofar as there is any precedent on this issue, it
> suggests that admission of evidence concerning reexamination
> proceedings would be inappropriate. *See Hoechst Celanese
> Corp.*, 78 F.3d at 1584.

*Amphenol T & M Antennas, Inc.*, 2002 WL 32373639 at *1-*2. For these reasons, the

court in *Amphenol* granted a motion in limine to exclude evidence of the incomplete patent

reexamination proceedings. *Id.* at *2; *accord Hochstein v. Microsoft Corp.*, 2008 WL

3925282, *3 (E.D. Mich. Aug. 21, 2008) (slip op.) (quoting essentially the same portion

of *Amphenol*, finding it persuasive, and holding that "[i]ntroduction of evidence on the

'125 patent reexamination process at trial would be unfairly prejudicial to Plaintiffs

pursuant to Rule 403, and be likely confusing to the jury"); *Translogic Technology, Inc.

v. Hitachi, Ltd.*, 2006 WL 897995, *3 (D. Or. 2006) (slip op.) (on post-trial motions,

adhering to its prior ruling excluding evidence of patent reexamination proceedings to

prevent jury confusion and undue delay).

This court agrees with its brethren that evidence of incomplete patent reexamination

proceedings is not admissible to prove invalidity of a patent, because it has no probative

value on that issue, *see* FED. R. EVID. 402 (evidence with no probative value can be

excluded), and even if the evidence has some marginal probative value, that probative

value is outweighed by its potential for undue prejudice or confusion of the jury about the

presumption of validity of the patent. *See* FED. R. EVID. 403 (evidence may be excluded,

even if relevant, if its probative value is outweighed by the danger of undue prejudice or confusion of the jury). Indeed, the Federal Circuit Court of Appeals has expressly stated that "the grant by the examiner of a request for reexamination is not probative of unpatentability" and "does not establish a likelihood of patent invalidity." *Hoechst*, 78 F.3d at 1584. Nor is the court in the least convinced that Transamerica is not attempting to offer this evidence precisely for the purpose of attempting to persuade the jury that the '201 patent is invalid. There can be no other purpose for using evidence of the reexamination proceedings to attempt to refute or rebut Lincoln's argument that the prior art addressed in the reexamination proceedings is cumulative of prior art considered by the original examiner than to attempt to show that the '201 patent is invalid in light of such prior art. Thus, while it is true that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice of such evidence, *see, e.g, Walker*, 470 F.3d at 1275 ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose), there is simply no "good purpose" here for which such evidence could be offered, so that no proper limiting instruction can be given.

Finally, the court does not agree with Transamerica that the existence of the reexamination proceedings requires Lincoln to stipulate to anything. Most of what Transamerica identifies as undisputed facts in light of the reexamination proceedings are either irrelevant or are precisely matters that are in dispute in those proceedings. At most, it might be appropriate for Lincoln to stipulate that certain prior art was not considered by the original examiner, but such a stipulation is not required. Such a stipulation would only open the door to the question of whether the prior art not considered is relevant to the validity of the '201 patent or merely cumulative of prior art that the original examiner did

13

consider, at the same time that it could improperly suggest the basis for an "inequitable conduct" defense that this court has already excluded. In short, Transamerica is not entitled to a court-ordered stipulation to any of "the main factual and legal premises of the '201 reexamination" that Transamerica suggests are undisputed in light of the reexamination proceedings.

Therefore, Lincoln's Motion In Limine No. 2 To Preclude Evidence Of The Pending Reexamination Of The '201 Patent At Trial (docket no. 131) will be granted.

## C. Evidence Of "Commentary" From The Court's Claim Construction Order

The next motion now before the court is Transamerica's Motion In Limine To Exclude Any Reference To The Commentary In The Court's Claim Construction Order Or The Parties' Rejected Claim Construction Positions (docket no. 132). Lincoln resists exclusion of this evidence.

### 1. The evidence in question

In this motion, Transamerica seeks an order precluding Lincoln from reciting "commentary" from the court's claim construction order at trial or introducing any evidence that improperly refers to or discusses any of the parties' rejected claim construction positions. On March 10, 2008, the court issued its Memorandum Opinion And Order Regarding Construction Of Disputed Patent Claim Terms (docket no. 64) (the *Markman* Order). *See Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 550 F. Supp. 2d 865 (N.D. Iowa 2008). Although the court summarized its constructions of disputed patent claim terms (juxtaposed with the claim language and the parties' proffered constructions) in a twelve-page table, the decision itself was 214 pages long, and a great deal of the decision consisted of analysis of the parties' various contentions in support of

their claim constructions and explanations of the court's reasons for rejecting proffered constructions, *i.e.*, what Transamerica has identified as "commentary."

## 2. *Arguments of the parties*

Transamerica contends, in essence, that any reference by counsel or any witness to anything other than to the court's actual claim construction should be excluded, because it would be a waste of time under Rule 403 and would not, in any way, assist the trier of fact as required by Rule 702. Transamerica explains that, while reference to the court's "commentary" may be appropriate in motion practice before the court, it would be a "waste of a time" at a jury trial because it would unnecessarily duplicate the court's claim construction instructions to the jury, and, worse, usurp the court's role to instruct the jury on the law. Moreover, Transamerica argues, because the court will instruct the jury regarding claim construction, any extraneous discussion beyond the court's charge is both unnecessary and inappropriate and might confuse or mislead the jury. Transamerica also argues that the parties' rejected positions are not relevant under Rules 401 and 402, and should be excluded under Rule 403, because they serve no legitimate purpose, would confuse the jury and would create unfair prejudice by suggesting that a conflict exists between a party and the court. Again, somewhat more specifically, Transamerica argues that the parties' rejected arguments about claim constructions are not evidence, and even if they were, they have been supplanted by the court's constructions.

In response, Lincoln contends that Transamerica and its expert have diligently tried to turn the court's constructions on their heads and that Transamerica's "hidden agenda" is to insulate its expert from cross-examination when he offers opinions contrary to the court's constructions. Lincoln contends that, to counter such misdirection, it will offer evidence from its technical expert applying the court's constructions, as expressed in the court's claim construction order, to the accused administrative method and will use the

15

court's claim construction order to rebut, impeach, and challenge Transamerica's arguments and witnesses where necessary. Specifically, Lincoln contends that it should be able to impeach the reliability and credibility of Transamerica's expert if he offers opinions already rejected by the court. Thus, Lincoln contends that references to the court's "commentary" would not waste the jury's time, but would prevent a miscarriage of justice.

In reply, Transamerica argues that Lincoln simply wants to use its own interpretations of the court's claim construction order. Transamerica also argues that, as an interested party, Lincoln should not be allowed to instruct the jury on the law. Transamerica also argues that Lincoln will have no reason to use rejected claim constructions to impeach Transamerica's witnesses if no party is allowed to present rejected claim constructions. Transamerica also disputes Lincoln's contentions that Transamerica is asserting arguments already rejected by the court or otherwise distorting the court's claim constructions.

