**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

TRANSAMERICA LIFE INSURANCE
COMPANY, WESTERN RESERVE
LIFE ASSURANCE CO. OF OHIO, and
TRANSAMERICA FINANCIAL LIFE
INSURANCE COMPANY,

      Plaintiffs,

vs.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

      Defendant.

No. C 06-110-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING LINCOLN'S
MOTION TO STRIKE**

_____

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A. Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *B. Challenged Exhibits* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        *1.* *Exhibits relating to prior art* . . . . . . . . . . . . . . . . . . . . . 5
        *2.* *Exhibits relating to the PTO's reexamination proceedings* . . . . 9
        *3.* *Belatedly produced exhibits* . . . . . . . . . . . . . . . . . . . . . . . 10
    *C. Challenged Issues* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    *D. Challenged Witnesses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        *1.* *Testimony of Lynn Blankenship* . . . . . . . . . . . . . . . . . . . 18
        *2.* *Testimony of Timothy Bennett* . . . . . . . . . . . . . . . . . . . . 20

*III.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I.  INTRODUCTION

This litigation involves United States Patent No. 7,089,201 B1 (the '201 patent), which is entitled "METHOD AND APPARATUS FOR PROVIDING RETIREMENT INCOME BENEFITS." The '201 patent is assigned to Lincoln National Life Insurance Company (Lincoln). On August 8, 2006, Transamerica Life Insurance Company, Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Company, collectively "Transamerica," filed a Complaint For Declaratory Judgment (docket no. 1) initiating this action. In its Complaint, Transamerica asserts, in essence, that it is not infringing the '201 patent by selling various annuity product contracts. In contrast, in an Answer To Plaintiffs' Complaint And Patent Infringement Counterclaim (docket no. 14), filed December 29, 2006, Lincoln seeks declarations that the '201 patent is not invalid and that Transamerica is infringing it. Lincoln also seeks damages for infringement, injunctive relief from such infringement, and reasonable attorney fees for litigating this matter. Transamerica subsequently asserted various affirmative defenses to Lincoln's infringement claim, including invalidity of the '201 patent on the grounds of "anticipation," "obviousness," and "inadequate written description." Trial in this matter is set to begin February 2, 2009.

This matter comes before the court pursuant to Lincoln's January 8, 2009, Motion To Strike And Exclude Exhibits, Contentions, Witnesses, And Testimony Pursuant To Court's Orders (docket no. 222). Somewhat more specifically, the motion seeks to exclude seven categories of witnesses and exhibits that Lincoln contends have been previously excluded by the court or that were not disclosed in compliance with orders of the court. After the court granted the parties additional time to attempt to resolve their disputes, or at least to determine which of the challenged exhibits and witnesses were truly

in dispute, Transamerica filed a Resistance (docket no. 236) on January 22, 2009, and Lincoln filed a Reply (docket no. 239) on January 24, 2009.

## II. LEGAL ANALYSIS

### A. Applicable Standards

As this court has previously explained in this litigation, this court examined the standards for exclusion of evidence not disclosed as required by court orders in *United States v. Hawley,* 562 F. Supp. 2d 1017 (N.D. Iowa 2008). *See Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, ___ F. Supp. 2d ___, 2008 WL 5265029, *10-*11 (N.D. Iowa Dec. 18, 2008). In *Hawley*, this court "'"start[ed] with the premise that a district court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the Court's pretrial order."'" *Hawley*, 562 F. Supp. 2d at 1030 (quoting *Life Plus Int'l v. Brown*, 317 F.3d 799, 803 (8th Cir. 2003), in turn quoting *Dabney v. Montgomery Ward & Co.*, 692 F.2d 49, 51 (8th Cir. 1982) (internal quotations omitted), *cert. denied*, 461 U.S. 957 (1983)). The court explained, further,

> However, when a party fails to make a timely disclosure of evidence, for example, by failing to provide information or identify a witness in compliance with Rule 26(a) or (e) of the Federal Rules of Civil Procedure, "the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Wegener v. Johnson,* 527 F.3d 687, 691-92 (8th Cir. 2008). As the Eighth Circuit Court of Appeals just recently explained,
>
>> The district court may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). When fashioning a remedy, the district court should consider, inter alia, the reason for noncompliance, the surprise and prejudice to the

3

> opposing party, the extent to which allowing the
> information or testimony would disrupt the order and
> efficiency of the trial, and the importance of the
> information or testimony. *Sellers v. Mineta,* 350 F.3d
> 706, 711-12 (8th Cir. 2003); *see also Marti v. City of
> Maplewood,* 57 F.3d 680, 683 (8th Cir. 1995) (setting
> forth a variety of possibly relevant factors).
>
> *Wegener,* [527 F.3d] at 691-92. The court has noted,
> however, "that the district court's discretion narrows as the
> severity of the sanction or remedy it elects increases." *Id.* at
> 692-93.

*Hawley*, 562 F. Supp. 2d at 1029-30 (also finding that the resisting party had not been
unfairly surprised by any of the purportedly belated supplementation of the government's
discovery responses, even if they were technically untimely, and that, where disclosure
might have been technically untimely, the government had offered substantial reason for
noncompliance). The court will apply these standards, where pertinent, here.

Lincoln's motion also seeks to exclude evidence that the court has previously
stricken or excluded. The court's authority to enforce its prior orders striking or excluding
evidence seems self-evident.

Therefore, the court turns to consideration of the seven categories of evidence and
witnesses at issue here.


### B. Challenged Exhibits

Lincoln seeks an order striking the following categories of exhibits: (1) exhibits
regarding Fortis and all other alleged prior art previously stricken by the court; (2) exhibits
relating to alleged prior art that fail to comply with the court's Pretrial Order; (3) exhibits
relating to the PTO's reexamination of the '201 patent pursuant to the court's finding that
such evidence is irrelevant; and (4) exhibits that Transamerica belatedly produced in

4

violation of the court's Scheduling Order. The court will consider the challenged exhibits that are still in dispute.

### 1.    *Exhibits relating to prior art*

The first two categories of exhibits that Lincoln seeks to strike or exclude are exhibits regarding Fortis and all other alleged prior art previously stricken by the court and exhibits relating to alleged prior art that fail to comply with the court's Pretrial Order. The court finds it convenient to discuss these two categories of exhibits together.

After Transamerica withdrew numerous exhibits challenged by Lincoln, the only exhibits still at issue in Lincoln's first two categories are Exhibits 142, 1061, 1065, 1193, 1388, and 1395.[1] Transamerica neither withdrew exhibit 1193 nor argued that it fell outside the court's prior exclusionary orders. Because Transamerica failed to resist

---

[1] In its Reply, Lincoln also contends that the "Golden patent," Exhibit 1017, should be excluded, because it "flies in the face of the Court's prior exclusionary orders," and Lincoln notes that Transamerica makes no argument in its Resistance as to how or why it should be able to rely upon Golden in light of the exclusionary orders. However, nowhere in the motion now before the court did Lincoln challenge Exhibit 1017, so that it is hardly surprising that Transamerica did not respond to such a challenge. Inclusion of a new argument in a reply brief is improper as a matter of motion practice in this court, *see* N.D. Ia. L.R. 7.1(g); *Lorenzen v. GKN Armstrong Wheels, Inc.,* 345 F. Supp. 2d 977, 992 n.4 (N.D. Iowa 2004); *Baker v. John Morrell & Co.,* 263 F. Supp. 2d 1161, 1169 n.1 (N.D. Iowa 2003), and, indeed, in this circuit. *See Republican Party of Minn. v. Kelly,* 247 F.3d 854, 881 (8th Cir. 2001) ("It is well established that issues not argued in an opening brief cannot be raised for the first time in a reply brief," citing *United States v. Vincent,* 167 F.3d 428, 432 (8th Cir.), *cert. denied,* 528 U.S. 848 (1999); *South Dakota Mining Ass'n v. Lawrence County,* 155 F.3d 1005, 1011 (8th Cir. 1998); *United States v. Davis,* 52 F.3d 781, 783 (8th Cir. 1995); *French v. Beard,* 993 F.2d 160, 161 (8th Cir. 1993), *cert. denied,* 510 U.S. 1051 (1994)); *accord Barham v. Reliance Standard Life Ins. Co.,* 441 F.3d 581, 584 (8th Cir. 2006) ("As a general rule, we will not consider arguments raised for the first time in a reply brief."). Therefore, the court need not and will not consider such a "new" argument for exclusion of the "Golden patent" here.

exclusion of Exhibit 1193, that exhibit will be excluded. The court turns to the admissibility of the other five exhibits still at issue.

The arguments about and analysis of the admissibility of Exhibit 142 are templates for the arguments and analyses concerning most of the other remaining exhibits in these two categories. Transamerica explains that Exhibit 142 is a January 14, 1997, memorandum from Ron Ziegler, who was chief actuary in Transamerica's annuity division, to others at Transamerica; that the memorandum antedates both the Fortis reference and the filing of Lincoln's first provisional application; that it surveys competitors' variable annuities, particularly one offered by Minnesota Mutual; and that it outlines Mr. Ziegler's idea for a new variable annuity. Transamerica argues that Exhibit 142 is not itself prior art, but is offered to show the "level of skill" element, including prior art solutions to the problem to which the '201 patent is directed, for purposes of an "obviousness" analysis. Because it is not "prior art," Transamerica contends that it does not run afoul of the court's orders regarding prior art. Transamerica also argues that Exhibit 142 was produced to Lincoln on November 11, 2005.

Lincoln counters that the "other purposes" for which this exhibit is purportedly offered relate to what the prior art allegedly shows, and because it was not properly explained in either contention interrogatory answers or the Prior Art Statement, it should be stricken. Indeed, Lincoln asserts that Transamerica's argument that this exhibit demonstrates prior art solutions to the problem to which the '201 patent is directed contradicts Transamerica's statement that it is not offered as prior art. Lincoln contends, further, that Transamerica's argument that this exhibit is relevant to the "level of skill" element of the "obviousness" analysis is an admission that the element was not considered in Transamerica's Prior Art Statement. Lincoln also argues that admitting this exhibit amounts to an end-run around the requirement that Transamerica adequately explain the

level of one skilled in the art in connection with its obviousness defense within its Prior Art Statement.

The Scheduling Order required Transamerica, *inter alia*, to provide "a list of all of the prior art on which [Transamerica] rel[ies], and a complete and detailed explanation of what [Transamerica] allege[s] the prior art shows and how that prior art invalidates the claims asserted by Lincoln." Scheduling Order (docket no. 23), "Other Matters," § 2.A. Even assuming that Exhibit 142 is not "prior art," but is offered merely to show the level of skill in the art, *see, e.g., Orthopedic Equip. Co., Inc. v. United States*, 702 F.2d 1005, 1012 (Fed. Cir. 1983) (an item that is not technically "prior art" may be offered to show the level of skill in the art), Transamerica cannot adroitly evade the requirements of the Scheduling Order to show how prior art invalidates the claims asserted by Lincoln simply by labeling something as offered for the purpose of showing the level of skill in the art, because it is precisely such information about the level of skill in the art that would be relevant to show how prior art invalidates the claims asserted by Lincoln. *See* Scheduling Order, "Other Matters," § 2.A (requiring such a disclosure in the Prior Art Statement). Exhibit 142 will be stricken, because it should have been disclosed as part of Transamerica's explanations, in its Prior Art Statement, of what the prior art shows and how that prior art invalidates the claims asserted by Lincoln. *See Hawley*, 562 F. Supp. 2d at 1030 (the court may exclude from evidence at trial any matter which was not properly disclosed in compliance with the court's pretrial order).

Next, Transamerica argues that Exhibit 1395 is a marketing brochure that describes the Family Income Protector (FIP) rider offered by PFL Life Insurance Company, which was a predecessor of the MAP annuity, which Transamerica discontinued. As with Exhibit 142, Transamerica argues that Exhibit 1395 is not offered as prior art, but to describe prior art (*e.g.*, Exhibit 1120) to demonstrate what a person of ordinary skill would understand

7

was disclosed in the prior art. Transamerica also argues that Exhibit 1395 is offered to rebut Lincoln's contentions about the reasons that Transamerica discontinued the MAP annuity. Lincoln responds that Exhibit 1395 should be excluded for the same reasons that Exhibit 142 should be excluded, that is, that Transamerica is improperly attempting to add to what alleged prior art purportedly shows and, as such, Transamerica is attempting a "back door" addition to the designated prior art. The court again concludes that, to the extent that Transamerica premises admissibility of Exhibit 1395 on what it shows about the level of skill in the art, Transamerica cannot adroitly evade the requirements of the Scheduling Order simply by labeling something as offered for the purpose of showing the level of skill in the art, because it is precisely such information about the level of skill in the art that would be relevant to show how prior art invalidates the claims asserted by Lincoln, and the Scheduling Order required that such information be included in the Prior Art Statement. Thus, Exhibit 1395, like Exhibit 142, will be stricken, because it should have been disclosed in Transamerica's Prior Art Statement as part of Transamerica's explanation of what the prior art shows and how that prior art invalidates the claims asserted by Lincoln.[2]

Transamerica also argues that Exhibit 1061 (a presentation by Milliman) and Exhibit 1065 (a presentation by Tillinghast-Towers) antedate the filing of Lincoln's first provisional application; that they were identified in Mr. Logan's May 1, 2008, report and relied on by Mr. Logan to establish the state of the art at the time that the patent application was filed; and that they are offered to show the state of the relevant art at the

---

[2]Until and unless Lincoln offers evidence about the reasons that Transamerica discontinued the MAP annuity, the court cannot assess whether Exhibit 1395 would be relevant to rebut Lincoln's proffered reasons. However, the court has considerable doubt that Exhibit 1395 sheds any real light on that issue.

time Lincoln filed for the '201 patent, but they are not themselves prior art subject to the requirements of the court's order regarding the Prior Art Statement. Lincoln argues, however, that these presentations should also have been disclosed in Transamerica's Prior Art Statement pursuant to the Scheduling Order as explanations of what the prior art shows and how that prior art invalidates the claims asserted by Lincoln. Again, the court agrees with Lincoln, and Exhibits 1061 and 1065 will be excluded.

Exhibit 1388 presents a different situation. Transamerica contends that Exhibit 1388 is simply a certified version of the timely produced Manulife GRIP reference, which is addressed in Mr. Logan's May 1, 2008, report and in Transamerica's July 28, 2008, Prior Art Statement. Lincoln offers no reply to this contention. Because Exhibit 1388 is simply a certified version of a document timely produced and identified in a Prior Art Statement, the court concludes that it is admissible.

In summary, Exhibits 142, 1061, 1065, 1193, and 1395 will be excluded, but Exhibit 1388 will not be excluded.

### 2. *Exhibits relating to the PTO's reexamination proceedings*

The third category of exhibits that Lincoln now seeks to exclude is exhibits relating to the PTO's reexamination of the '201 patent pursuant to the court's finding that such evidence is irrelevant. Transamerica apparently did not withdraw these exhibits, but neither did Transamerica offer any further argument for their admissibility. By order dated January 8, 2009, the court granted Lincoln's motion to preclude evidence of the pending reexamination of the '201 patent before the PTO. *See Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 2009 WL 88357 (N.D. Iowa Jan. 8, 2009) (slip op., docket no. 221). Therefore, this category of exhibits will be stricken.

9

### 3.    *Belatedly produced exhibits*

Next, Lincoln seeks to exclude exhibits that Transamerica purportedly belatedly produced in violation of the court's Scheduling Order.  Although Transamerica withdrew several of the challenged exhibits in this category, it asserts that several others remain admissible.[3]

Transamerica argues that its production of several exhibits after the close of discovery was substantially justified, or that their late production is harmless to Lincoln, or both.  More specifically, Transamerica argues that Exhibits 1128, 1274, and 1281 all relate to the Retirement Income Choice (RIC) rider.  As such, Transamerica contends that Lincoln cannot legitimately claim either surprise or harm from disclosure of these documents, because Lincoln only put the RIC riders at issue by designating deposition testimony for use at trial stating that the RIC rider is most similar to the Income Select for Life rider originally at issue in this case, and Lincoln did not assert infringement by selling the RIC rider until the tail end of discovery.  Transamerica asserts that Lincoln has had service forms and withdrawal forms for the Income Select for Life rider since Transamerica produced them on October 10, 2007.  Lincoln counters that Transamerica's argument that Lincoln put the RIC rider at issue late in the case is wrong, because Transamerica timely produced other information relating to this rider and Lincoln conducted a Rule 30(b)(6) deposition based on that information.  Thus, Lincoln contends that Transamerica has no excuse for its belated disclosure of other information and that

---

[3]Transamerica neither withdrew Exhibits 1307 and 1363, nor argued that they were timely disclosed or that their untimely disclosure should be excused.  Because Transamerica failed to resist exclusion of Exhibits 1307 and 1363, those exhibits will be excluded.

10

Lincoln is harmed by its inability to explore that additional information through discovery now.

The court agrees with Lincoln that Transamerica has not offered any substantial reason for noncompliance with discovery deadlines as to Exhibits 1128, 1274, and 1281, while Lincoln is surprised by the belated inclusion of information relating to the RIC rider, when Transamerica had previously made some disclosures related to that rider and Lincoln had the opportunity to examine that information through further discovery, but Transamerica is now offering a different picture of the relevant issues. *See, e.g., Hawley*, 562 F. Supp. 2d at 1029-30 (considering reasons for noncompliance and surprise to the opposing party as two factors relevant to determination of whether a belated disclosure is substantially justified or harmless or is, instead, sanctionable by exclusion of the evidence in question). Moreover, Transamerica has failed to make any showing that these exhibits are so important to its case that they should be admitted despite their untimely disclosure. *Id.* (also considering the importance of the information or testimony). Under these circumstances, Exhibits 1128, 1274, and 1281 will be excluded.

Transamerica argues that Exhibits 1284, 1309, and 1337 are publicly available documents identified in the June 23, 2008, expert report of Mr. James Van Elsen. Thus, Transamerica argues that Lincoln was on notice of the relevance of these documents to Transamerica's damages analysis. Transamerica also argues that Lincoln had the opportunity to question Mr. Van Elsen about these documents, and did so as to Exhibit 1284, during his August 8, 2008, deposition. Lincoln counters that mere citation of documents in Transamerica's damages expert report does not amount to timely production of such documents. Moreover, Lincoln argues that, without the benefit of the actual documents, any deposition questions that it asked concerning these documents were necessarily limited and the expert's responses could not be verified by Lincoln.

11

The court agrees with Lincoln that the fact that a document is cited by a party's expert and is publicly available does not excuse that party from timely production of the document, if it is the subject of an appropriate discovery request. In short, the fact that such documents are publicly available is not a substantial justification for untimely production, nor does it make the failure to timely produce them harmless. *See Hawley*, 562 F. Supp. 2d at 1029-30 (considering whether belated disclosures were substantially justified or harmless). Exhibits 1284, 1309, and 1337 will be excluded.

Transamerica argues that Exhibits 1282 and 1290 are Tillinghast Pricing Methodology Surveys (Exhibit 1282 from 2004 and Exhibit 1290 from 2006), each including only AEGON USA's responses. Transamerica asserts that these exhibits are relevant to show Transamerica's targeted range of anticipated profits for its variable annuity products, which are used to assist the parties' experts in formulating damages opinions. Transamerica also asserts that Mr. Van Elsen cited to and discussed the 2006 Tillinghast Pricing Methodology Survey, which is Joint Exhibit 411, and that Lincoln extensively questioned Mr. Van Elsen about that survey. Transamerica contends that Exhibit 1290 was obtained from Tillinghast after Mr. Van Elsen's deposition and represents Transamerica's submissions to the 2006 survey and that, in the course of searching for the 2006 responses, Transamerica located its 2004 responses, Exhibit 1282. Transamerica contends that Lincoln is not prejudiced by completion of the record with this information, in light of Mr. Van Elsen's deposition and Transamerica's production of the documents as soon as Transamerica discovered their existence. Lincoln contends that these exhibits should be stricken for the same reason that it argued that the court should strike the other publicly available exhibits identified by Mr. Van Elsen that were not timely produced.

The court finds that the situation as to Exhibits 1282 and 1290 is sufficiently different from the situation as to the other exhibits merely cited by Mr. Van Elsen that a different result here is appropriate. Transamerica's production of these two exhibits constituted a reasonable effort to complete the record as to matters explored in Mr. Van Elsen's deposition. In other words, the court finds that Transamerica's belated production of these exhibits was substantially justified as reasonable supplementation. *See Hawley*, 562 F. Supp. 2d at 1029-30 (considering whether belated disclosures were substantially justified or harmless). Exhibits 1282 and 1290 will not be excluded.

Transamerica contends, next, that Exhibits 1306, 1333, 1359, 1361, 1362, and 1399-1406 are updated financial information. Transamerica contends that the updated information is identical to what Transamerica produced before, except that it covers subsequent periods of time; that Lincoln first served supplemental damages charts, setting the precedent for supplemental damages information; that Lincoln in fact suggested that Transamerica supplement its financial information; and that on December 19, 2008, Lincoln supplemented its damages schedules using Transamerica's updated financial information. Thus, Transamerica contends that Lincoln opened the door to this series of exhibits. Lincoln offered no reply to these contentions. The court agrees with Transamerica that the updated financial information was appropriately offered, so that Exhibits 1306, 1333, 1359, 1361, 1362, and 1399-1406 will not be excluded.

Transamerica argues that Exhibits 1317, 1320, and 1321 are publicly available documents concerning actuaries and that Exhibit 1328 is a copy of Iowa's Standard Valuation Law, Iowa Code § 508.36. Transamerica argues that these exhibits describe the qualifications and background of actuaries and that none are prejudicial to Lincoln, because Lincoln knows that actuaries and their roles are central to the issues concerning the '201 patent, and that Mr. Van Elsen's background as an actuary distinguishes him from

13

Lincoln's damages expert. Lincoln again asserts that public availability of these exhibits does not excuse failure to comply with discovery deadlines.

Where the court did not accept, above, the contention that citation of a publicly available document by a party's expert should excuse a party from timely production of the document, if the document is the subject of an appropriate discovery request, the court is even less likely to accept that publicly available documents with some general relevance to the case can be belatedly disclosed. The fact that such documents are publicly available is not a substantial justification for untimely production, nor does it make the failure to timely produce them harmless. *See Hawley*, 562 F. Supp. 2d at 1029-30 (considering whether belated disclosures were substantially justified or harmless). The importance of such general documents to the offering party's case is also substantially less. *Id.* (also considering the importance of the evidence in question). Transamerica certainly has other ways of contrasting the credentials of its damages expert with those of Lincoln's damages expert. Therefore, Exhibits 1317, 1320, and 1321 will be excluded.

Finally, Transamerica contends that Exhibits 1283 and 1332 are the same types of documents as those about which Lincoln does not complain. Specifically, Transamerica contends that Exhibit 1283 is a Compliance Form dated February 28, 2007, which shows the pricing and profitability of Transamerica's products, but it is no different from Exhibits 1292 and 1293, which are Compliance Forms from 2003, while Exhibit 1332 shows the pricing of Transamerica's GMWB products and the pricing of Transamerica's competitors' products. Transamerica contends that Lincoln accepts documents that it believes support its positions, but seeks to exclude comparable documents that it perceives to be contrary to its positions. Lincoln does not reiterate its request to exclude these exhibits in its reply. While not entirely convinced that the belated disclosure of these documents is substantially justified, it appears that they are harmless to Lincoln, where they are similar to, but simply

14

later than, documents already in the record. *See id.* Therefore, Exhibits 1283 and 1332 will not be excluded.

In short, of the exhibits in this category still at issue, Exhibits 1128, 1274, 1281, 1284, 1307, 1309, 1317, 1320, 1321, 1337, and 1363 will be excluded, but Exhibits 1282, 1283, 1290, 1306, 1332, 1333, 1359, 1361, 1362, and 1399-1406 will not be excluded.

## C. *Challenged Issues*

Lincoln also seeks to exclude exhibits, discovery responses, witnesses, and testimony relating to Transamerica's "*Comiskey*-type obviousness contention," based on use of general purposes computers, and any other contentions not timely disclosed, on the ground that the court has excluded such issues. Lincoln contends that Transamerica first disclosed a "*Comiskey*-type obviousness contention" in its proffered November 17, 2008, amended Prior Art Statement, but the court denied Transamerica leave to amend its Prior Art Statement. Lincoln asserts that, notwithstanding the court's denial of leave to amend its Prior Art Statement, Transamerica is still offering witnesses, exhibits, and arguments in support of such a defense. Lincoln points out that Transamerica cannot show that its delay in asserting such a defense is substantially justified or harmless. Rather, Lincoln contends that the parties have been aware of the availability of such a defense at least since the September 2007 panel decision in *In re Comiskey*, 499 F.3d 1365 (Fed. Cir. 2007), but Transamerica did not assert the defense before the end of discovery in August 2008. Belated assertion of the defense is not harmless, Lincoln contends, because of the short time remaining before trial and the lack of opportunity to conduct discovery into the basis for such a defense.

Transamerica acknowledges that the panel decision in *In re Comiskey* was withdrawn and superseded, *en banc*, by *In re Comiskey*, ___ F.3d ___, ___, 2009 WL

15

162408 (Jan. 26, 2009) (*en banc*), and spends a good deal of its Resistance arguing that, despite deletion from the *en banc* opinion of any reference to the obviousness defense that Transamerica asserts here, that defense is still viable. More to the point, as to Lincoln's actual objections, Transamerica argues that it did identify all material facts, all witnesses with knowledge of those facts, and all of the documents that support its contention that the claims of the '201 patent are obvious owing to routine use of a computer. Transamerica contends that Lincoln has not identified any fact or witness that was not so disclosed. More specifically, Transamerica argues that, in response to Lincoln's contention interrogatory, it disclosed by reference to Mr. Logan's expert report the key fact that computers have long been used as a matter of course in the industry. Transamerica also argues that there is no prejudice to Lincoln, because Lincoln fails to identify any relevant discovery that it could have taken on this defense, where Lincoln had every opportunity to take discovery on the key factual issue relevant to the defense, which is whether computers were routinely used in the industry to administer annuities.

Lincoln offers no reply in further support of its motion to strike a "*Comiskey*-type obviousness contention."

It is clear that Transamerica cannot pursue claims and defenses excluded by the court's order denying Transamerica's motion for leave to amend the pleadings or rely on prior art included for the first time in the amended Prior Art Statement that the court rejected as untimely. On the other hand, the court does not find that its prior rulings denying Transamerica leave to amend its Prior Art Statement or its pleadings expressly or directly addressed Transamerica's "*Comiskey*-type obviousness contention," although the court's order prohibiting amendment of Transamerica's Prior Art Statement may have had the effect of excluding certain references that *would have supported* such an obviousness

16

defense. Thus, the contention is not specifically precluded by the court's prior rulings, even if certain evidence that might have supported it is precluded by those rulings.

The court also need not become embroiled in the question of whether a "*Comiskey*-type obviousness contention" survives withdrawal of the panel decision in *Comiskey* to resolve this part of Lincoln's motion to strike. Suffice it to say that the panel decision does not appear to this court to create new law, but only to discuss prior case law regarding routine use of computers, so subsequent withdrawal of the panel decision does not destroy the legal basis for such a defense.

More to the point here, where the question is timely disclosure of the intent to raise the defense, Transamerica timely pleaded an "obviousness" affirmative defense. Also, Lincoln, like Transamerica, has been aware of the theoretical availability of an "obviousness" defense based on routine use of a computer since before the panel decision in *Comiskey*, where the pertinent part of the panel decision relied on existing law. The court also finds that Transamerica has adequately identified where, in response to contention interrogatories, it disclosed its reliance on such a "*Comiskey*-type obviousness" defense and the factual basis for it, by incorporating by reference Mr. Logan's report identifying as obvious the routine use of computers in the industry. Lincoln cannot claim prejudice from failure to recognize the significance of all of Transamerica's response. Under these circumstances, where the court finds that disclosure of the defense was timely and adequate, there is no basis to exclude the defense.

Exhibits, discovery responses, witnesses, and testimony relating to Transamerica's "*Comiskey*-type obviousness contention," based on use of general purposes computers, will not be excluded, except to the extent that the court has previously denied leave to amend Transamerica's Prior Art Statement.

17

### D. Challenged Witnesses

Finally, Lincoln seeks to exclude testimony of two witnesses, Lynn Blankenship and Timothy Bennett. Lincoln seeks to exclude Mr. Blankenship's testimony, on the ground that disclosure of this witness fails to comply with the court's Scheduling Order, and to exclude expert testimony by Timothy Bennett, on the ground that such testimony from this witness fails to comply with the court's Scheduling Order and/or Pretrial Order. The court will consider separately whether some or all of the testimony of these witnesses should be excluded for failure to comply with the court's orders.

### 1. Testimony of Lynn Blankenship

Lincoln argues that Mr. Blankenship was not disclosed as a person with discoverable information or as a potential witness as required by Rule 26(a), nor was he disclosed in a timely Rule 26(e) supplement. Thus, Lincoln contends that Mr. Blankenship's testimony should be excluded pursuant to Rule 37(c)(1). Lincoln points out that the deadline for expert discovery was August 15, 2008, and that, prior to that deadline, it sought the identity of "each witness that may have knowledge about the facts" set forth in Transamerica's Complaint and its Answer to Lincoln's infringement counterclaim, "regardless of whether [Transamerica] may call the person as a trial witness" and that Lincoln also requested disclosure of the "subject matter and facts [each witness] is believed to know." Lincoln's Exhibit 6 (interrogatories). Lincoln points out that Transamerica never disclosed Mr. Blankenship in response to the pertinent interrogatory or in any subsequent supplementation. Lincoln contends that Transamerica first disclosed Mr. Blankenship in its initial proposed witness list on October 28, 2008, and then modified that belated disclosure on December 22, 2008. Lincoln argues that Transamerica has no substantial justification for failure to disclose Mr. Blankenship as a witness, nor is his belated disclosure harmless. Rather, Lincoln argues that Transamerica

is attempting another "back door" expansion of the issues in the case on the eve of trial by belatedly designating Mr. Blankenship as a witness.

Transamerica argues, however, that it produced more than 67 documents to Lincoln that identify Mr. Blankenship, and Lincoln used at least four of those documents during depositions. Transamerica argues, further, that Lincoln identified all four of those documents as potential trial exhibits in the parties' initial Final Pretrial Order. Thus, Transamerica contends that, although Mr. Blankenship was not identified in Transamerica's Rule 26(a) disclosure, it is plain that Lincoln was aware (or at minimum should have been aware) of the relevance of his testimony during discovery, so that Lincoln cannot claim surprise. Transamerica also argues that it identified Mr. Blankenship as a witness as soon as it determined that he may testify at trial. Finally, Transamerica argues that it identified Mr. Blankenship as a witness by the December 24, 2008, deadline in the court's revised Scheduling Order.

It is clear—and Transamerica admits as much—that Transamerica's disclosure of Mr. Blankenship did not comply with Rule 26. It is equally clear that disclosure of Mr. Blankenship as a person with information, whether or not Transamerica intended to call him as a witness, was required in response to Lincoln's pertinent interrogatory. Thus, Transamerica's disclosure of Mr. Blankenship was plainly untimely. The court also concludes that references to a person in various documents produced in discovery, even dozens of such documents, and use of some of those documents by the opposing party in further depositions or discovery, is not a substantial justification for untimely identification of that person as a witness, nor does it make the failure to timely identify the witness harmless, just as an expert witness's reference to certain documents in deposition does not justify or render harmless untimely disclosure of those documents. *See Hawley*, 562 F. Supp. 2d at 1029-30 (considering whether belated disclosures were substantially justified

19

or harmless). Transamerica's belated realization of the relevance of Mr. Blankenship's testimony is itself an admission that Lincoln could not reasonably have been expected to recognize the importance of Mr. Blankenship as a potential witness in Transamerica's case. The belated identification of Mr. Blankenship as a witness is not harmless under the circumstances, where discovery was long closed by the time of Transamerica's earliest identification of Mr. Blankenship as a witness, and Lincoln is harmed by Transamerica's belated efforts to get new issues into the case through the "back door" by belatedly designating as a witness someone *Transamerica* certainly should have recognized it was required to disclose pursuant to Rule 26 and Lincoln's pertinent interrogatory. Indeed, the court finds that Transamerica's belated designation of Mr. Blankenship as a witness smacks of "sandbagging."

Mr. Blankenship's testimony will be excluded.

### 2. *Testimony of Timothy Bennett*

Lincoln also seeks to exclude *expert* testimony by Timothy Bennett, because such testimony from this witness fails to comply with the court's Scheduling Order and/or Pretrial Order. More specifically still, Lincoln identifies the testimony from Mr. Bennett that it seeks to exclude as testimony regarding expert topics such as the field of the alleged invention, the scope and content of prior art, the state of the art, the level of ordinary skill in the art, invalidity, non-infringement, and the priority date of the patent-in-suit. Lincoln contends that Transamerica did not designate Mr. Bennett as a person with knowledge of or as a witness on such topics within the deadline for the close of discovery or in compliance with the court's Pretrial Order. Lincoln argues that Mr. Bennett's expert testimony exceeds the scope of Transamerica's discovery responses concerning his knowledge and testimony in its responses to Lincoln's pertinent interrogatories. Thus, Lincoln contends that Transamerica is, once again, attempting to "back door" numerous

20

additional topics into the case through testimony of Mr. Bennett identified only on the eve of trial. Lincoln argues that failure to designate Mr. Bennett as an expert witness and to identify the subject matter about which he would testify violated the court's Pretrial Order and precluded Lincoln from deposing him on the topics belatedly injected in Transamerica's witness descriptions. Lincoln argues that the new topics in Mr. Bennett's testimony clearly fall within the scope of expert testimony.

Transamerica contends that, nearly two years ago, in its initial disclosure, it identified Mr. Bennett as a person with knowledge of the topics now at issue in his projected testimony. Transamerica also points out that Lincoln deposed Mr. Bennett for two days and questioned him on these very topics and has identified documents authored by Mr. Bennett in its own exhibit list, apparently to attempt to show infringement and the state of the art. Thus, Transamerica contends that Lincoln has not been prejudiced in any way by late disclosure of Mr. Bennett's proposed testimony. Transamerica also argues that Mr. Bennett is permitted by Rule 701 to offer *lay* opinions on the topics at issue, so that Transamerica was not required to identify him as an expert, where his testimony will be within his knowledge and his opinions will be formed based on his perceptions.

In reply, Lincoln argues that Transamerica's initial disclosure of Mr. Bennett's knowledge of issues pertinent to the case and Lincoln's intent to use trial exhibits containing Mr. Bennett's name do not cure the fact that Transamerica never identified Mr. Bennett as having knowledge about, or as a witness who would testify as to, topics involving the scope and content of prior art, the state of the art, the level of ordinary skill in the art, invalidity, and the priority date of the patent-in-suit by the deadlines for discovery and witness disclosure.

Transamerica's initial disclosure of Mr. Bennett stated that he "is familiar with the Accused Riders; the administration of annuities to which the Accused Riders are attached;

general industry knowledge of guaranteed income annuity programs and other annuity programs; and the general claims of infringement as asserted by Lincoln National in this case." Transamerica's Resistance, Exhibit E at 2. While not in so many words, that disclosure could reasonably be read to include the field of the alleged invention, the scope and content of prior art, the state of the art, the level of ordinary skill in the art, invalidity, non-infringement, and the priority date of the patent-in-suit. Moreover, Transamerica has pointed to portions of Mr. Bennett's deposition in which he was questioned about his opinions on non-infringement and the scope and content of the prior art. Under these circumstances, it is difficult to see how Lincoln has been harmed by more specific disclosure of the content of Mr. Bennett's testimony. *See Hawley*, 562 F. Supp. 2d at 1029-30 (considering whether belated disclosures were substantially justified or harmless). Thus, the court will not exclude Mr. Bennett's testimony on Lincoln's ground that it was untimely disclosed.

The more troubling question from the court's perspective is Transamerica's failure to designate Mr. Bennett as an expert when his testimony reasonably appears to involve opinions on matters requiring technical or specialized knowledge. *See* FED. R. EVID. 701 (permitting lay opinions where, *inter alia*, they are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702); 702 (permitting opinion testimony by persons qualified as experts). Where a person's profession necessarily involves scientific, technical, or specialized knowledge—for example, because the person is a physician or an actuary—the line between "expert" and "lay" opinion may be difficult to draw. *See, e.g., United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (a treating physician may testify as a lay witness regarding his observations and decisions during treatment of a patient, but once the treating physician expresses an opinion unrelated to treatment which is "based on scientific, technical, or other specialized

knowledge," that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by *Daubert*). Nevertheless, to the extent that Mr. Bennett's testimony complies with Rule 701 of the Federal Rules of Evidence, it may permissibly include lay opinions. *See* FED. R. EVID. 701 (opinions of witnesses not testifying as experts are permissible if they are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702"). Precise determination of when Mr. Bennett's testimony may cross that line cannot be made before trial.

Therefore, Mr. Bennett's *expert* testimony will be excluded, but determination of precisely what testimony falls into that category cannot be determined pretrial.

### III. CONCLUSION

Upon the foregoing, Lincoln's January 8, 2009, Motion To Strike And Exclude Exhibits, Contentions, Witnesses, And Testimony Pursuant To Court's Orders (docket no. 222) is **granted in part and denied in part**, as follows, as to evidence not withdrawn by Transamerica:

1. As to exhibits relating to prior art, the Motion is **granted** as to Exhibits 142, 1061, 1065, 1193, and 1395, and those exhibits are excluded, but **denied** as to Exhibit 1388;

2. As to exhibits relating to the PTO's reexamination proceedings, the Motion is **granted**;

3. As to belatedly produced exhibits, the Motion is **granted** as to Exhibits 1128, 1274, 1281, 1284, 1307, 1309, 1317, 1320, 1321, 1337, and 1363, and those exhibits are

excluded, but **denied** as to Exhibits 1282, 1283, 1290, 1306, 1332, 1333, 1359, 1361, 1362, and 1399-1406;

4.     As to exhibits, discovery responses, witnesses, and testimony relating to Transamerica's "*Comiskey*-type obviousness contention," based on use of general purposes computers, and any other contentions not timely disclosed, the Motion is **denied**, except to the extent that the court has previously denied leave to amend Transamerica's Prior Art Statement;

5.     As to the testimony of Mr. Blankenship, the Motion is **granted**, and his testimony will be excluded;

6.     As to the expert testimony of Mr. Timothy Bennett, the Motion is **granted**, but determination of precisely what testimony falls into that category cannot be determined pretrial.

**IT IS SO ORDERED.**

**DATED** this 29th day of January, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA