**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

TRANSAMERICA LIFE INSURANCE
COMPANY, WESTERN RESERVE
LIFE ASSURANCE CO. OF OHIO, and
TRANSAMERICA FINANCIAL LIFE
INSURANCE COMPANY,

        Plaintiffs,

vs.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

        Defendant.

No. C 06-110-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING POST-TRIAL
MOTIONS**

_____

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A.* ***Transamerica's Renewed Motion For Judgment As A Matter Of Law*** . . 5
     *1.* ***Arguments of the parties*** . . . . . . . . . . . . . . . . . . . . . . . . . 5
     *2.* ***Applicable standards*** . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     *3.* ***Analysis*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
       *a.* ***Infringement and damages*** . . . . . . . . . . . . . . . . . . . 10
       *b.* ***Invalidity*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          *i.* ***Waiver*** . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          *ii.* ***Merits*** . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   *B.* ***Transamerica's Alternative Motion For New Trial*** . . . . . . . . . . . . 16
     *1.* ***Arguments of the parties*** . . . . . . . . . . . . . . . . . . . . . . . . 16
     *2.* ***Applicable standards*** . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     *3.* ***Analysis*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
   *C.* ***Lincoln's Post-Trial Motions*** . . . . . . . . . . . . . . . . . . . . . . . . 19
     *1.* ***The motion for permanent injunction*** . . . . . . . . . . . . . . . . 19
       *a.* ***Arguments of the parties*** . . . . . . . . . . . . . . . . . . . 20

|   | b. | Analysis | 23 |
|   |   | i. | The four-factor equitable test | 23 |
|   |   | ii. | Irrelevant considerations | 24 |
|   |   | iii. | Application of relevant factors | 28 |
|   | c. | Language of the permanent injunction | 29 |
|   |   | i. | Lincoln's proposed language | 29 |
|   |   | ii. | Transamerica's comments | 30 |
|   |   | iii. | Analysis | 31 |
| 2. | Lincoln's motion for prejudgment interest | 37 |
|   | a. | Arguments of the parties | 37 |
|   | b. | Analysis | 38 |

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

## I. INTRODUCTION

On February 13, 2009, after a nine-day trial and a day of deliberations in this patent infringement lawsuit, the jury handed down a verdict in favor of Lincoln on its claims of infringement by Transamerica of independent claim **35** and dependent claims **36** through **39** and **42** of "the '201 patent."[1]   The jury awarded a "total reasonable royalty" of $13,098,349 for Transamerica's past infringement, at a "royalty rate" of 11 base points, and a "base" of $11,907,589,871.   The jury also rejected Transamerica's claims of invalidity of the '201 patent for "anticipation," "obviousness," and "inadequate written description."   *See* Verdict Form (docket no. 276).   On February 18, 2009, a Judgment On

---

[1]The patent-in-suit is more fully identified as United States Patent No. 7,089,201 B1 (the '201 patent), which is entitled "METHOD AND APPARATUS FOR PROVIDING RETIREMENT INCOME BENEFITS."

2

Jury Verdict (docket no. 278) was entered accordingly on Lincoln's damages claim, with interest to accrue at the legal rate from February 13, 2009, but that Judgment stated that it did not resolve all of the claims or counterclaims at issue in this case. On February 23, 2009, the court entered a written Order (docket no. 279) reiterating the court's oral extension of the parties' deadlines for post-trial motions on the jury's verdict to and including March 30, 2009, and clarifying that the Judgment On Jury Verdict (docket no. 278) was not, and was not intended to be, an appealable judgment on less than all of the claims within the meaning of Rule 54(b).

This matter comes before the court pursuant to the following post-trial motions: (1) Lincoln's March 4, 2009, Motion For Permanent Injunction And Alternative Relief (docket no. 280); (2) Lincoln's March 4, 2009, Motion For Prejudgment Interest (docket no. 281); and (3) Transamerica's March 30, 2009, Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, Motion For New Trial Or Motion To Alter Or Amend Judgment (docket no. 299). Pursuant to orders setting deadlines for responses to these motions, Transamerica filed a Brief In Support Of Resistance To Lincoln's Motion For Prejudgment Interest (docket no. 300) and a Brief In Support Of Resistance To Lincoln's Motion For Permanent Injunction And Alternative Relief (docket no. 301) on April 6, 2009, and Lincoln filed a Reply In Support Of Its Motion For Permanent Injunction And Alternative Relief (docket no. 304) on April 21, 2009, and a Reply In Support Of Its Motion For Prejudgment Interest (docket no. 305) on April 22, 2009. On May 20, 2009, the court entered an Order (docket no. 309) setting a deadline of May 28, 2009, for Lincoln to submit a proposed permanent injunction order and a deadline of June 4, 2009, for Transamerica to file any comments on the language of Lincoln's proposed

3

order.[2]  Lincoln filed its Proposed Permanent Injunction (docket no. 310) on May 28, 2009, and Transamerica filed its Comments on the proposed order (docket no. 312) on June 4, 2009.  On May 11, 2009, Transamerica filed its Unresisted Motion (1) To Withdraw Motion To Alter Or Amend Judgment And (2) To Revise Brief In Support Of Resistance To Lincoln's Motion For Prejudgment Interest (docket no. 306), identifying specific parts of the pertinent motions and briefs that it was withdrawing.  The court granted that motion by Order (docket no. 307) dated May 13, 2009.  Lincoln then timely filed its Resistance To Transamerica's "Renewed" Motion For Judgment As A Matter Of Law Or, In The Alternative, Motion For New Trial (docket no. 308) on May 14, 2009, and Transamerica timely filed its Reply To Lincoln's Resistance To Transamerica's Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, Motion For New Trial (docket no. 311) on June 4, 2009.

Although the parties requested oral arguments on some of these motions, the court has not found oral arguments on any of the post-trial motions to be necessary.  Therefore, the post-trial motions are now deemed fully submitted.

## II.  LEGAL ANALYSIS

Logically, the court should first resolve Transamerica's post-trial motion for judgment as a matter of law (JMOL) and, in the alternative, new trial.  If Transamerica's motion is granted, in whole or in part, then there is no reason for the court to determine whether or not Lincoln is entitled to either prejudgment interest or a permanent injunction.

---

[2]This Order made clear that it was not any indication of whether or not the court had determined that a permanent injunction is appropriate, nor was it an invitation to either party for further briefing of any issues pertaining to the merits of Lincoln's request for a permanent injunction.

4

### A. Transamerica's Renewed Motion For Judgment As A Matter Of Law

### 1. Arguments of the parties

Transamerica explains that it is "renewing" its motion for JMOL pursuant to Rule 50 of the Federal Rules of Civil Procedure that it does not infringe the asserted claims of the '201 patent; that it is not liable for any damages; and that all asserted claims are invalid under 35 U.S.C. §§ 103(a) ("obviousness") and 112 ("inadequate written description"). More specifically, Transamerica seeks JMOL of non-infringement, first, on purely legal grounds, arguing that Lincoln's unfounded assertions of future hypothetical infringement are legally insufficient to carry the burden of proving infringement. Transamerica also seeks JMOL of non-infringement on insufficiency of the evidence to support a finding of infringement, arguing that Lincoln did not introduce any evidence to prove that Transamerica performed all of the steps of the claimed computerized method to administer variable annuity riders; that the undisputed evidence demonstrated that Transamerica has not performed and could not perform step (e) of claim **35**, because its Vantage computer system has not and would not make any scheduled payments "even if" a rider's account value might become exhausted; and that Lincoln presented no evidence that Transamerica performed or is "necessarily required or obligated" to perform step (e) of claim **35** before the '201 patent expires.

Transamerica also argues that the jury's damages award is excessive, because the damages awarded were both improper and insufficiently supported by the evidence. Transamerica contends that the damages award must be reduced, because it did not perform step (b) of claim **35** during the term of the '201 patent for 46% of the riders (representing 57% of the damages awarded), because those riders were issued, and the Maximum Annual Withdrawal Amount ("MAWA") on which the "initial scheduled payment" for those riders was based was determined, before the '201 patent issued on

5

August 8, 2006. Transamerica also contends that the damages award must be reduced, because Transamerica has not performed and is not "necessarily required or obligated" to perform step (c) of the method claimed in claim **35** for 79% of the riders, where Transamerica has not made, and is not required or obligated to make, a single scheduled payment under those riders.

As to its "invalidity" defenses, Transamerica argues that, when the undisputed evidence is weighed and, in particular, when the May 5, 1998, Manulife SEC filing (DTX 1388) ("Manulife") reference is considered, in light of governing Federal Circuit law, the claims are invalid as "obvious." Transamerica also argues that the "written description" of the '201 patent is inadequate as a matter of law, because step (a) of the claimed method only requires storing "at least one" of certain variables, but the claimed method cannot be performed if only one of the listed variables is stored.

Lincoln counters that Transamerica's arguments are contrary to law and ignore substantial evidence establishing Lincoln's infringement claims as to all steps of the claimed method. Lincoln points out that Transamerica's arguments are based on case law and theories of infringement that this court has already rejected; are contrary to this court's jury instructions on infringement; and improperly ignore or distort substantial evidence of infringement. Because there is substantial evidence supporting the infringement verdict, Lincoln also argues that there is no basis to adjust the jury's damages award. Lincoln also argues that Transamerica's motion for JMOL on its "obviousness" and "inadequate written description" invalidity defenses must be denied, because Transamerica failed to move for JMOL on these grounds during trial. Furthermore, Lincoln contends that substantial evidence supports the jury's rejection of these invalidity defenses.

In reply, Transamerica argues the the inescapable conclusion from the law and facts is that it never performed step (e) and is not necessarily required to perform step (e) for

any rider; that for 46% of the riders, it performed step (b) before the patent term and will not be required to perform that step again; and that it has not and will not perform step (c) for 79% of the riders at any time. Thus, Transamerica contends that Lincoln failed to prove that Transamerica performed all of the steps of claim **35** for any rider.

Transamerica also argues in its reply that it has not waived a post-verdict motion for JMOL as to invalidity, because Transamerica stated that it was moving for JMOL on invalidity defenses, and the bases for those defenses were detailed in its closing argument. Given the procedural posture of the case, Transamerica argues that Lincoln was not prejudiced in any way by uncertainty about the bases for the invalidity portion of Transamerica's JMOL motion. Transamerica also argues that claim **35** is "obvious" as a matter of law, because Lincoln's arguments to the contrary mischaracterize the evidence. Transamerica also argues that claim **35** lacks an "adequate written description," because Lincoln's construction of the "storing" requirement is contrary to the *Markman* order.

Thus, Transamerica contends that it is entitled to JMOL on the issues presented.

### 2. *Applicable standards*

Transamerica's Renewed Motion For Judgment As A Matter Of Law is pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. Rule 50 of the Federal Rules of Civil Procedure, as most recently revised, provides for entry of judgment as a matter of law during trial pursuant to subsection (a) as follows:

> **(a) Judgment as a Matter of Law.**
>
> > **(1)** **In General.** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

**(A)** resolve the issue against the party; and

**(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

**(2)** **Motion.** A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

Fed. R. Civ. P. 50(a).

Rule 50(b) provides for renewal of such a motion for JMOL after trial, as follows:

**(b) Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

**(1)** allow judgment on the verdict, if the jury returned a verdict;

**(2)** order a new trial; or

**(3)** direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

8

Even in a patent case, the Federal Circuit Court of Appeals reviews a ruling on a motion for JMOL pursuant to Rule 50 applying the law of the regional circuit, here, the Eighth Circuit. *See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1370 (Fed. Cir. 2009). As the Eighth Circuit Court of Appeals has explained, "'By definition, a Rule 50(b) motion is a renewal of a prior Rule 50(a) motion made at the close of the evidence and as such is limited to those issues raised in the previous motion.'" *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 984-85 (8th Cir. 2008) (quoting *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 794 (8th Cir. 2003), in turn citing Rule 50(b)); *see also Conseco Fin. Servicing Corp. v. North Am. Mortgage, Co.*, 381 F.3d 811, 821 (8th Cir. 2004) ("The grounds for the renewed motion under Rule 50(b) are limited to those asserted in the earlier Rule 50(a) motion."). Thus, if the Rule 50(a) motion adequately states the grounds for judgment as a matter of law, the Rule 50(b) motion is also sufficient to renew those grounds, even if it does not itself reiterate the grounds with particularity. *Id.* On the other hand, where a Rule 50(a) motion cannot be read to encompass the legal theories underlying the moving party's Rule 50(b) motion, the moving party forfeits the grounds raised for the first time in its Rule 50(b) motion. *Conseco*, 381 F.3d at 822 & n.7.[3]

---

[3]Similarly, when a party fails to renew a Rule 50(a) motion by filing a Rule 50(b) motion after trial, "there [is] no basis for review [of the party's] sufficiency of the evidence challenge in the Court of Appeals." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 407 (2006); *see also EEOC v. Southwestern Bell Tel., L.P.*, 550 F.3d 704, 708-11 (8th Cir. 2008) (explaining the import of *Unitherm* and explaining, further, that Rule 50 sets out a carefully stated procedure and is designed to end confusion about motions for judgments notwithstanding verdicts). In this case, however, Transamerica did renew its Rule 50(a) motion, or attempted to do so, by filing a Rule 50(b) motion after trial.

On a Rule 50(b) motion, both the district court and the appellate court apply the same standard: The court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *Hinz*, 538 F.3d at 984. Thus,

> "If the evidence viewed according to this standard would permit reasonable jurors to differ in the conclusions they draw, judgment as a matter of law cannot be granted." [*Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir. 2007)]], *quoting Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co.*, 477 F.3d 583, 593 (8th Cir. 2007). However, "when the record contains no proof beyond speculation to support the verdict, then judgment as a matter of law is appropriate." *Liberty Mut.*, 486 F.3d at 422; Fed. R. Civ. P. 50(a)(1).

*Hinz*, 538 F.3d at 984.[4]

### 3.    *Analysis*

#### a.    *Infringement and damages*

The court concludes that Transamerica is not entitled to JMOL on Lincoln's infringement and damages claims. First, the court finds that Transamerica simply reasserts and repackages the same legal theories that the court has already rejected, so that the court need not explain in detail here why Lincoln's infringement and damages theories are not legally insufficient. Second, although it is not necessarily a "slam dunk," the court *does not* find Lincoln's evidence legally insufficient as to infringement of any step of the claimed method and *does* find that Transamerica's arguments about sufficiency of the evidence are based, in large part, on distortions of both the evidence and this court's

---

[4]In *Hinz*, the Eighth Circuit Court of Appeals explained, further, that "[i]n a diversity case, this court applies the substantive law of the forum state to determine if this standard was satisfied." *Hinz*, 538 F.3d at 984 (citing *Warren v. State Farm Fire & Cas. Co.*, 531 F.3d 693, 698 (8th Cir. 2008)). This patent case, however, is not a diversity case.

instructions. The classic example of Transamerica's reiterated distortions in this case is its attempt, yet again, to assert that step (e) of claim **35** requires that the account value be exhausted, when the court repeatedly construed the language at issue to identify only the most extreme circumstance in which the guaranteed minimum payment under the pertinent plan would still be made. Ultimately, the court concludes that, at worst, the evidence is such that, viewed in the light most favorable to Lincoln, the non-movant, and drawing all reasonable inferences in Lincoln's favor, *see Hinz*, 538 F.3d at 984, the evidence would "'permit reasonable jurors to differ in the conclusions they draw,'" so that "'judgment as a matter of law cannot be granted.'" *Id.* (quoting *Liberty Mut. Fire Ins. Co.*, 486 F.3d at 422, in turn quoting *Matrix Group Ltd., Inc.*, 477 F.3d at 593). Contrary to Transamerica's contentions, this is not a case in which "'the record contains no proof beyond speculation to support the verdict,'" such that "'judgment as a matter of law is appropriate.'" *Id.* (again quoting Liberty *Mut.,* 486 F.3d at 422). Those portions of Transamerica's motion for JMOL seeking judgment on Lincoln's claims of infringement and damages will be denied.

### b. *Invalidity*

*i.* ***Waiver***. As Lincoln contends, the court finds that Transamerica has waived or forfeited any post-trial motion for JMOL on its "obviousness" and "inadequate written description" invalidity defenses. Lincoln is correct that, after a recess at the end of trial on day nine to allow the parties to prepare a Rule 50 motion and response, Transamerica initially moved for JMOL on the basis that a jury would not have a legally sufficient evidentiary basis to find for Lincoln on five grounds: (1) that Lincoln had failed to prove that Transamerica performed or necessarily will perform step (e) of claim **35** using a computerized method; (2) that Lincoln had failed to prove that Transamerica performed any act of infringement under 35 U.S.C. § 271, in that there was no proof that, for any

11

individual rider, Transamerica has performed all the steps or, indeed, any of the steps of the claimed method; (3) that Lincoln had failed to prove that Transamerica will necessarily be required or obligated to perform any act of infringement; (4) that Transamerica had affirmatively proved that its administration of at least the majority of the riders will not infringe the '201 patent; and (5) that the evidence showed that Transamerica's riders cannot infringe the '201 patent, because Transamerica uses the total withdrawal base, not the required account value, to determine the amount of withdrawals. Trial Transcript, Vol. 9, 1596-98. Transamerica represented that it would file a brief later. *See id*. at 1598. Transamerica also asserted that "there will also be some invalidity arguments as well" in the brief. *Id*. at 1599. Transamerica never filed such a brief in support of its Rule 50(a) motion, however.

After Transamerica moved for JMOL pursuant to Rule 50(a) on the grounds stated above, Lincoln "move[d] for a judgment as a matter of law under Rule 50 on the affirmative defenses of Transamerica." *Id*. at 1600. Lincoln clarified that the basis for its Rule 50(a) motion was that "there's absolutely no evidence tendered in support of [the written description] defense at trial that a reasonable juror could rule in favor [of Transamerica] on that issue as there was an absence of evidence." *Id*. Lincoln also argued for JMOL on Transamerica's "anticipation" defense, "as no reasonable juror could rule in favor of Transamerica on that issue with respect to the two alleged anticipatory references, Equitable and Citicorp." *Id*. Lincoln also sought JMOL on Transamerica's "obviousness" defense "for essentially the same reasons," that is, "[p]rior art references that were identified by Transamerica simply do not alone or in combination with any other reference or the state of mind of one of skill in the art [sic] all of the limitations of the claims, of the asserted claims, of the '201 patent, and indeed the admissions of Transamerica's counsel preclude such a finding." *Id*. at 1601. Lincoln also moved for

12

JMOL on the issues of "priority date" and "non-infringement defenses . . . with respect to step 35(e)." *Id.* On the record on trial day nine, Transamerica offered no response to Lincoln's motion for JMOL on invalidity defenses nor did Transamerica offer any countermotion for JMOL on those defenses that might possibly have saved the invalidity defenses for consideration on a post-trial motion for JMOL.

The court does not believe that either Transamerica's passing mention that "there will also be some invalidity arguments as well" in the brief in support of a Rule 50(a) motion, *id.* at 1599, or Transamerica's contention in its reply that its closing argument adequately identified the bases for its motion for JMOL on invalidity issues, is sufficient to preserve any "invalidity" issues for post-trial consideration on a Rule 50(b) motion. No brief in support of the Rule 50(a) motion that might have clarified the grounds for JMOL on "invalidity" issues was ever filed, and Transamerica has cited no authority holding that a closing argument substitutes for an adequate statement of grounds for a Rule 50(a) motion. Because Transamerica's Rule 50(a) motion for JMOL at the end of the evidence cannot be read to encompass any legal theory at all in support of JMOL on its invalidity defenses, Transamerica waived or forfeited a post-trial Rule 50(b) motion on those defenses. *See Conseco*, 381 F.3d at 822 & n.7 (where a Rule 50(a) motion cannot be read to encompass the legal theories underlying the moving party's Rule 50(b) motion, the moving party forfeits the ground raised for the first time in its Rule 50(b) motion).

*ii.* *Merits*. In the alternative, the court will consider Transamerica's Rule 50(b) motion as to "invalidity" issues on the merits—which means accepting, at least for the sake of such an alternative analysis, that mere mention of "invalidity arguments" as the subject of the Rule 50(a) motion or Transamerica's closing argument on invalidity issues was somehow sufficient to preserve the "invalidity" arguments now raised in Transamerica's Rule 50(b) motion, at least in the context of this litigation. Even considering the merits

13

of Transamerica's "invalidity" arguments, however, the court finds that JMOL is not appropriate.

As to "obviousness," Transamerica asserts that, when the undisputed evidence is weighed and, in particular, when the May 5, 1998, Manulife SEC filing (DTX 1388) ("Manulife") reference is considered, in light of governing Federal Circuit law, the claims are invalid as "obvious." Lincoln asserts that Transamerica's argument for JMOL on this defense improperly relies on the "weight of the evidence," but evidence cannot be weighed on a motion for JMOL. Lincoln also argues that Transamerica ignores virtually all of the admissions of its experts concerning the scope of the prior art, ignores any element-by-element comparison of the prior art to claim **35** of the '201 patent as construed by the court, ignores the lack of any impetus to remove the "holding period" distinction between the Manulife reference and the '201 patent, and ignores secondary considerations of non-obviousness offered by Lincoln, so that Transamerica plainly did not prove "obviousness" by clear and convincing evidence.

The court agrees with Lincoln. Again, the court concludes that, at worst, the evidence is such that, viewed in the light most favorable to Lincoln, the non-movant, and drawing all reasonable inferences in Lincoln's favor, *see Hinz*, 538 F.3d at 984, the evidence would "'permit reasonable jurors to differ in the conclusions they draw'" as to "obviousness" of the '201 patent, so that "'judgment as a matter of law cannot be granted.'" *Id.* (quoting *Liberty Mut. Fire Ins. Co.*, 486 F.3d at 422, in turn quoting *Matrix Group Ltd., Inc.*, 477 F.3d at 593). Contrary to Transamerica's contentions, this is not a case in which "'the record contains no proof beyond speculation to support the verdict,'" such that "'judgment as a matter of law is appropriate.'" *Id.* (again quoting *Liberty Mut.*, 486 F.3d at 422). Certainly, Transamerica fell well short of proving "obviousness" by clear and convincing evidence. *See Pfizer, Inc. v. Apotex, Inc.*, 480

F.3d 1348, 1361 (Fed. Cir. 2007) (a party seeking to invalidate a patent based on "obviousness" must demonstrate "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so"). Thus, in the alternative to the court's finding that "invalidity" issues were waived for purpose of a post-trial motion for JMOL, that part of Transamerica's motion for JMOL seeking judgment on Transamerica's defense of "obviousness" will also be denied on the merits.

Transamerica also argues that the "written description" of the '201 patent is inadequate as a matter of law, because step (a) of the claimed method only requires storing "at least one" of certain variables, but the claimed method cannot be performed if only one of the listed variables is stored. Lincoln argues that this part of Transamerica's JMOL motion should be denied, because Transamerica chose not to call any expert or other witness to testify about the written description requirement, and thus could not meet its clear and convincing evidentiary burden, and because Transamerica's argument conflicts with the inventors' trial testimony and the written description of the '201 Patent, which, *inter alia*, indicated that the claimed method would function properly if only account value is stored in step (a).

Once again, the court finds that, at worst, the evidence is such that, viewed in the light most favorable to Lincoln, the non-movant, and drawing all reasonable inferences in Lincoln's favor, *see Hinz*, 538 F.3d at 984, the evidence would "'permit reasonable jurors to differ in the conclusions they draw'" as to adequacy of the "written description," so that "'judgment as a matter of law cannot be granted.'" *Id.* (quoting *Liberty Mut. Fire Ins. Co.*, 486 F.3d at 422, in turn quoting *Matrix Group Ltd., Inc.*, 477 F.3d at 593). Contrary to Transamerica's contentions, this is not a case in which "'the record contains

15

no proof beyond speculation to support the verdict,'" such that "'judgment as a matter of law is appropriate.'" *Id.* (again quoting *Liberty Mut.*, 486 F.3d at 422). Certainly, Transamerica fell well short of proving its "inadequate written description" defense by clear and convincing evidence. *See Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1364 (Fed. Cir. 2003) ("The burden at trial was on [the accused infringer] to establish by clear and convincing evidence that the written description requirement was not met, in light of the presumption of validity; whether the written description requirement has been satisfied is a question of fact that is reviewed for substantial evidence when resolved by a jury."). Thus, in the alternative to the court's finding that "invalidity" issues were waived for purpose of a post-trial motion for JMOL, that part of Transamerica's motion for JMOL seeking judgment on Transamerica's defense of "inadequate written description" will also be denied on the merits.

### B. Transamerica's Alternative Motion For New Trial

In its post-trial motion for new trial, in the alternative to its motion for JMOL, Transamerica argues that it is entitled to a new trial pursuant to Rule 59. Lincoln resists the alternative motion for new trial, as well.

#### 1. Arguments of the parties

Other than citing the applicable standards, Transamerica makes no separate argument for a new trial on any issue. Apparently, Transamerica's contention is that the jury's verdict on each of the issues raised in its post-trial motions was against the clear weight of the evidence and that a new trial must be granted to avoid a miscarriage of justice. Indeed, Lincoln points out that Transamerica has made no separate argument for new trial on any issue and contends that Transamerica has simply "blurred" its Rule 50 and 59 arguments. Lincoln also contends that Transamerica cannot show that a new trial

16

is necessary to avoid a manifest miscarriage of justice. In reply, Transamerica argues that it adequately moved for new trial, because it explicitly stated in its Renewed Motion that it was moving for new trial pursuant to Rule 59(a), in the alternative, and reiterated that statement in its brief.

### 2. *Applicable standards*

Rule 50 expressly contemplates a motion for new trial as a companion or alternative to a post-trial motion for JMOL. *See* FED. R. CIV. P. 50(b) (a party that moved for JMOL pursuant to Rule 50(a) during trial "may file [post-trial] a renewed motion for judgment as a matter of law and may include an alternative or joint request for new trial under Rule 59," and in ruling on the renewed motion, the court may, *inter alia*, "order a new trial"); FED. R. CIV. P. 50(c) (if the court grants a renewed motion for JMOL, it may also conditionally rule on a motion for new trial, if the JMOL ruling is reversed or vacated); *see also* FED. R. CIV. P. 50(d) & (e). Rule 59 provides for a new trial "on all or some of the issues—and to any party" after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a).[5] Even in a patent case, on a post-trial motion for new trial, as on a motion for JMOL, the court applies the law of the regional circuit, in this case, the Eighth Circuit. *See Revolution Eyewear, Inc.*, 563 F.3d at 1370. The Eighth Circuit Court of Appeals has explained that, on a motion for a new trial pursuant to Rule 59, "the key question [is] whether a new trial is necessary to prevent a miscarriage of justice." *Maxfield v. Cintas Corp., No. 2*, 563 F.3d 691, 694 (8th Cir. 2009) (citing *Harrison v. Purdy Bros. Trucking*

---

[5]The court may, after giving notice and an opportunity to be heard to the parties, grant a new trial on its own initiative on an issue not raised in a party's new trial motion. FED. R. CIV. P. 59(d). The court finds no basis for such a *sua sponte* consideration of a new trial on any issue in this case, however.

*Co.*, 312 F.3d 346, 351 (8th Cir. 2002)). "A new trial should be granted only if the evidence weighs heavily against the verdict." *Id.* (citing *United States v. Rodriguez*, 812 F.2d 414, 417 (8th Cir. 1987)).

### 3.    *Analysis*

First, the court finds that Transamerica's initial arguments for a new trial are confusing as to what, if any, issues other than "obviousness" are supposedly encompassed by the motion and wholly lacking in specificity as to the grounds for a new trial as to any issue, including "obviousness." Transamerica asserted inconsistently that it should be granted a new trial only on its "obviousness" defense, and then that it should be granted a new trial "on any remaining issues," if the court does not direct entry of JMOL on those issues. *Compare* Transamerica's Brief In Support Of Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, Motion For New Trial (docket no. 299-2) at 3 ("Since JMOL on non-infringement is based on purely legal grounds and/or undisputed evidence, there is no need for a new trial on those issues. The same is true for the 'written description' requirement invalidity issue. If the Court does not grant JMOL on invalidity based on obviousness, Transamerica moves, in the alternative, for the Court to grant a new trial on that issue."); *id.* at 50 (again expressly seeking new trial only on the "obviousness" issue); *with id.* at 5 ("Transamerica will demonstrate that it is entitled to JMOL on several issues. If the Court does not direct an entry of JMOL on all those issues, it should order a new trial on any remaining issues."). Transamerica does not attempt to clarify the issues and grounds on which it seeks a new trial in its reply brief, but only asserts that it really did move for a new trial, in the alternative, as part of its post-trial motion. Although the court was at considerable pains before and during trial to head off Transamerica's many attempts to have things both ways—such as Transamerica's many attempts to present issues, evidence, and arguments that the court had already expressly

18

barred or rejected—in this instance, the court will consider Transamerica's request for a new trial as relating to all of the issues raised in its post-trial motion, if only for the sake of complete resolution of any issues in the post-trial motions

Second, as to the merits of Transamerica's motion for new trial, the court finds no basis for a new trial on any issue under the applicable standards. As to "the key question," the court does not find that "a new trial is necessary to prevent a miscarriage of justice." *Maxfield*, 563 F.3d at 694. While the evidence on various issues supporting Lincoln's claims and contentions may not be overwhelming, this is not a case in which the evidence on any issue "weighs heavily against the verdict." *Id.* Therefore, Transamerica's alternative motion for a new trial will be denied as to any and all issues that such a motion was meant to encompass.

## C. Lincoln's Post-Trial Motions

As the court noted at the outset of this ruling, Lincoln has also filed two post-trial motions: its March 4, 2009, Motion For Permanent Injunction And Alternative Relief (docket no. 280), and its March 4, 2009, Motion For Prejudgment Interest (docket no. 281). These motions have also been fully briefed.

### 1. The motion for permanent injunction

In the first of its post-trial motions, Lincoln requests that the court enter a permanent injunction enjoining Transamerica from selling and continuing to use its infringing administrative method with any annuity product with the Guaranteed Principal Solution, 5 for Life, 5 for Life with Growth, Income Select for Life, and Retirement Income Choice riders, or any riders that lack colorable distinctions from these riders, for the duration of the '201 Patent. In the alternative, Lincoln requests that the court impose

19

an ongoing royalty at the rate of 0.18% (18 base points) applied annually to Transamerica's aggregate account value associated with the infringing method.

### a. Arguments of the parties

Lincoln recognizes that the Supreme Court has held that a party seeking a permanent injunction pursuant to 35 U.S.C. § 283 to prevent violation of patent rights must satisfy the traditional four-factor test for injunctive relief, which considers irreparable harm to the plaintiff, inadequacy of remedies at law, the balance of the hardships between the parties, and the public interest in a permanent injunction. Here, Lincoln contends that its harm is irreparable, because of the relationship between Lincoln and Transamerica as direct competitors and the nature of their business, which is not merely a "one-time sale" market, but a market in which sale of an annuity "locks up" a customer for years, while the seller continues to make money from the sale. Lincoln argues that courts have routinely found monetary damages inadequate as to future infringement, and that Transamerica's ongoing infringement interferes with Lincoln's statutory patent rights to exclude Transamerica from practicing the invention of the '201 patent in a way that cannot be fully compensated by monetary damages, at least where they are direct competitors. Lincoln argues that a permanent injunction will cause no hardship to Transamerica, which has asserted that it has non-infringing alternatives available. Lincoln also asserts that the public interest favors enforcing valid patents with injunctive relief.

In the alternative, Lincoln contends that it is entitled to an ongoing royalty for continued infringement at the rate of 0.18% (18 base points). Although Lincoln acknowledges that this rate is higher than the rate determined by the jury (11 base points), Lincoln contends that this rate is reasonable, because of the changed economic circumstances after the jury's determination that the '201 patent is infringed and not invalid.

Transamerica argues, first, that Lincoln is not entitled to injunctive or other equitable relief as to riders for which the jury has already awarded damages. This is so, Transamerica argues, because there can only be one remedy for one act of infringement, and an infringing act cannot occur simultaneously in the past and the future. Transamerica describes this principle as "patent exhaustion." Transamerica responds to Lincoln's arguments concerning the four-factor test by asserting that injunctive relief is not appropriate, because the '201 patent is a "business method" patent, not a patent on riders, and because Lincoln has indicated a willingness to license the patent, undercutting Lincoln's claims of irreparable harm. Transamerica also argues that a permanent injunction is not necessary, because Lincoln has already been fully compensated for any infringement by the money damages award. Transamerica also asserts that the balance of hardships weighs against an injunction, because Lincoln's harm is illusory, where it has already been fully compensated, but the disruption to Transamerica's business would be great. Finally, Transamerica argues that a permanent injunction will disserve the public interest, where the patentability and validity of the '201 patent are suspect, and Lincoln's arguments ignore the interests of those who are, or wish to become, owners of Transamerica's variable annuity riders. As a broad attack, Transamerica also argues that Lincoln has failed to comply with Rule 65, because Lincoln has not identified specific terms or reasonable detail for any injunction.

As to an ongoing royalty, Transamerica argues that it is an open question whether district courts even have the power to award an ongoing royalty, *i.e.*, a "compulsory license," as equitable relief. Transamerica also argues that there is no basis to "almost double the 11 bps awarded by the jury," by imposing a royalty of 18 base points for future infringement. Transamerica's Brief In Support Of Resistance To Lincoln's Motion For

Permanent Injunction And Alternative Relief (docket no. 301) at 17.[6] Transamerica argues that the realities of the situation are that the value of the '201 patent has changed, and not in such a way as to increase the appropriate royalty rate above the rate determined by the jury, because the riders and any methods for administering them are worth less after August 8, 2006, than they were at the date of a hypothetical negotiation, because of the recent severe economic downturn. Similarly, Transamerica argues that, in light of the decision of the Federal Circuit Court of Appeals in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (*en banc*), Lincoln cannot realistically hope to prevent any competitors from practicing the "business methods" of the '201 patent.[7] Transamerica also argues that the '201 patent is a "submarine patent," actually issued *after* Transamerica had independently developed its methods of administration of its riders. Transamerica argues that the 18 "base points" royalty rate asserted by Lincoln is also supported by nothing but conjecture by one of Lincoln's experts, and the jury rejected that expert's testimony when it determined a royalty rate of 11 "base points."

In reply, Lincoln argues that it was not fully compensated for future or continuing infringement. First, Lincoln points out that the jury's damages award was intended to compensate Lincoln only for past damages. Second, Lincoln asserts that Transamerica will continue to derive new income on both existing riders and newly purchased riders for which it will continue to practice the patented method. As to application of the four-factor test, Lincoln argues that there is no dispute that Lincoln and Transamerica are direct

---

[6] The court cannot help but observe that Transamerica's "voodoo math," in which 18 is "almost double" 11, is one of several examples of Transamerica's overreaching arguments in this case.

[7] The court notes that the Supreme Court granted a petition for writ of certiorari in *Bilski v. Doll*, No. 08-5274, on June 1, 2009.

22

competitors in the variable annuity market or that that market is a very competitive one, so that it will be irreparably harmed in the absence of a permanent injunction. Lincoln also argues that acceptance of or willingness to grant a royalty for past infringement does not disqualify it from a remedy for future infringement. Lincoln also argues that Transamerica's "hardship" and "public interest" arguments are disingenuous, because Lincoln did not lie in wait with a "submarine" patent, but advised Transamerica of the pending patent application, and suffered Transamerica's ambush with a declaratory judgment lawsuit the very day the patent issued. Lincoln also argues that Transamerica should not be heard to complain of disastrous consequences of a permanent injunction on the public, meaning its customers, when Transamerica has professed that it could institute non-infringing alternatives. Lincoln also argues that its proposed injunction meets the specificity requirements of Rule 65.

As to the reasonable royalty alternative, Lincoln argues in its reply that a rider with a guaranteed minimum withdrawal benefit would be even more attractive to customers after the steep decline in the stock market. Lincoln also contends that Transamerica's continued use of the infringing method would now be willful. Thus, Lincoln argues that its bargaining position for a higher royalty rate post-verdict is actually enhanced. Lincoln also contends that Transamerica simply overstates the extent of any doubt about the availability of equitable relief other than a permanent injunction.

> **b.** *Analysis*

*i.* ***The four-factor equitable test***. The Patent Act expressly provides that "[t]he several courts . . . may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. As the Supreme Court recently explained in *MercExchange, L.L.C., v. eBay, Inc.*, 547 U.S. 388 (2006),

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. See, *e.g., Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311-313, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987). The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion. See, *e.g., Romero-Barcelo,* 456 U.S., at 320, 102 S. Ct. 1798.

*These familiar principles apply with equal force to disputes arising under the Patent Act.* As this Court has long recognized, "a major departure from the long tradition of equity practice should not be lightly implied." *Ibid.;* see also *Amoco, supra,* at 542, 107 S. Ct. 1396. Nothing in the Patent Act indicates that Congress intended such a departure. To the contrary, the Patent Act expressly provides that injunctions "may" issue "in accordance with the principles of equity." 35 U.S.C. § 283.

*eBay, Inc.*, 547 U.S. at 391-92 (emphasis added). In short, the Court held, "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* at 394.

      ***ii.*** ***Irrelevant considerations.*** In a part of the decision below in *eBay* left undisturbed by the Supreme Court, the Federal Circuit Court of Appeals observed, "A

24

general concern regarding business-method patents, however, is not the type of important public need that justifies the unusual step of denying injunctive relief." *MercExchange, L.L.C., v. eBay, Inc.*, 401 F.3d 1323, 1339 (Fed. Cir. 2005), *vacated and remanded on other grounds*, 547 U.S. 388 (2006) (vacating and remanding, because neither of the courts below fairly applied the traditional equitable principles in deciding whether or not to issue a permanent injunction in a patent case). Indeed, the Supreme Court expressly took no position on whether a permanent injunction should issue in that "business method" patent case or any other patent case, *see MercExchange, L.L.C., v. eBay, Inc.*, 547 U.S. 388, 394 (2006). The Court also rejected other "categorical" rules on when permanent injunctions can and cannot be issued in patent cases. *Id.* at 393-94 (rejecting, *inter alia*, a "'general rule,' unique to patent disputes, 'that a permanent injunction will issue once infringement and validity have been adjudged,'" and suggestions that "injunctions should be denied only in the 'unusual' case, under 'exceptional circumstances' and 'in rare instances . . . to protect the public interest'" (quoting the court below, 401 F.3d at 1338-39)). Thus, the Supreme Court's decision plainly cannot be read to bar permanent injunctions, on categorical grounds, in "business method" patent cases. Transamerica's argument that a permanent injunction should be denied in this case, because the '201 patent is a "business method" patent, is a non-starter.

The Court also expressly rejected a "categorical" rule, on which Transamerica also relies, that a patent holder who has been willing to license its patent should be denied permanent injunctive relief for infringement, because such a rule "cannot be squared with the principles of equity adopted by Congress." *Id.* at 393. Thus, Transamerica's second categorical ground for denying a permanent injunction is also a non-starter.

Next, Transamerica's interpretation of the "patent exhaustion" doctrine as barring any further remedy for past or future infringement, where a patentee has received one

remedy for an act of infringement is, to say the least, peculiar. As the Supreme Court explained in *Quanta Computer, Inc. v. LG Electronics, Inc.*, 128 S. Ct. 2109 (2008), the case cited by Transamerica in support of its "patent exhaustion" argument, the doctrine "provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc.*, 128 S. Ct. at 2115. Thus, post-sale restrictions cannot be imposed. *Id. Quanta Computer* says nothing about application of the "patent exhaustion" doctrine, or anything like it, as a bar on further equitable remedies after a patentee has received damages for past infringement. Such a doctrine would be contrary to the plain language of 35 U.S.C. § 283, which expressly authorizes equitable remedies.

Transamerica's related "double recovery" argument is also ill-founded. Transamerica cites *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1380 (Fed. Cir. 2008), as standing for the proposition that the court should not enjoin or award an ongoing royalty for the future administration of the very same riders for which damages have already been awarded, because to do so would allow "double recovery" for the same infringement. The first problem with Tranamerica's argument is that, unlike the situation in *Innogenetics*, this court did *not* allow the jury to award damages, in the form of a reasonably royalty, for any period beyond the date of judgment. *See Innogenetics*, 512 F.3d at 1380 ("Nowhere did the jury instructions state the reasonable royalty would be limited to a period from the start of infringement to the date of judgment. In fact, the jury was told that a reasonably royalty could 'include both an up-front payment and an *ongoing* royalty payment" (emphasis in the original), and the court found that the jury had, in fact, awarded both a "market entry fee" and "an ongoing royalty payment"). Here, the parties were clearly advised that the case would be submitted to the jury on past infringement, leaving "ongoing" infringement as a question for the court, *see* Court's Letters (docket no. 277), Letter of Jan. 26, 2009, at 2; *see also* Jury Instructions (docket no. 277), No. 7, at

26

18 (explaining that possible future actions would not undo past or present infringement), and Lincoln's evidence of damages for infringement was not to the contrary.

Transamerica's "double recovery" argument is part and parcel with Transamerica's argument that each rider can only infringe the '201 patent once. Transamerica's argument might make some sense if the nature of Transamerica's infringing act was the *sale* of a specific rider, as such infringement could be a discrete act (or thousands of discrete acts). However, here, the nature of Transamerica's infringement is *use of a method* to administer riders.[8] Nothing in the court's construction of the patent claim terms requires a reading of the claimed method of the '201 patent as amenable only to infringement once for each rider. Rather, consonant with the court's constructions, the claimed method could be infringed, as to all steps, every time a scheduled payment is due on any rider administered using the claimed method. Thus, continued administration of riders, *i.e.*, ongoing infringement, has not been fully compensated, even if damages for *past* administration of those riders, *i.e.*, past infringement, have already been awarded.

---

[8]As the court explained in the Jury Instructions,

> Merely selling an annuity product or rider that requires Transamerica to practice only some of the steps of a claimed method as a service to the buyer is not enough; instead, infringement must be based on Transamerica's practice of each and every step of the claimed method *for* the variable annuity contracts that Transamerica has sold. On the other hand, evidence of the sale of the riders or annuities in question is evidence of infringement to the extent that the sale of the riders or annuities *necessarily requires* or *obligates* Transamerica to practice each and every step of the claimed invention.

Jury Instructions (docket no. 277), No. 7, at 15 (emphasis in the original).

***iii.    Application of relevant factors***.   Therefore, the court turns to what is relevant to the question of whether or not a permanent injunction should issue, the "well-established principles of equity," framed as a "four-factor test" of irreparable injury, inadequacy of remedies at law, balance of hardships, and the public interest.  *eBay*, 547 U.S. at 391.  The court finds that, contrary to Transamerica's arguments, all four factors weigh in favor of a permanent injunction in this case.

First, the court finds that Lincoln would be irreparably harmed by use of its claimed method by a direct competitor to administer either existing riders or new riders in the future.  *Id.* (first equitable factor).   In the absence of an injunction, Lincoln would be deprived of its right to exclude Transamerica from practicing its invention in the future. Second, consistent with the discussion above and *Acumed, L.L.C., v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008), where, as here, money damages constituted adequate compensation only for past infringement, and no adequate remedy at law exists for future infringement, a permanent injunction may be appropriate.  *eBay*, 547 U.S. at 391 (second equitable factor).  Lincoln has not been, and cannot be, adequately compensated for such future infringement, because it cannot be adequately compensated for the loss of the right to exclude a competitor from using the claimed method.   Third, as to the balance of hardships, *id.* (third factor), the court agrees with Lincoln that Lincoln would suffer hardship from use of the claimed method by a direct competitor and that Transamerica's arguments about hardship it might suffer are disingenuous, in light of Transamerica's contention that it has non-infringing alternatives that it could use in the future to administer its riders.  Fourth, the court finds equally disingenuous Transamerica's argument that the public interest does not favor an injunction, *see id.* (fourth factor), for essentially the same reason, where the public interest favors enforcement of patent rights, and supposed harm

28

to members of the public consisting of Transamerica's customers will be mitigated by Transamerica's use of its claimed non-infringing alternatives.

Because the court finds that the equitable factors weigh in favor of a permanent injunction in this case, the court will not consider Lincoln's alternative motion for an ongoing royalty. A permanent injunction in some form will issue in this case.

### c.  *Language of the permanent injunction*

*i.  **Lincoln's proposed language**.* Pursuant to an order of the court, Lincoln submitted a Proposed Permanent Injunction Order, and Transamerica submitted comments on that proposed order. Lincoln's Proposed Permanent Injunction would restrain and enjoin the Transamerica defendants, "their officers, agents, representatives, employees, and all persons in active concert and participation with them, including any employees operating under shared service agreements, and any parent, subsidiary or 'sister' companies," from infringing claims **35** through **39** and **42** of the '201 patent and, specifically, would enjoin them from the following: (1) using and continuing to use the infringing method with the administration of specified variable annuities or other products without colorable distinctions from those variable annuities; (2) selling any of the enjoined products that are administered with the infringing method; and (3) using and continuing to use as a part of the administrative method the Vantage system or any other computerized method to perform the steps of the patent claims at issue. Lincoln's Proposed Permanent Injunction Order would also require an accounting, within thirty days of the date of the permanent injunction order, of the cumulative account values of the enjoined products as of the date of the order, together with a royalty payment (using an 18 base point rate), for Transamerica's infringement during 2009 through commencement of the permanent injunction. Finally, Lincoln's Proposed Permanent Injunction Order would include an

29

alternative provision for royalties if the court allows continued administration of previously sold riders.

      ***ii.***    ***Transamerica's comments***.   Also pursuant to an order of the court, Transamerica filed its comments on Lincoln's Proposed Permanent Injunction Order. Although Lincoln's Proposed Permanent Injunction Order was three pages long, Transamerica's comments run sixteen pages. More importantly, Transamerica's comments blatantly violate the terms and spirit of the order allowing such comments, which made clear that the order was *not* "an invitation to either party for further briefing of any issues pertaining to the merits of Lincoln's request for a permanent injunction." Order (docket no. 309) at 1. Nevertheless, the court will not strike the improper comments—although it certainly could—but will, instead, attempt to winnow the wheat from the chaff.

      Transamerica's permissible comments consist, first, of an assertion that Lincoln's Proposed Permanent Injunction Order is improperly directed at "enjoined products," rather than at a "computerized method of administration" of annuity products. Similarly, Transamerica contends that Lincoln's Proposed Permanent Injunction Order is overly broad in that it improperly covers subjects not adjudicated as infringing and parties not in privity with Transamerica. Transamerica also argues that a general injunction on infringement is impermissible. Transamerica argues, further, that the court cannot permissibly enjoin use of the prior art Vantage computer software, or any other software, as "part" of the administrative method, because infringement can only involve use of a computerized method to perform each and every step of the claimed method, and the patent goes to a computerized method, not any particular software. Finally, Transamerica argues that the royalty rates for infringement in 2009 until entry of the permanent injunction, and for continued administration of riders already sold, if allowed, are both too high, and should be limited to the 11 base points found by the jury for past infringement.

***iii.*** ***Analysis***. The court must first deal with some of the arguments that the court finds Transamerica has improperly asserted in its "comments" on Lincoln's Proposed Permanent Injunction Order, simply to make clear that the relief requested by Transamerica will not be granted. The court expressly rejects Transamerica's request that the court stay the permanent injunction pending appeal. The pertinent factors warranting such a stay are not met here. *See* FED. R. CIV. P. 62(c) (permitting a stay of an injunction pending appeal); *see also Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023, 1034 (N.D. Iowa 2004) (identifying the pertinent factors warranting such a stay as (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies).

The court also rejects Transamerica's request that the permanent injunction order permit a six-month transition for the administration of Transamerica's riders to alternatives that are not prohibited by the permanent injunction to avoid unwarranted damages to Transamerica and its policyholders or regulatory problems. Transamerica professed to have non-infringing alternatives available and has had notice of the possibility that a permanent injunction would be imposed for at least three months since Lincoln's motion for permanent injunction was filed on March 4, 2009 (and should have had notice of the possibility at least since the jury's verdict on February 13, 2009, and probably for years, during the pendency of this litigation). Under these circumstances, the burdens of implementing those non-infringing alternatives after a finding of infringement properly rest on Transamerica. The court does find that Transamerica should have a brief period, not to exceed ten days, to disseminate the permanent injunction order and to implement non-infringing alternatives, but that Lincoln is entitled to an enhanced royalty for any

31

infringement after that ten-day "implementation period." Such an enhanced royalty rate for post-injunction infringement is appropriate, because any such infringement is willful. Therefore, in addition to any accounting for infringement during 2009 prior to the date of the permanent injunction, the court will require a second accounting and payment of a royalty, at a further enhanced rate, after the date of the permanent injunction for any infringement after the "implementation period."

Taking Transamerica's permissible objections to the language of Lincoln's Proposed Permanent Injunction Order in the order in which the challenged language appears, the court notes, first, that Lincoln's Proposed Permanent Injunction Order would enjoin the Transamerica defendants, "their officers, agents, representatives, employees, and all persons in active concert and participation with them, including any employees operating under shared service agreements, and any parent, subsidiary or 'sister' companies." Transamerica objects to this language as overly broad, in that it includes entities not in privity with Transamerica and might be construed to apply to ongoing activities and relationships with other entities never litigated. The court finds that Lincoln's proposed language concerning persons enjoined at least arguably exceeds the scope of Rule 65(d)(2), which states that an injunction "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Therefore, the court will conform the persons enjoined to those that may permissibly be bound under Rule 65(d)(2).

Next, Lincoln's Proposed Permanent Injunction Order would "permanently enjoin[] and restrain[] [the persons identified] from infringing Claims 35-39 and 42 of the '201 patent," albeit adding, "and, specifically, from" engaging in listed acts. The court finds that there is some merit to Transamerica's contention that this proposed language,

32

enjoining infringement of the pertinent claims of the patent-in-suit generally, at least in the first instance, is overbroad. *See International Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004) ("In the patent infringement context, this court has rejected as overly broad a permanent injunction that simply prohibits future infringement of a patent."). The solution, in the court's view—and, as usual, Transamerica proposes no alternative to solve the perceived problem—is to state that the identified persons are "permanently enjoined and restrained from infringing Claims **35** through **39** and **42** of the '201 Patent *in the following ways*," then to list the specifically prohibited infringing activities.

The court also finds that it must address Transamerica's contention that the Proposed Order enjoins *products* rather than practice of the *patented method*. The problems identified by Transamerica are that Lincoln's Proposed Order refers to "Enjoined Products" rather than consistently referring to an "enjoined method"; refers to "any other riders, products, or features that lack colorable distinctions from these specifically identified products," instead of enjoined methods; and would expressly enjoin "[s]elling any Enjoined Products," albeit it with the limitation of "[s]elling any Enjoined Products *that are administered with the infringing method*," when sale of a variable annuity is not itself infringing activity.[9]

_____

[9]Transamerica also contends that the Proposed Order improperly uses the phrase "continuing to use," when there is no evidence that Transamerica is using or ever has used all of the claimed steps of the claimed computerized administrative method, and Lincoln relied on "required or obligated" language in Instruction No. 7 to prove infringement. Transamerica also contends that the permanent injunction order should specify that it does not include existing riders that have already been sold, because Lincoln has already been fully compensated for the "requirement or obligation" to use the claimed method to administer such riders. The court rejected these arguments in its analysis of the merits of

(continued...)

33

In various rulings and, in particular, in Jury Instruction No. 7, the court focused this litigation on infringement *of the claimed method*, not on the sale of *products*. This court also repeatedly took the position that evidence of the sale of the riders or annuities in question is *evidence* of infringement to the extent that the sale of the riders or annuities necessarily requires or obligates Transamerica to practice each and every step of the claimed invention. This court also noted that Lincoln contended that Transamerica must necessarily practice each and every step of one or more methods claimed in the '201 patent to administer the following variable annuity plan riders: (1) the Guaranteed Principal Solution; (2) 5 for Life; (3) 5 for Life with Growth; (4) Income Select for Life; and (5) Retirement Income Choice riders. The jury found infringement of the *claims* of the '201 patent at issue, but was not asked to indicate what riders Transamerica had administered or was required or obligated to administer using the claimed method. *See* Verdict Form (docket no. 276).

The court believes that it can reasonably infer from the royalty base found by the jury included administration of all of the riders specifically identified by Lincoln in Instruction No. 7. In the absence of any reference to administration of particular riders in the permanent injunction order, Lincoln could complain that it is not given adequate protection, and Transamerica could complain that the permanent injunction is either too general or does not offer sufficient guidance to permit compliance. Nevertheless, the "colorable distinction" language must go to a method of administering annuity riders, the subject of the patent, not to the annuity riders themselves. *Cf. International Rectifier Corp.*, 383 F.3d at 1316 (where the patent is for a device, "the only acts the injunction

---

[9](...continued)
Transamerica's motion for JMOL.

34

may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices. In order to comply with Rule 65(d), the injunction should explicitly proscribe only those specific acts.").

Thus, the court concludes that the permanent injunction order should be limited to enjoining practice of a claimed method or a method that is not colorably distinct from a claimed method, but may properly identify and enjoin administration with the claimed method of the specified annuity riders that the court finds were included in the jury's determination of the royalty base. Thus, the court concludes that the permanent injunction may properly enjoin "using and continuing to use a claimed computerized method or any computerized method that is not colorably distinct from a claimed computerized method to administer variable annuity riders, including using or continuing to use any such method to administer variable annuities with Guaranteed Principal Solution, 5 for Life, 5 for Life with Growth, Income Select for Life, and/or Retirement Income Choice riders." Because the patent provides protection from using an infringing computerized method for administering variable annuities, but does not provide protection from the sale of any variable annuities or riders, the court finds that the permanent injunction order cannot enjoin the sale of any particular variable annuities or riders or particular category of variable annuities or riders. This is so, even if the sale of the riders or annuities in question is *evidence* of infringement to the extent that the sale of the riders or annuities necessarily requires or obligates Transamerica to practice each and every step of the claimed invention. The language of the permanent injunction order set out in quotes just above will necessarily bar Transamerica from selling a product that it cannot administer except by necessarily using an infringing method, because Transamerica will have no way of administering such a variable annuity without infringing the claimed method.

35

Therefore, the permanent injunction will not include the language requested in paragraph 2(b) of Lincoln's Proposed Permanent Injunction Order.

The penultimate objection that the court must consider is Transamerica's objection to enjoining use of the Vantage computer system, or any other computer system, "as a part of the administrative method . . . or any other computerized method to perform the steps of any one of Claims **35** through **39** and **42** of the '201 Patent," as proposed by Lincoln. As Transamerica argues, use of any particular computer system to perform only "part" of the claimed method would not infringe the patent claims at issue. The patent also goes to a computerized method, not to any particular computer system or use of any particular computer system. Therefore, the permanent injunction will not include the language requested in paragraph 2(c) of Lincoln's Proposed Permanent Injunction Order.

Like Transamerica, the court also takes issue with the proposed royalty rate (18 base points) in the portion of Lincoln's Proposed Permanent Injunction requiring interim royalty payments for 2009 through the commencement of the permanent injunction. As Transamerica points out, this rate is well above the royalty rate determined by the jury (11 base points). Lincoln argued in support of its alternative motion for an ongoing royalty that the circumstances post-judgment, including the jury's determinations that the '201 patent was infringed and not invalid, and the fact that any post-judgment infringement was necessarily willful, warranted a higher royalty rate than the jury awarded for prejudgment infringement, and claimed that the higher royalty rate that was appropriate was 18 base points. The court, however, does not find that an enhanced royalty rate post-judgment is necessary to compensate Lincoln adequately for any post-judgment infringement for the relatively short period between the judgment on the jury's verdict and the date of the permanent injunction order. Therefore, the court will impose only the same royalty base

36

(11 base points) for post-judgment infringement, if any, up to the date of the permanent injunction that the jury imposed for prejudgment infringement.

The court has modified Lincoln's proposed permanent injunction to reflect the determinations above and certain other editorial modifications.

### 2. Lincoln's motion for prejudgment interest

In its second post-trial motion, Lincoln seeks an award of prejudgment interest in the amount of $1,082,430.00, calculated at the prime rate, compounded quarterly, pursuant to 35 U.S.C. § 284. Transamerica disputes Lincoln's claim for prejudgment interest, in particular, as to the rate at which such interest should accrue.

### a. Arguments of the parties

Lincoln argues that prejudgment interest is authorized by 35 U.S.C. § 284, and that prejudgment interest is necessary to ensure that it is placed in as good a position as it would have enjoyed had the infringer entered into an agreement to pay a reasonable royalty. It argues that its damages consist of the loss of the money to which it had a right (the reasonable royalty), as well as the foregone use of the money during the period of infringement. Lincoln argues that the appropriate interest rate is the prime rate, compounded quarterly, because the prime rate reflects the rate that a credit-worthy infringer, such as Transamerica, would be paying to its creditors and compensates Lincoln for the time value of the reasonable royalty payments it was due during the infringement period. Lincoln argues that such interest is routinely compounded, and that it should be compounded quarterly here, using the geometric mean of the monthly bank prime loan rate for each quarter of the infringement period, to fully compensate it for its losses.

Transamerica argues that an award of prejudgment interest is not automatic, but in the court's discretion. Although Transamerica concedes that "Lincoln is probably entitled to an award of some amount of prejudgment interest," Transamerica's Brief In Support Of

37

Resistance To Lincoln's Motion For Prejudgment Interest (docket no. 300) at 2, Transamerica contends that the appropriate rate at which such interest should be calculated, in light of the virtually non-existent risk of non-payment of royalties by Transamerica, is the United States Treasury Bill rate ("T-Bill rate"), not the prime rate. Transamerica argues that, where Lincoln has shown no risk of non-payment, Lincoln's higher interest rate would result in an undeserved windfall. Transamerica also contends that any interest should be compounded no more often than annually, because Lincoln's expert calculated damages for the jury using a year-end aggregate account value. Transamerica argues that quarterly compounding artificially apportions and increases the damages award. Finally, Transamerica argues that the interest should be calculated only on post-tax royalty income.[10]

In reply, Lincoln argues that the prime rate is reasonable and readily ascertainable and, if anything, is a conservative estimate of the interest rate necessary to compensate Lincoln for the foregone use of its money during the infringement period. Lincoln also argues that quarterly compounding is appropriate, because Lincoln reasonably would have received royalties on a quarterly basis. Finally, Lincoln argues that prejudgment interest should be calculated on pre-tax royalty income to avoid double-taxation.

### b.    *Analysis*

Section 284 of Title 35 of the United States Code provides, "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the

---

[10]Transamerica also argued that Lincoln's motion for prejudgment interest was premature, because the court had not resolved other post-trial motions that should be resolved first. That argument is plainly mooted, where the motion for prejudgment interest is the last motion to be considered here.

invention by the infringer, together with interest and costs as fixed by the court." The Federal Circuit Court of Appeals has recognized that "[t]he [Supreme] Court held that 35 U.S.C. § 284 'leaves the court some discretion in awarding prejudgment interest.'" *Group One, Inc. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1307 (Fed. Cir. 2005) (quoting *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-67 (1983)). Transamerica does not, however, assert that there is any ground to deny an award of prejudgment interest in this case. The Federal Circuit Court of Appeals has recognized that the district court's discretion to award prejudgment interest extends to determination of the proper rate for prejudgment interest, a matter that Transamerica does dispute, although the district court's exercise of its discretion, as to this and other aspects of the prejudgment interest award, must be guided by the purpose of prejudgment interest, which is to put the patent owner in as good a position as it would have enjoyed had the infringer entered into a reasonable royalty. *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

The Federal Circuit Court of Appeals has also explained,

> [I]t is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate. *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80, 9 USPQ2d 1273, 1287 (Fed. Cir. 1988). A trial court is afforded wide latitude in the selection of interest rates, *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 556-57, 222 USPQ 4, 9-10 (Fed. Cir. 1984), and may award interest at or above the prime rate. *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066, 219 USPQ 670, 676 (Fed. Cir. 1983); *Studiengesellschaft Kohle*, 862 F.2d at 1579-80, 9 USPQ2d at 1287. The court's selection of the prime rate was not an abuse of discretion.

39

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991). In *Uniroyal*, "the [district] court selected the prime rate [compounded daily] because (1) the litigation was, by patent case standards, of a protracted and comprehensive nature, and (2) [the patent holder's] poor financial condition during the pendency of the litigation required it to finance its operations with monies borrowed at rates above the prime rate." *Id.* On the other hand, the Federal Circuit Court of Appeals has also affirmed a district court's decision to award damages at the T-Bill rate, instead of the prime rate, compounded only annually, rather than quarterly or monthly in *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989). The court in *Datascope* explained that "the [district] court was entitled to credit [an] affidavit that [the infringer] would have been unable to comply with any requirement to report royalties more frequently than annually," and the appellate court was "unconvinced here that the Treasury bill rate of [28 U.S.C. § 1961] fail[ed] to 'adequately compensate' [the patent holder]." *Id.*

The court finds that Lincoln has offered reasonable grounds for awarding prejudgment interest at the prime rate, and that Transamerica has made no convincing showing that the lower T-Bill rate is all that is required to adequately compensate Lincoln. *See Uniroyal*, 939 F.2d at 1545 (the prime rate was appropriate, in the court's discretion, even in the absence of evidence that the patent holder borrowed at the prime rate); *but see Datascope*, 879 F.2d at 829 (the appellate court was "unconvinced" that a rate above the T-Bill rate was necessary to adequately compensate the patentee holder). On the other hand, the court does find that some symmetry between the annual determination of a reasonable royalty for purposes of a jury damages award and an annual compounding of pre-judgment interest is appropriate. *Cf. Datascope*, 879 F.2d at 829 (finding an annual compounding of interest appropriate where the district court reasonably credited evidence that the infringer could not report royalties more often than annually). Finally, the court agrees with Lincoln that, following the rationale of *Hanover Shoe, Inc. v. United Shoe*

40

*Mach. Corp.*, 392 U.S. 481 (1968), and decisions applying that rule to damages awards in patent cases, *see Kalmen v. Berlyn Corp.*, 914 F.2d 1473, 1482-83 (Fed. Cir. 1990), prejudgment interest also should apply to pre-tax damages to avoid double taxation.

Therefore, Lincoln's motion for prejudgment interest will be granted to the extent that the court will order prejudgment interest to accrue at the prime rate, compounded annually, on pre-tax royalty damages.

### III. CONCLUSION

Upon the foregoing,

1.      Transamerica's March 30, 2009, Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, Motion For New Trial Or Motion To Alter Or Amend Judgment (docket no. 299) is **denied** in its entirety;

2.      Lincoln's March 4, 2009, Motion For Permanent Injunction And Alternative Relief (docket no. 280) is **granted** to the extent that the court will issue a separate permanent injunction, on such terms as the court finds appropriate, but is **otherwise denied**;

3.      Lincoln's March 4, 2009, Motion For Prejudgment Interest (docket no. 281) is **granted** to the extent that prejudgment interest shall accrue at the prime rate, compounded annually, on pre-tax royalty damages.

**IT IS SO ORDERED.**

**DATED** this 8th day of June, 2009.

_Mark W. Bennett_
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

|  |  |
|---|---|
| TRANSAMERICA LIFE INSURANCE COMPANY, WESTERN RESERVE LIFE ASSURANCE CO. OF OHIO, and TRANSAMERICA FINANCIAL LIFE INSURANCE COMPANY, | |
| Plaintiffs, | No. C 06-110-MWB |
| vs. | **PERMANENT INJUNCTION** |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, | |
| Defendant. | |

_____

This matter comes before the court pursuant to Lincoln's March 4, 2009, Motion For Permanent Injunction And Alternative Relief (docket no. 280), following a jury verdict of patent infringement in favor of Lincoln and against defendants Transamerica Life Insurance Co., Western Reserve Life Assurance Co. of Ohio, and Transamerica Financial Life Insurance Co. (collectively "Transamerica"). Transamerica filed a Brief In Support Of Resistance To Lincoln's Motion For Permanent Injunction And Alternative Relief (docket no. 301) on April 6, 2009, and Lincoln filed a Reply In Support Of Its Motion For Permanent Injunction And Alternative Relief (docket no. 304) on April 21, 2009. At the court's request, Lincoln tendered a Proposed Permanent Injunction Order (docket no. 310) and Transamerica filed Comments on the Proposed Permanent Injunction Order (docket no. 312). The court has fully considered the motion and resistance, along with the proposed order and comments, and expressly finds that (1) because Lincoln and

Transamerica are direct competitors, among other reasons, Lincoln will be irreparably harmed without an injunction; (2) in light of the statutory right to exclude and, again, the fact that Lincoln and Transamerica are direct competitors, the remedies at law are inadequate to compensate Lincoln for its injuries; (3) a permanent injunction will not harm Transamerica, who has argued it has many non-infringing alternatives; and (4) the public interest in enforcing valid patents fully supports entry of a permanent injunction.

Accordingly, Lincoln's March 4, 2009, Motion For Permanent Injunction And Alternative Relief (docket no. 280) is **granted** on the terms stated herein.

**THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:**

1.     Defendants Transamerica Life Insurance Company, Transamerica Financial Life Insurance Company, and Western Reserve Life Assurance Company of Ohio (collectively "Transamerica"); their officers, agents, servants, employees, and attorneys who receive actual notice of this order by personal service or otherwise; and other persons who receive actual notice of this order by personal service or otherwise who are in active concert or participation with any of the persons previously listed, are, for the duration of United States Patent No. 7,089,201 (the "'201 Patent"), **permanently enjoined and restrained** from infringing Claims **35** through **39** and **42** of the '201 Patent **in the following ways:**

> Using and continuing to use a claimed computerized method or any computerized method that is not colorably distinct from a claimed computerized method to administer variable annuity riders, including using or continuing to use any such method to administer variable annuities with Guaranteed Principal Solution, 5 for Life, 5 for Life with Growth, Income Select for Life, and/or Retirement Income Choice riders.

2

2.     Transamerica shall, within thirty (30) days of this Order, provide to counsel for Lincoln an accounting of the cumulative account values of the variable annuities with Guaranteed Principal Solution, 5 for Life, 5 for Life with Growth, Income Select for Life, and/or Retirement Income Choice riders as of the date of this Order, together with a royalty payment (determined by multiplying the cumulative account value by 0.11% and prorated (5 months/12)) to compensate Lincoln for Transamerica's infringement during 2009 through commencement of the permanent injunction.

3.     Transamerica shall have ten (10) days from the date of this order (the "implementation period") in which to disseminate this permanent injunction order and to implement non-infringing alternatives.    Ninety (90) days after conclusion of the "implementation period," Transamerica shall provide counsel for Lincoln with an accounting of the cumulative account values of the variable annuities, including variable annuities with Guaranteed Principal Solution, 5 for Life, 5 for Life with Growth, Income Select for Life, and/or Retirement Income Choice riders, for which it has used a claimed computerized method of administration or a computerized method of administration that is not colorably distinct from a claimed method during that ninety-day period, together with a royalty payment (determined by multiplying the cumulative account value by 0.22% and prorated (3 months/12)) to compensate Lincoln for any infringement by Transamerica after the ten-day "implementation period."

4.     If Transamerica fails to show to Lincoln's reasonable satisfaction that it has ceased and desisted using a claimed computerized method or a computerized method that is not colorably distinct from a claimed computerized method to administer variable annuities after one hundred (100) days from the date of this Order, Lincoln may move the

3

court for a further accounting and royalty payment at the rate of 0.44% for the period of further infringement.

**IT IS SO ORDERED.**

**DATED** this 8th day of June, 2009.

_Mark W. Bennett_

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

4