### 3. *Analysis*

Transamerica's motion and Lincoln's response require the court to consider, first, the role of the court's claim constructions in a jury trial in a patent case. The parties' arguments then require the court to consider the related questions of the admissibility of rejected arguments about claim constructions and the court's "commentary" on claim constructions that, *inter alia*, explains that certain proffered constructions have been rejected and why.

#### a. *The role of the court's claim constructions in a jury trial*

The court begins its analysis with the principles that "[t]he meaning and scope of patent claim terms, as determined by a district court's claim construction rulings, are legal issues central to most patent cases," *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356,

16

1366 (Fed. Cir. 2004), and indeed, that "the construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Thus, the court's claim constructions are the "law of the case" for purposes of trial. *See Andersen Corp. v. Fiber Composites, L.L.C.*, 474 F.3d 1361, 1371 n.2 (Fed. Cir. 2007); *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).

These principles explain why the Federal Circuit Court of Appeals has *required* trial courts to instruct the jury on the court's constructions of disputed claim terms, as follows:

> The jury must be told that the court has made a claim construction ruling that the jury must follow and cannot be left free to apply its own reading of disputed terms to the facts of the case. "An instruction should be given to the jury on every material issue." 9A Wright & Miller, *Federal Practice and Procedure* § 2556, at 448 n. 20 (1995) (citing *Gillentine v. McKeand,* 426 F.2d 717, 723 (1st Cir. 1970)). Accordingly, we hold that it is the duty of trial courts in patent cases in which claim construction rulings on disputed claim terms are made prior to trial and followed by the parties during the course of the trial to inform jurors both of the court's claim construction rulings on all disputed claim terms and of the jury's obligation to adopt and apply the court's determined meanings of disputed claim terms to the jury's deliberations of the facts.

*Sulzer Textil A.G.*, 358 F.3d at 1366. Even so, the trial court is not required to repeat or restate every claim term in the jury instructions, but only required to "instruct the jury on the meanings to be attributed to all *disputed terms* used in the claims in suit so that the jury will be able to intelligently determine the questions presented." *Id.* (emphasis added; internal quotation marks and citation omitted).

### b. The admissibility of contrary constructions, rejected constructions, and the court's "commentary"

It follows from the principles stated just above that the court not only has the exclusive right to construe claim terms, but the exclusive right to instruct the jury on those constructions. It also follows that no party should be allowed to argue to the jury claim constructions that are contrary to the court's claim constructions or to reassert to the jury constructions that the court has already expressly or implicitly rejected. Such arguments would trespass on the court's exclusive authority to determine the legal issues of the scope and meaning of patent claim terms, *id.*; *Markman*, 517 U.S. at 372, and would make a nullity of the court's constructions as the law of the case. *See Andersen Corp.*, 474 F.3d at 1371 n.2. That is the simple answer to the part of Transamerica's motion that seeks exclusion of evidence of rejected arguments, but it is not a realistic or complete one. While the parties should not be allowed to offer at trial claim constructions that are contrary to the court's constructions or that have been expressly or implicitly rejected by the court, the parties may reasonably disagree about the interpretation and application of the court's claim constructions, just as they disagreed about the constructions of the claims themselves, without crossing the line by asserting claim constructions that are contrary to the court's. In other words, whether a party is asserting a claim construction that is contrary to the court's construction, or only asserting an understanding or interpretation of the court's claim construction with which the other party disagrees, *i.e.*, whether the party has proffered a construction in the "gray area," may, like beauty, be in the eye of the beholder.

Two decisions of district courts that were presented with challenges to the admissibility of trial testimony that was purportedly contrary to the court's claim constructions are illustrative of the problem. The District Court for the District of

Delaware concluded that expert testimony that *applies* the court's claim constructions is permissible, while the opposing party should be given ample opportunity to cross-examine an expert about the extent to which the expert's opinions depart from the court's claim constructions, because any deviations between an expert's testimony and the court's claim constructions go to the weight to be given to the expert's testimony. *See Corning, Inc. v. SRU Biosystems*, 2005 WL 2465900, *2 (D. Del. Oct. 5, 2005) (unpubl. op.). Thus, for that court, differences between the parties' constructions and the court's constructions went to the weight to be given to the parties' constructions, not to their admissibility. On the other hand, Judge Gritzner of the District Court for the Southern District of Iowa started with the proposition that, where the court has defined a term in a jury instruction, it would be error to allow a witness to offer a different definition, because allowing such testimony could confuse the jury. *See Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 2004 WL 5508752, *4 (S.D. Iowa Sept. 9, 2004) (unpubl. op.). Thus, for Judge Gritzner, at least as an initial premise, evidence of constructions contrary to the court's constructions was simply inadmissible. Nevertheless, Judge Gritzner recognized that the parties may disagree about the meaning of the court's claim constructions. *Id*. at *5 (noting that, while one party argued that the other's arguments were contrary to the court's claim constructions, the other party disagreed with the first party's characterizations of the court's claim constructions). Therefore, when confronted with a motion to exclude evidence of a party's claim constructions on the ground that the party's constructions were contrary to the court's constructions, Judge Gritzner adopted a less black-and-white position, as follows:

> While the Court essentially concurs, as apparently do the parties, that evidence should be limited to what is consistent with the Court's claim construction, the issues do not have sufficient pretrial definition to decide the matter on a

19

motion in limine. Some flexibility at trial will no doubt arise with regard to each party's evidence as to their understanding and actions, and evidentiary judgments will need to be made when such evidence appears to directly clash with the claim construction. Ultimately argument will be constrained by the Court's instructions to the jury. The Plaintiffs' motion in limine on this ground must be denied.

*Kemin Foods*, 2004 WL 5508752 at *5.

The parties here also apparently agree in briefing of this motion that no party should be allowed to offer constructions that are contrary to the court's constructions or that have already been rejected by the court, although, as explained below, their conduct and briefing of other motions does not necessarily show strict adherence to the court's constructions. Taking their arguments at face value, for the moment, the parties here, like the parties in the district court cases cited just above, dispute whether any party is attempting to offer constructions contrary to the court's and whether any party should be allowed to make references to the court's "commentary" or rationale in support of the court's claim constructions in response to allegedly improper arguments. Lincoln contends that it should be allowed to use portions of the court's "commentary" on claim constructions to respond to claim constructions by Transamerica and its expert that are contrary to or distortions of the court's claim constructions and, indeed, that have already been rejected by the court. Transamerica disputes Lincoln's contentions that Transamerica is asserting constructions that are contrary to or distortions of the court's constructions or that the court has already rejected. Therefore, Transamerica contends that there will be no need for any references to the court's "commentary."

As the court observed above, no party should be allowed to argue to the jury claim constructions that are contrary to the court's claim constructions or to reassert to the jury constructions that the court has already expressly rejected. Such arguments would trespass

on the court's exclusive authority to determine the legal issues of the scope and meaning of patent claim terms, *id.*; *Markman*, 517 U.S. at 372, and would make a nullity of the court's constructions as the law of the case. *See Andersen Corp.*, 474 F.3d at 1371 n.2. The court believes that its 214-page claim construction ruling was sufficiently clear and sufficiently detailed about what proffered constructions the court adopted or rejected—and the parties were given the opportunity to address the court's tentative constructions in a tentative draft ruling provided to them before the *Markman* hearing—that whether or not a particular construction proffered by a party at trial is contrary to the court's construction or is a reassertion of a construction that the court has already rejected should be a clear-cut, black-or-white determination. For that reason, the court believes that there should be no instances of parties proffering at trial contrary constructions or reasserting at trial rejected constructions, or at the very least, that such instances should be exceedingly rare. Moreover, the court expects the parties to pay scrupulous attention to the court's constructions and to argue within them, precisely because the court's constructions are the law of the case.

The parties' arguments in support of various motions in limine in this case, however, demonstrate that the court's expectations have already been disappointed. One glaring example of the proffer of a claim construction that is a gross mischaracterization of, and thus plainly contrary to, the court's construction is Transamerica's statement of step (e) of the claimed method, in its briefs in support of its motions to exclude infringement and damages theories that are purportedly erroneous as a matter of law. In those briefs, Transamerica states step (e) as "periodically paying the scheduled payment after the account value is exhausted," *see* Transamerica's Brief In Support Of Transamerica's Motion In Limine To Exclude All Evidence Relating And Any Reference To Infringement Theories That Are Erroneous As A Matter of Law (docket no. 143-2), 3,

and asserts that "there must have been a scheduled withdrawal made on or after August 8, 2006 and on or before August 21, 2021 with the account value exhausted" to satisfy step (e).  *See* Transamerica's Brief In Support Of Transamerica's Motion In Limine To Exclude All Evidence Relating And Any Reference To Damages Theories That Are Erroneous As A Matter of Law (docket no. 147-2), 5-6.  Transamerica then argues that it has never performed this step of the method, because no account value of any accused rider has ever been exhausted.  These constructions of step (e) are impermissible.

The pertinent claim language is the following:  "Periodically paying the scheduled payment to the owner for the period of benefit payments *even if* the account value is exhausted before all payments have been made."  '201 patent, Claim 35, step (e) (emphasis added).  The import of the "even if" and "exhausted" language of this step were critical issues in the litigation of the proper construction of this term.  *Markman* Order at 174-81.  The court expressly concluded that the "even if the account value is exhausted" clause stated the most extreme circumstance in which the guaranteed scheduled payment will still be made, not a requirement that the account value be exhausted.  *Id.* at 179. Therefore, the court construed this claim language as follows:  "At the regular intervals required by the plan, paying the scheduled payment to the owner for the period of benefit payments, *even if* the account value is less than the scheduled payment amount or zero before all payments guaranteed under the plan have been made."  *Id.* at 210 (emphasis added).  Thus, Transamerica's omission of the critical "even if" language from its construction is inexcusable.  Moreover, in light of the "even if" language, neither the claim term itself nor the court's construction *requires* that the account value has been exhausted for step (e) to be performed, as Transamerica contends; to the contrary, the claim language and the court's construction do *not* require exhaustion of the account value for this step to be performed.  In short, Transamerica's constructions of step (e) blithely

ignore the actual claim language, the court's construction of that language, and the court's "commentary" in support of its construction. The court simply will not allow assertion of this or any other construction that is plainly contrary to the court's construction, nor will the court allow reassertion of rejected constructions of this or any other terms. To be clear, the court will exclude constructions that vary at all from the court's, and if any party persists in asserting constructions that are plainly at odds with either the plain language of a claim term or the court's construction of that claim term, the court will consider appropriate sanctions against the offending party.

As a practical matter, however, even though claim construction is the exclusive province of the court, *see Markman*, 517 U.S. at 372, the court concludes that it should be the responsibility of the parties, in the first instance, to make a timely objection that an opposing party is offering a construction that is or may be contrary to the court's construction or that the court has already rejected. When presented with such an objection that the court finds to be well-founded, the court will exclude or strike the offending testimony.

Although Transamerica's gross mischaracterization of claim language, discussed above, makes the court reluctant to say so—for fear of inviting similar misconduct—the court recognizes that, contrary to its belief about the clarity and detail of its claim construction ruling, it may be possible for a party to offer a construction that the opposing party finds objectionable, but which the offering party can show is not plainly contrary to the court's construction or based on a rejected construction, but reflects that party's understanding or interpretation of the court's claim construction. In other words, it may be possible for a party to find the narrow "gray area" between permissible and impermissible claim constructions. Again, the court anticipates that, in this case, owing to the clarity and detail of its extensive claim construction ruling, the parties' opportunity

23

to address the court's tentative constructions before the *Markman* hearing, and the court's warnings to the parties about scrupulous adherence to the court's claim constructions, that such a situation is likely to be exceedingly rare. The court now expressly discourages the parties from making anything but the most cautious, conscientious, and well-founded assertions that a construction is in the "gray area." The court also expressly warns the parties that simple disagreement with the court's claim construction does not place a party's construction in the "gray area," because such disagreement is a matter to be addressed on appeal. Unwarranted attempts to push a proffered construction into the "gray area" or to relitigate before the jury constructions of disputed claim terms will not be tolerated.

Acknowledging, however reluctantly, that it may be possible for parties to find a "gray area" between permissible and impermissible constructions, the questions that remain are how the opposing party is to alert the court to what it believes is an impermissible construction and what role the court's "commentary" in support of its claim constructions may play in that party's opposition. As Judge Gritzner wisely predicted, some flexibility at trial is required to address what this court believes will be exceedingly rare arguments about whether a party is offering "contrary" constructions or only the party's understanding of the court's claim constructions, and in those exceedingly rare circumstances, the court will need to make evidentiary determinations about when and whether a party's arguments or opinions cross the line from a dispute about the meaning of the court's claim constructions to a clash with the court's claim constructions. *Kemin Foods*, 2004 WL 5508752 at *5. Again, upon a party's objection, a construction that the court finds is contrary to its construction simply will be excluded or stricken. A construction that falls within the narrow "gray area," on the other hand, is subject to objection and cross-examination to demonstrate the extent to which the party's proffered

24

arguments or constructions differ from the court's constructions. *See Corning, Inc.*, 2005 WL 2465900 at *2 (differences between a party's claim construction and the court's claim construction should be the subject of ample cross-examination).

More specifically, to the extent that an opposing party demonstrates a difference between an offering party's construction and the court's construction, that difference goes to the weight to be given to the offering party's arguments or constructions. *See id.* Logically, cross-examination about the extent to which an offering party's or offering expert's opinions depart from the court's claim constructions might entail demonstrating that the court has implicitly rejected the proffered construction in its "commentary" to its claim constructions, as well as comparison of the proffered construction to the court's claim construction itself. To put it another way, cross-examination and impeachment of an offering party's expert concerning the expert's interpretation and application of the court's claim constructions may reasonably and properly include the plausibility of the expert's interpretation and application of the court's claim construction in light of the court's claim construction itself *and* the court's rationale for its claim construction expressed in the court's "commentary." Thus, the court's "commentary" would be relevant to and admissible in such cross-examination. *See* FED. R. EVID. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); FED. R. EVID. 402 (relevant evidence is generally admissible). Moreover, references to the court's "commentary" or rationale in support of its constructions would not improperly trespass on the court's authority to construe claims or make a nullity of the court's constructions as the law of the case, such that they should be excluded pursuant to Rule 403, because the court's "commentary" is, of course, the court's, and should necessarily be *consistent with*, not *contrary to*, the court's claim constructions.

25

Transamerica argues, however, that even if relevant, any such references to the court's "commentary" would be duplicative of the court's instructions on claim construction, usurp the role of the court to instruct the jury on the law, confuse the jury, and prejudice the opposing party by suggesting a conflict between the court and that party and, as such, should be excluded under Rule 403. The court finds these arguments to be paper tigers.

First, evidence that the court has expressly or implicitly rejected a party's proffered claim construction in the court's "commentary" or explanation of its rationale for its own claim construction is *not* duplicative of the court's actual claim construction, which says nothing about what constructions have been rejected or adopted. Also, for the court's "commentary" to have any value in cross-examination, the "commentary" must necessarily be attributed to the *court's* claim construction ruling, but the use of the "commentary" is not to instruct the jury on the law, but to demonstrate the extent to which a party's construction departs from the court's construction. In such circumstances, the cross-examining party is *entitled* to suggest that there is a conflict between the offering party's construction and the court's construction. Moreover, the court finds it very unlikely that the jury would be confused about what construction is controlling, in light of the court's mandatory instructions on disputed claim constructions.

Nevertheless, the court finds that any potential confusion or prejudice to a party from the opposing party's use of the court's "commentary" to cross-examine an offering party's expert about the expert's claim constructions can be mitigated by a proper limiting instruction. *See, e.g, Walker*, 470 F.3d at 1275 ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a

26

limiting instruction when the court admits evidence for a limited purpose). Such a limiting instruction might read as follows:

> In addition to the court's instructions on the appropriate constructions of disputed claim terms, you may hear the parties make references to the court's commentary or rationale for certain constructions in the court's pretrial claim construction ruling. The parties may make such references to the court's commentary or rationale to demonstrate the extent to which one party believes that the other party's construction of a particular claim term departs from the court's construction, so that you may determine the weight to be given to that party's construction of the term. You are reminded, however, that the constructions of claim terms that you must apply are stated by the court in the court's instructions on claim constructions.

With such a limiting instruction, the court's exclusive right to construe claim terms and to instruct the jury on the constructions that are the law of the case will be reaffirmed.

Therefore, Transamerica's Motion In Limine To Exclude Any Reference To The Commentary In The Court's Claim Construction Order Or The Parties' Rejected Claim Construction Positions (docket no. 132) will be granted as to constructions that are contrary to the court's constructions, but otherwise denied.

### D. Deposition Testimony Of Frank Alan Camp

The next motion now before the court is Transamerica's Motion In Limine To Exclude The Deposition Testimony of Frank Alan Camp (docket no. 133). Lincoln resists this motion.

### 1. The evidence in question

As characterized by Transamerica, the evidence in question is the July 19, 2007, deposition of Frank Alan Camp from litigation between these parties concerning another

patent pending in the Northern District of Indiana and "any other evidence regarding Transamerica's marketing materials." Mr. Camp's testimony purportedly concerns Transamerica's code of conduct and its compliance with its policies and practices relating to marketing literature for the accused riders.[2]

## 2.    *Arguments of the parties*

Transamerica argues that Mr. Camp's deposition testimony concerning Transamerica's code of conduct and its compliance review of marketing literature should be excluded, on relevance grounds, because the marketing materials in question are designed to provide potential customers with information regarding features of Transamerica's variable annuity rider contracts, not information regarding the methods used to administer those annuities, and such marketing materials are written to provide information about rider features in an easily understandable pamphlet, not to substitute for the annuity rider contracts themselves. Thus, Transamerica asserts that the marketing materials cannot support a finding of infringement, and Mr. Camp's deposition testimony, as well as other evidence regarding Transamerica's marketing materials, is irrelevant. Transamerica also argues that evidence that it purportedly used misleading marketing materials in the sale of its variable annuities creates the danger of undue prejudice, because it could lead a jury to infer that Transamerica engaged in fraudulent activity that has not been alleged and that is not an element of any of Lincoln's claims. Transamerica argues

---

[2]Transamerica also represents that Mr. Camp's testimony relates to the relative timing of three events: Transamerica's knowledge of Lincoln's '815 Patent (U.S. Patent No. 6,611,815); Transamerica's launch of a particular variable annuity policy rider (GPS); and Transamerica's obtaining an opinion of counsel regarding the '815 Patent. Camp Deposition at 1-80. However, the parties apparently agree that this part of Mr. Camp's testimony is irrelevant in this litigation.

that such danger of undue prejudice outweighs the non-existent probative value of the evidence in question.

In response, Lincoln argues that Transamerica's motion is premature, because the court's Order Resetting Trial makes clear that Transamerica may object to Lincoln's use of deposition testimony at trial only after Lincoln serves a written designation of the portions of the deposition that Lincoln intends to use at trial. Lincoln points out that its designation of Mr. Camp's deposition testimony or any other deposition testimony to be used at trial is not due until January 19, 2009. Lincoln also contends that Transamerica's motion fails to identify what "other evidence" of marketing materials Transamerica is seeking to exclude, so that it fails to comply with this court's local rules, which require a moving party to identify the grounds for the motion. Lincoln contends that Transamerica should not be allowed to raise new arguments identifying the evidence in question in a reply brief. As to the merits of the motion, Lincoln contends that Transamerica's argument that evidence of Transamerica's marketing materials is irrelevant is contrary to well-settled Federal Circuit law holding that a party's marketing materials are relevant to issues of infringement. Lincoln also argues that Transamerica cannot disavow or mitigate the significance of marketing literature by arguing that it is "merely" marketing literature, because Transamerica cannot argue that the marketing literature does not accurately describe the way Transamerica's allegedly infringing riders work. Lincoln also argues that Transamerica's motion in limine is not the proper vehicle to challenge substantive issues that could or should have been raised at summary judgment or to revisit issues resolved on summary judgment. Because such evidence is substantially relevant, Lincoln also argues that it is not unduly prejudicial, where Lincoln does *not* argue that the marketing materials are false or fraudulent. Owing to the prematurity of Transamerica's motion, Lincoln also argues that Transamerica's "prejudice" argument is without merit.

29

In a reply brief longer than its original brief in support of this motion, Transamerica argues that its motion is timely, because the Order Resetting Trial set a deadline for motions in limine and that the provisions of the Order concerning objections to designated portions of depositions does not preempt the deadline for motions in limine based on relevance and potential prejudice of the deposition testimony in question. Transamerica also reiterates, and amplifies, its argument that its marketing materials do not describe the methods used to administer annuities, explaining that the materials describe only the legal obligations between Transamerica and its policyholders, and they are not evidence that Transamerica performed any step of the asserted method claims, so that they are not relevant to any issues in the case. Transamerica also argues that the riders cannot be accused of infringing the patented method, because the riders themselves are contracts, not patentable subject matter. Transamerica adds that Mr. Camp's deposition testimony regarding marketing materials is not a description of a computerized administration method. Transamerica also reiterates and amplifies its argument that the evidence in question is unduly prejudicial, because it would mislead the jury into believing that Transamerica engaged in fraudulent activity by using allegedly misleading marketing materials in the sale of its variable annuity riders, and that belief, in turn, could provide an inappropriate basis for the jury to find against Transamerica on Lincoln's claims. Transamerica also contends that its motion is directed to the admissibility of evidence, not to a substantive issue that should have been resolved on a motion for summary judgment.

### 3.    Analysis

Notwithstanding the parties' heated dispute about the admissibility of the evidence of Mr. Camp's deposition testimony about Transamerica's code of conduct and compliance with its policies and practices relating to marketing literature for the accused riders and "any other evidence regarding Transamerica's marketing materials," the court finds that

it cannot determine at this time whether any of the challenged evidence is admissible. The parties have not provided the court with any of the challenged portions of Mr. Camp's deposition testimony nor with copies of any of the "other" marketing materials purportedly at issue. Thus, the court cannot determine the relevance of this evidence, for example, because the court cannot determine whether the marketing materials use language nearly identical to the patent claim language or otherwise describe the way Transamerica's allegedly infringing riders work (*i.e.*, whether Transamerica's administration of its riders would infringe the claimed method). *See, e.g., CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1233 (Fed. Cir. 2005) (marketing materials that touted the capability of the allegedly infringing systems "to provide an institution with data in a variety of formats" amply supported the jury's verdict of infringement); *Alco Standard Corp. v. Tennessee Valley Auth.*, 808 F.2d 1490, 1502-03 (Fed. Cir. 1986) (marketing materials supported a finding of infringement, because they described aspects of the allegedly infringing device in terms almost identical to the patent claim language); *see also PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1351 (Fed. Cir. 2007) ("[T]here is no prohibition against using the admissions of a party, whether in the form of marketing materials or otherwise, as evidence in an infringement action; such admissions are entitled to weight along with all other evidence of infringement. In this case, however, while the defendants' statements touted the possible therapeutic uses the cord blood might have for the child and members of the child's family in the future, none of the statements represented that the stem cells in any of the cryopreserved cord blood samples were sufficient in number to effect hematopoietic reconstitution of an adult, as is required by claim 1 of the reexamined '681 patent. Instead, the defendants' statements emphasized the potential therapeutic usefulness of the cord blood in general and referred to future uses of stored blood in adult transplants only as possibilities.").

31

Therefore, Transamerica's Motion In Limine To Exclude The Deposition Testimony of Frank Alan Camp (docket no. 133) will be denied without prejudice to timely reassertion upon an adequate record.

### E. Evidence Of Inadequacies Of The PTO Or Certain Patents

The next motion now before the court is Lincoln's Motion In Limine No. 4 To Exclude Evidence And Arguments Relating To (1) Alleged Inadequacies Of The PTO, (2) Business Method Patents, Or (3) Tax Planning Patents (docket no. 135). Transamerica resists this motion.

#### 1. The evidence in question

Lincoln identifies the evidence in question in this motion as follows: (1) testimony, evidence, and arguments relating to alleged inadequacies of the PTO to handle so-called "business method patents"; (2) testimony, evidence, and arguments relating to so-called "tax planning patents," including comparisons of such patents to the claims of the '201 patent; and (3) testimony, evidence, and arguments relating to whether patents relating to annuities, like the '201 patent, should be patentable, including statements that they are contrary to public policy. Lincoln asserts that Transamerica offered, then withdrew, evidence in each of these categories in patent infringement litigation between the parties in the Northern District of Indiana, which involves a different patent, through testimony of one of its experts in that case, Richard Gruner. Lincoln asserts that Transamerica's expert in this litigation, David Cleveland, has offered similar contentions in his deposition testimony, but Transamerica has also stipulated in this case that Transamerica forever waives and will not pursue any defense or argument that method patents, like the '201 patent, are not subject to an appropriate level of review or scrutiny by the Patent Office. Lincoln also recognizes that the patentability of tax-planning patents has been controversial

and that the United States House of Representatives passed an amendment in 2007 that would have removed so-called tax-planning patents from patentable subject matter or that would have exempted tax attorneys and taxpayers from patent infringement liability. Finally, Lincoln asserts that Transamerica's attorneys have publicly questioned whether patents pertaining to annuities are patentable.

### 2. *Arguments of the parties*

Lincoln argues that all three avenues of attack by Transamerica in question here are irrelevant to any defense in this matter and would only serve to undermine improperly the '201 patent's statutory presumption of validity and, indeed, would merely call upon the jury to draw unfair and unfounded conclusions based upon speculative and improper innuendo that is simply not relevant to the claims and defenses in this case. Lincoln argues that the '201 patent is presumed valid by statute and, indeed, that the Federal Circuit Court of Appeals recently reaffirmed the patentability of business methods in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (*en banc*). Lincoln also contends that Transamerica's stipulation not to pursue any defense or argument that method patents are not given adequate scrutiny by the PTO warrants a ruling in Lincoln's favor. Lincoln also contends that attempts to undermine the presumption of validity of the '201 patent by arguing inadequacies or inexperience at the PTO as to business method patents, rather than challenging the '201 patent on substantive grounds, may lead a jury to reach a decision based on an improper basis, which Lincoln describes as "irrelevant speculation." Lincoln also argues that comparisons between the '201 patent and tax-planning patents should be excluded, because the '201 patent is not a tax-planning patent, so that the controversy over tax-planning patents is irrelevant here. Finally, Lincoln contends that evidence and arguments that annuity patents are improper or contrary to public policy are unduly prejudicial.

In its resistance, Transamerica contends that Lincoln's motion for a blanket exclusion is premature, vague, and overly broad. Transamerica argues that, while it will honor its stipulation not to make broad criticisms of the PTO, the PTO's specific examination of the '201 patent application, including evidence that key prior art was overlooked by the PTO due to Lincoln's failure to disclose it, is highly material to issues of invalidity and, therefore, should not be excluded. Transamerica contends that any potential prejudice that Lincoln might arguably suffer can be eliminated by a limiting instruction from the court. Transamerica also argues that Lincoln's motion is an ill-disguised attempt to exclude Transamerica's expert witness, David R. Cleveland, from testifying at trial, but the court has already refused to exclude his testimony, and Lincoln has not produced any newly-discovered evidence, intervening change in the law, or errors of law or fact to justify a reconsideration of this court's previous decision not to exclude Mr. Cleveland's testimony. Transamerica also argues that tax issues are "intertwined" with the '201 patent, as evidenced by Lincoln's submission of an IRS private letter ruling as pertinent prior art in the prosecution of the '201 patent and Lincoln's claim that an advantage of its invention is its favorable tax treatment. Transamerica also argues that analogies to tax-planning patents may also be material to understanding the differences between a computer system used to administer variable annuities and the accused annuity contract riders. Contrary to Lincoln's "prejudice" arguments, Transamerica argues that disputes about the patentability of annuity patents, such as the '201 patent, are relevant to the determination of a reasonable royalty calculation in this case and not unduly prejudicial.

In reply, Lincoln points out that Transamerica's stipulation does not waive only "generalized" attacks on the PTO or business method patents, but "any" such attacks. Thus, Lincoln contends that the arguments that Transamerica seeks to offer are exactly the

kind of arguments that the stipulation covers. Lincoln contends that Transamerica's argument is another attempt by Transamerica's new counsel to get a "do-over" for or to second guess action taken by Transamerica's former counsel. Lincoln argues that Transamerica's arguments demonstrate that it intends to offer arguments that it has stipulated away. Lincoln also argues that Transamerica's argument that "tax issues are intertwined with the '201 patent" is misguided. Lincoln reiterates that the '201 patent is not a tax-planning patent, so that the controversy concerning the patentability of tax-planning patents should not carry over into this case.

### 3. Analysis

Any argument by Transamerica that the PTO's examination of "business method patents" is inadequate, as a general matter, is plainly contrary to Transamerica's stipulation. Assuming, without deciding, that Transamerica can argue, consistent with its stipulation, that the PTO's specific examination of the '201 patent application was inadequate, and support that argument with evidence that key prior art was overlooked by the PTO due to Lincoln's failure to disclose it, Transamerica's contention that such evidence is highly material to issues of invalidity suggests only that the evidence of the adequacy of the PTO's examination might have been material to an "inequitable conduct" defense that the court has already excluded. The burden of proving invalidity on the grounds of "anticipation" or "obviousness," which are invalidity defenses still in this case, is not reduced when the prior art upon which the defense is based was not presented to or was not considered by the PTO. *See, e.g., Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1354 (Fed. Cir. 2007) (the trial court properly rejected a requested instruction that the burden to prove invalidity was more easily met when the prior art references on which the invalidity defense was based were not directly considered by the examiner during prosecution). Thus, the adequacy of the PTO's examination of the '201 patent is, at best,

only marginally relevant to any invalidity defenses still in the case. Evidence of the alleged inadequacy of the PTO's examination of the '201 patent, on the other hand, would be potentially unduly prejudicial, outweighing any marginal probative value of such evidence, within the meaning of Rule 403, because such evidence would improperly undermine the presumption of validity of the patent and confuse or mislead the jury about what is actually relevant to Transamerica's invalidity defenses still in the case, which is whether prior art references anticipate or render obvious the '201 patent.

Similarly, any evidence proffered by Transamerica that "business method patents" and "tax-planning patents" are somehow disfavored might have been material to a "patent-eligible subject matter" defense, but the court has also already excluded such a defense. Similarly, even accepting that tax issues are "intertwined" with the '201 patent and that analogies to "tax-planning patents" may be helpful to understanding the differences between a computer system used to administer variable annuities and the accused annuity contract riders—and the court believes that such evidence is relevant and admissible—there is no probative value to evidence that "business method patents" or "tax planning patents" are favored or disfavored or evidence about whether the PTO is competent to evaluate such patents. Furthermore, such evidence has a significant potential for undue prejudice from confusing or misleading the jury about what may properly be considered to determine whether the '201 patent is invalid owing to "anticipation" or "obviousness" in light of prior art. Transamerica has not cited any authority for its contention that the patentability of annuity patents is relevant to the determination of a reasonable royalty for infringement, and the court has found none. *See, e.g., Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008) ("A determination of the royalty stemming from a hypothetical negotiation is often made by assessing factors such as those set forth in *Georgia-Pacific*

*Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).").[3] In short, Transamerica simply does not need to present evidence or opinions about the adequacy or inadequacy of the PTO's examination or whether "business method patents" or "tax-planning patents" are favored or disfavored to properly support its invalidity defenses in this case, and such evidence, therefore, has little or no probative value. Moreover, evidence that "business method patents," "annuity patents," or "tax-planning patents" are favored or disfavored would be potentially unduly prejudicial, outweighing any marginal probative value of such evidence, within the meaning of Rule 403, because such evidence would improperly undermine the presumption of validity of the patents and confuse or mislead the jury about what is actually relevant to Transamerica's invalidity defenses still in the case, which is whether prior art references anticipate or render obvious the '201 patent.

Therefore, Lincoln's Motion In Limine No. 4 To Exclude Evidence And Arguments Relating To (1) Alleged Inadequacies Of The PTO, (2) Business Method Patents, Or (3)

---

[3]Transamerica's argument that Lincoln's royalty demands are "exorbitant," because Lincoln refuses to acknowledge that only a fraction of the amount demanded can be passed on to customers in the form of higher rider fees before the annuities become commercially unviable for Transamerica, does not support the contention that patentability is relevant to calculation of a reasonable royalty, and whether or not the amount of a royalty would make the riders financially unviable is only a factor in the reasonableness of the royalty, where the appropriate royalty does not have to permit the infringer to make a profit. *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1374 (Fed. Cir. 2008) ("'[A]lthough an infringer's anticipated profit from use of the patented invention is "[a]mong the factors to be considered in determining" a reasonable royalty, *see Georgia-Pacific,* 318 F. Supp. at 1120, the law does not require that an infringer be permitted to make a profit.' *Monsanto,* 382 F.3d at 1384. *See also State Indus., Inc. v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1580 (Fed. Cir. 1989) ("There is no rule that a royalty be no higher than the infringer's net profit margin.").

Tax Planning Patents (docket no. 135) will be granted to the extent that Transamerica will be precluded from offering evidence or argument concerning alleged inadequacies of the PTO's examinations of "business method patents" generally or the '201 patent in particular, and concerning whether "business method patents," "annuity patents," or "tax-planning patents" are favored or disfavored, or patentable or unpatentable, and concerning the PTO's ability to assess the patentability of such patents. Notwithstanding that Lincoln's motion will be granted as indicated, Transamerica may present evidence of analogies between the '201 patent and "tax-planning patents" to demonstrate differences between a computer system used to administer variable annuities and the accused annuity contract riders.

### F.  Evidence Of Erroneous Infringement And Damages Theories

The final motions now before the court are Transamerica's Motion In Limine To Exclude All Evidence Relating And Any Reference to Infringement Theories That Are Erroneous As A Matter of Law (docket no. 143) and its closely-related Motion In Limine To Exclude All Evidence Relating And Any Reference To Damages Theories That Are Erroneous as a Matter of Law (docket no. 147).  Lincoln resists both motions.

### 1.     The evidence in question

In its motions to exclude evidence of erroneous infringement and damages theories, Transamerica identifies the evidence at issue as falling into the following three categories: (1) argument that Transamerica's sale of the accused riders is an infringing act or that Lincoln is entitled to damages based on the mere sale of an accused rider; (2) references to activities that were not performed by Transamerica during the time period in which the '201 patent was or will be in force or claims for damages based on such activity, identified somewhat more specifically as marketing, sale, and administration of the accused riders

38

before the '201 patent issued and activities that might occur, if at all, only after the '201 patent has expired; and (3) argument that speculative or hypothetical future activities are infringing, including the possibility of payments after account value has been "exhausted," as required by the fifth step of the claimed method, and claims for damages for any rider for which the entire claimed method has not been performed. Transamerica explains that Lincoln alleges that more than 53,000 Transamerica annuity contracts with riders infringe pertinent claims of the '201 patent, but that there is no dispute that Transamerica's administration of none of these 53,000 contracts has actually led to the performance of all of the claimed steps of any of Lincoln's asserted claims.

### 2. *Arguments of the parties*

Transamerica argues that, because Lincoln cannot argue that each and every claimed computerized method step is practiced, Lincoln's experts, instead, argue that Transamerica has infringed the '201 patent by selling accused riders. Transamerica argues, however, that, because Lincoln's asserted claims are *method* claims, directed to a "method for administering a variable annuity plan," the mere sale or offer for sale of annuity contracts with the accused riders cannot, as a matter of law, constitute infringement of the '201 patent's method claims, only the practice of each and every step of the claimed method will infringe a method claim. To put it another way, Transamerica contends that Lincoln has erroneously focused its infringement and damages claims on the sale and features of the accused riders themselves, not on the steps performed in their administration, but such sales and features do not, as a matter of law, constitute infringement of the claimed method or an offer to sell an infringing computerized method for administering variable annuities, or the basis for damages for infringement. Transamerica also argues that infringement cannot be proved from evidence that it offered to sell something capable of performing the claimed method; there must be proof of directly infringing use. Thus, Transamerica

39

contends that Lincoln's infringement and damages theories based on sale or offer for sale of infringing riders are irrelevant and prejudicial, and should be excluded under Rules 402, 403, and 702.

Next, Transamerica argues that every claimed method step must be performed during the patent term, which is August 8, 2006, to August 21, 2021, but Lincoln's infringement and damages theories ignore this well-settled principle. Transamerica points out that many of the 53,000 annuity contract riders at issue were sold before the '201 patent issued, and many have activities that may occur, if at all, only after the '201 patent has expired. Thus, Transamerica contends that Lincoln's infringement and damages claims based on undifferentiated evidence of activities before issuance and after expiration of the '201 patent should be excluded under Rules 402, 403, and 702.

Finally, Transamerica argues that there is no such thing as "hypothetical infringement," so that infringement and damages cannot be based on withdrawals that have never been taken by the policy holder. Transamerica argues that it has never performed steps (c), (d), or (e) of the claimed method for any contracts. More specifically, Transamerica argues that, under many annuity contracts with accused riders, no second withdrawal has ever taken place, so that, at a minimum, Transamerica has never performed steps (c) and (e) of the asserted claimed method; that under many of the annuity contracts with accused riders, no excess withdrawals have ever taken place, so that Transamerica has never performed step (d); and that no contract with an accused rider has ever been "exhausted," so that Transamerica has never performed step (e). Transamerica asserts that, to gloss over these deficiencies, Lincoln asserts infringement (and damages) claims based on hypothetical future infringement and postulates a "contingent step exception" that could not apply here. Thus, Transamerica also argues that this category of evidence and argument should be excluded under Rules 402, 403, and 702.

40

Lincoln contends that these arguments by Transamerica are simply a recasting of arguments in Transamerica's motion for summary judgment, which the court denied. Lincoln also argues that its evidence at trial will show that Transamerica's *method* of administering the accused riders includes each and every step of the method claims asserted against Transamerica.

More specifically, Lincoln argues that the Federal Circuit Court of Appeals has refused to hold that method claims cannot be infringed through a sale or offer for sale. Thus, Lincoln contends that whether a method claim can be infringed under the "sells" and "offers for sale" prongs of 35 U.S.C. § 271(a) remains an open question. Lincoln argues that the facts here are materially different from the facts in cases in which the court precluded a patentee from proving infringement of a method claim with evidence of a sale or offer for sale of a product. Here, Lincoln contends, the relationship between the sale or offer for sale of the accused riders and the claimed method for administering the accused riders is different than the relationship between the sale or offer for sale of a product and the claimed method described in the cases relied on by Transamerica, because Transamerica sells and offers for sale the accused riders, and then Transamerica itself, not the purchaser or a third party, practices the steps of the asserted claims through its administration of the accused riders. Indeed, Lincoln argues that Transamerica's sale and offer for sale of the accused riders obligates Transamerica to practice the steps of the '201 patent, because Transamerica could not administer the accused riders without the use of the invention within the meaning of 35 U.S.C. § 284. Consequently, Lincoln argues that Transamerica's assertion of the non-controversial proposition that a method claim cannot be infringed merely by offering to sell something capable of performing the claimed method simply is not on point here. Lincoln also argues that it will prove that Transamerica practices each and every step recited in the method claims at issue during

41

the enforcement period of the '201 patent, because Transamerica's administration of the accused riders involves every step of the method. In other words, Lincoln contends that the focus of its infringement and damages theories is on the way in which Transamerica administers the accused riders, not its sales of or offers to sell such riders.

Lincoln also argues that it is not relying on pre-issuance sales or administration of accused riders to prove infringement or damages, or on hypothetical or speculative future acts to prove infringement or damages, but on Transamerica's administration of the accused riders—including those sold prior to issuance of the '201 patent—in an infringing manner during the enforcement period of the '201 patent. Such administration, Lincoln alleges, involves practice of every step of the claimed method *as construed by the court*, not just "hypothetical or speculative predictions of future acts." Indeed, Lincoln contends that Transamerica relies on "made up" claim constructions, specifically of steps (d) and (e), to support its arguments. For example, for step (d), Lincoln argues that the evidence will show that Transamerica's computerized system does monitor for unscheduled withdrawals and adjusts scheduled payments in the event of an unscheduled withdrawal, and for step (e), that there is no requirement that the account value be exhausted and payments continued for infringement to occur, and Transamerica's administration of the accused riders calls for periodically paying the scheduled payment to the owner for the period of benefit payments *and* standing ready to periodically pay the scheduled payment in the event that the account value reaches zero. Thus, Lincoln argues that Transamerica does practice every step of the claimed method during the period that the '201 patent is in force and that performance is not speculative or hypothetical.

In reply, Transamerica argues that it is not simply trying to relitigate its prior motion for summary judgment, but properly presenting the court with questions of law that the court recognized that it would have to decide. Specifically, Transamerica asserts that

42

it is properly presenting the court with the opportunity to decide whether, as a matter of law, infringement of a method claim can be based on the sale of accused riders, or must be based on Transamerica's actual performance of every step of the accused method. Transamerica argues that Lincoln is improperly attempting to convert a method claim into an apparatus claim by basing infringement and damages on the sale of a rider instead of on the practice of a computerized method for administering certain annuities. Transamerica then reiterates its argument that Lincoln is simply basing its infringement and damages arguments on the hypothetical or speculative performance of required steps of the method. Specifically, Transamerica contends that "standing ready to infringe" is not "infringing."

Lincoln also notified the court of newly-decided authority, *Ricoh Co., Ltd. v. Quanta Computer, Inc.*, 2008 WL 5336903, *9 (Fed. Cir. Dec. 23, 2008), which it argues may be pertinent to the issues presented in these motions. Transamerica agrees that this newly-decided authority is pertinent and contends that it forecloses Lincoln's infringement and damages theories based merely on the sale or offer for sale of variable annuity contracts.

### 3. *Analysis*

The court finds that its disposition of these motions in limine can be much more succinct than the parties' extensive and contentious briefing might suggest. It is true, as Lincoln contends, that the Federal Circuit Court of Appeals has left open the question of whether a method claim can be infringed under the "sells" or "offers to sell" prongs of 35 U.S.C. § 271(a). *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1320-21 (Fed. Cir. 2005) ("We need not and do not hold that method claims may not be infringed under the 'sells' or "offers to sell" prongs of section 271(a)."); *see also Ricoh Co., Ltd. v. Quanta Computer, Inc.*, ___ F.3d ___, ___, 2008 WL 5336903, *8-*9 (Fed. Cir. Dec.

23, 2008) (noting that *NTP* "explicitly did not decide the question of whether a 'method claim may not be infringed under the "sells" and "offers to sell" prongs of section 271(a),'" and also "conclud[ing] that we need not definitively answer this question"). It is clear, however, that the Federal Circuit Court of Appeals has not yet found a viable claim of infringement of a method claim under the "sells" or "offers to sell" language of § 271(a). *See, e.g., Ricoh Co., Ltd.*, ___ F.3d at ___, 2008 WL 5336903 at, *8-*9 (the sale or offer for sale of software that causes the accused device to perform the claimed method is not enough to prove infringement of a method claim); *NTP*, 418 F.3d at 1320-21 (concluding that "the jury could not have found that RIM infringed the asserted method claims under the 'sells' or 'offers to sell' prongs of section 271(a)," because "RIM's performance of at least some of the recited steps of the asserted method claims as a service for its customers cannot be considered to be selling or offering to sell the invention covered by the asserted method claims," so that "[t]he sale or offer to sell handheld devices is not, in and of itself, enough").

On the other hand, there is no doubt that, as a matter of law, "[a] method claim is *directly* infringed only by one practicing the patented method." *Joy Tech. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993) (emphasis in the original); *accord BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007) ("Direct infringement requires a party to perform or use each and every step or element of a claimed method or product."); *NTP*, 418 F.3d at 1319-21 (quoting *Joy Technologies* and exploring legislative history and case law limiting infringement of method claims under § 271(a) to use of the claimed method). Merely selling a product that requires the seller to practice only some of the steps of the claimed method as a service to the buyer is not enough. *NTP*, 418 F.3d at 1320-21. The court will so instruct the jury.

44

Although Lincoln's arguments (and its jury instructions) are imprecise or unclear about whether Lincoln is asserting that *merely* selling or offering to sell certain riders infringes its method patent or that Transamerica practices each and every step of its claimed method and, indeed, *must* do so to administer the riders that it has sold, is selling, or is offering to sell, it is clear that Lincoln has made a plausible argument that its infringement and damages theories are not based on the mere sale or offer for sale of variable annuity contracts. Rather, Lincoln's theory of infringement is based on Transamerica's *practice*, during the period in which the '201 patent is in force, of each and every step of the claimed method *for* the variable annuity contracts that Transamerica has sold. Lincoln's theory that Transamerica *does* and *must* practice *each and every step* of the claimed method to administer the riders in question distinguishes this case, for example, from *NTP*, in which the court rejected infringement of the method claim because the alleged infringer was shown only to perform "at least some of the recited steps of the asserted claims," not *each and every step* of the asserted claims, "as a service for its customers." *NTP*, 418 F.3d at 1321. Similarly, Lincoln has made a plausible argument for *damages* based on the sale of the riders in question to the extent that the sale of the riders in question *necessarily* requires Transamerica to practice each and every step of the claimed invention.

Moreover, it is clear that Transamerica's argument that Lincoln cannot show that Transamerica practices each and every step of the claimed method, because no account value of any rider has ever been exhausted, is based on a gross mischaracterization of step (e) of the claimed method, as the court explained, above, beginning on page 21. Contrary to Transamerica's contentions, the claim language and the court's construction of step (e) of the claimed method do *not* require that the account value be exhausted for step (e) to be performed. Thus, it is Transamerica's construction that is erroneous as a matter of law,

45

not Lincoln's infringement theory. The court warned the parties, above, and reiterates now, that the parties must pay scrupulous attention to the court's constructions and to argue within them, precisely because the court's constructions are the law of the case, and that failure to do so may lead to appropriate sanctions.

Transamerica's Motion In Limine To Exclude All Evidence Relating And Any Reference to Infringement Theories That Are Erroneous As A Matter of Law (docket no. 143) and Transamerica's Motion In Limine To Exclude All Evidence Relating And Any Reference To Damages Theories That Are Erroneous as a Matter of Law (docket no. 147) will both be denied.

### III. CONCLUSION

Upon the foregoing,

1.      Lincoln's Motion In Limine No. 2 To Preclude Evidence Of The Pending Reexamination Of The '201 Patent At Trial (docket no. 131) is **granted**;

2.      Transamerica's Motion In Limine To Exclude Any Reference To The Commentary In The Court's Claim Construction Order Or The Parties' Rejected Claim Construction Positions (docket no. 132) is **granted** as to constructions that are contrary to the court's constructions, but otherwise **denied**;

3.      Transamerica's Motion In Limine To Exclude The Deposition Testimony of Frank Alan Camp (docket no. 133) is **denied without prejudice** to timely reassertion upon an adequate record;

4.      Lincoln's Motion In Limine No. 4 To Exclude Evidence And Arguments Relating To (1) Alleged Inadequacies Of The PTO, (2) Business Method Patents, Or (3) Tax Planning Patents (docket no. 135) is **granted** to the extent that Transamerica will be precluded from offering evidence or argument concerning alleged inadequacies of the

46

PTO's examinations of "business method patents" generally or the '201 patent in particular, and concerning whether "business method patents," "annuity patents," or "tax-planning patents" are favored or disfavored, or patentable or unpatentable, and concerning the PTO's ability to assess the patentability of such patents, but Transamerica may present evidence of analogies between the '201 patent and "tax-planning patents" to demonstrate differences between a computer system used to administer variable annuities and the accused annuity contract riders;

5. Transamerica's Motion In Limine To Exclude All Evidence Relating And Any Reference to Infringement Theories That Are Erroneous As A Matter of Law (docket no. 143) is **denied**; and

6. Transamerica's Motion In Limine To Exclude All Evidence Relating And Any Reference To Damages Theories That Are Erroneous as a Matter of Law (docket no. 147) is **denied**.

**IT IS SO ORDERED.**

**DATED** this 8th day of January, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA