# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

TRANSAMERICA LIFE INSURANCE
COMPANY, WESTERN RESERVE
LIFE ASSURANCE CO. OF OHIO, and
TRANSAMERICA FINANCIAL LIFE
INSURANCE COMPANY,

        Plaintiffs,

vs.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

        Defendant.

No. C 06-110-MWB

**ORDER FOR ENTRY OF FINAL JUDGMENT**

———————————

Following entry of the Memorandum Opinion And Order Regarding Post-Trial Motions (docket no. 313) on June 6, 2009, the court set a status conference for June 17, 2009, to determine what issues remain to be resolved before entry of a final judgment in this case and what further proceedings are required to resolve those issues. This Order For Entry Of Final Judgment follows that status conference.

At the status conference, Transamerica represented that it had made a motion to the Federal Circuit Court of Appeals to stay this court's June 8, 2009, Permanent Injunction (docket no. 313) after filing its Notice Of Appeal (docket no. 315) of the Permanent Injunction, so that it would not be presenting such a motion to stay the Permanent Injunction to this court. Therefore, Transamerica had no further matters that it believed this court was required to resolve.

For its part, Lincoln represented that its unresolved claim for declaratory judgment of infringement of its '201 patent in its November 20, 2007, Answer To Plaintiffs'

Amended Complaint And Counterclaim (docket nos. 54 & 56) was "subsumed" in the jury's February 13, 2009, Verdict (docket no. 276) finding infringement by Transamerica of the '201 patent and that Lincoln did not request any further declaration by the court. As to its claim for attorney fees in its Amended Complaint And Counterclaim, Lincoln represented that it was not seeking attorney fees pursuant to 35 U.S.C. § 284 for "willful" infringement, pursuant to its April 21, 2008, Stipulation (docket no. 67), and also was not seeking attorney fees on the ground that this case was otherwise "exceptional" within the meaning of 35 U.S.C. § 284. Consequently, it is not necessary for the court to enter declaratory judgment of infringement or to address Lincoln's original prayer for attorney fees.

The one remaining issue that the court must resolve is the ending date for the accrual of prejudgment interest (at the prime rate, compounded annually) that the court awarded in its June 8, 2009, Memorandum Opinion And Order Regarding Post-Trial Motions (docket no. 313). With the permission of the court, granted to both parties at the end of the status conference, Lincoln filed on June 17, 2009, its Supplemental Authority Regarding Prejudgment Interest (docket no. 319), asserting that prejudgment interest should accrue until entry of a "final" judgment, which Lincoln anticipated would occur on or about June 19, 2009, rather than to the date of the jury's Verdict (docket no. 276) on February 13, 2009, or to the date of the Judgment On Jury Verdict (docket no. 278) on February 18, 2009. Lincoln argues that, in a patent infringement case, prejudgment interest should ordinarily be awarded from the date of infringement to the date of judgment, and that, pursuant to Rule 54(a) of the Federal Rules of Civil Procedure, a "judgment" is a final judgment or an immediately appealable interlocutory decision. Lincoln points out that the February 18, 2009, Judgment On Jury Verdict (docket no. 278), by design, was not "final." Thus, Lincoln asserts that prejudgment interest should be

awarded through the date of a "final" judgment yet to be entered. Although Transamerica also had the opportunity to enter into the debate about the appropriate ending date for prejudgment interest and to file any supplemental authorities on that question, Transamerica did not take the opportunity to do either.

The court notes that the February 18, 2009, Judgment On Jury Verdict (docket no. 278), which was entered at the court's direction and which the court approved as to form, stated that interest on the jury's Verdict awarding Lincoln $13,098,349.00 was to "accrue at the legal rate from the date of the verdict on February 13, 2009," although that Judgment also stated, "This judgment does not resolve all of the claims or counterclaims at issue in this case." In short, the answer to the unresolved question will award Lincoln interest on the jury's award for the period from February 13, 2009, to the entry of "final" judgment, which has yet to occur, at either the prejudgment interest rate determined by the court (the prime rate, compounded annually) or the "legal rate" for postjudgment interest (the lower T-Bill rate in 28 U.S.C. § 1961)

Lincoln fails to note that, even in a patent case, the determination of the correct dividing line for calculating pre- and postjudgment interest is governed by regional circuit law and 28 U.S.C. § 961, because it is not a question unique to patent law. *See Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347-48 (Fed. Cir. 1999). In *Transmatic*, the Federal Circuit Court of Appeals assumed that there was a consensus among the regional circuit courts of appeals, including the Eighth Circuit Court of Appeals, that there is a "dividing line" between prejudgment and postjudgment interest and, moreover, that "the 'date of entry of judgment' demarcates the boundary between pre- and postjudgment interest." *Transmatic*, 180 F.3d at 1347 & n.1 (citing cases). In *Transmatic*, the Federal Circuit Court of Appeals suggested that the Eighth Circuit Court of Appeals determined the "timing" for pre- and postjudgment interest under 28 U.S.C.

§ 1961 in *Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433 (8th Cir. 1991). *Transmatic, Inc.*, 180 F.3d at 347 n.1.

In *Happy Chef*, the Eighth Circuit Court of Appeals, hearing a diversity case involving claims under Iowa law, was concerned, first, with determining the period for prejudgment interest pursuant to IOWA CODE § 535.3, noting that "[i]n a diversity action, state law governs prejudgment interest; federal law governs postjudgment interest." *Happy Chef*, 933 F.2d at 1435-37. In that case, the trial court had issued a judgment and order holding that Happy Chef was fully obligated to perform its lease with the appellants and granted a motion for supplemental relief pursuant to 28 U.S.C. § 2202 on February 21, 1990, but then ordered discovery and an evidentiary hearing on the issue of damages, because the trial record was not adequate to enter a judgment on that issue. *Id.* at 1435. After the evidentiary hearing, the court entered another order on May 25, 1990, awarding damages, plus costs and interest, but denying the prayer for prejudgment interest. *Id.*

In *Happy Chef*, the court determined that, as a matter of *state* law, under IOWA CODE § 535.3, prejudgment interest should have accrued until May 25, 1990, when the trial court awarded damages. *Id.* at 1437. The court's discussion of *federal* law related only to postjudgment interest:

> The district court also erred in awarding postjudgment interest from the date the motion for supplementary relief was granted, which was also the date of the declaratory judgment in the appellants' favor. *Section 1961(a) does not provide for interest until a money judgment has been entered.* Therefore, interest at the postjudgment rate should begin on May 25, 1990, not February 21 of that year.
> To summarize, under Iowa law the appellants are entitled to prejudgment interest at 10% from October 30, 1989, or, for rent payments not yet due on that date, from [*1438] the date due, until May 25, 1990, the date of the

4

> judgment for damages. *From May 25, 1990, they are to*
> *receive postjudgment interest at the federal rate, as required*
> *by 28 U.S.C. § 1961(a).*

*Happy Chef*, 933 F.3d at 1437-38 (emphasis added). Thus, to the extent that *Happy Chef* suggests that prejudgment interest stops accruing when postjudgment interest starts accruing under 28 U.S.C. § 1961, the date for the commencement of postjudgment interest is the date "a money judgment has been entered." *Id.* In that case, the date of the judgment on damages was the *last* judgment in the case, although there had been a prior judgment of liability. *Id.* This court has not found any Eighth Circuit case, however, that clarifies precisely when prejudgment interest ends and postjudgment interest begins on a *federal* claim, such as the patent infringement claim at issue here, or which judgment date is relevant when a judgment on damages *precedes* final judgment in the case, as occurred here.

In *Transmatic*, in deciding *which* judgment date was relevant for the start of postjudgment interest, where an earlier judgment had been vacated, then reinstated, the Federal Circuit Court of Appeals found that the relevant regional circuit court of appeals, the Sixth Circuit Court of Appeals, had used the "meaningful ascertainment of damages" test established by the Supreme Court in *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 836 (1990). *See Transmatic*, 180 F.3d at 1348-49. Under that test, postjudgment interest runs from the date of the judgment in which damages were ascertained in a meaningful way. *Id.* Therefore, in the case before it, the Federal Circuit Court of Appeals determined that "damages were meaningfully ascertained at the time of the initial district court judgment [later vacated and remanded for further findings] because that damages decision was ultimately correct on the merits." *Id.* at 1349.

The court finds that Lincoln's damages were "meaningfully ascertained" at the time of the Judgment On Jury Verdict, February 18, 2009, following the jury's February 13, 2009, Verdict. *Id.* (citing *Kaiser*, 494 U.S. at 836). The court also finds that February 18, 2009, is the date that "a money judgment [was] entered" on the jury's Verdict. *See Happy Chef*, 933 F.2d at 1437. However, as Lincoln points out, by design, the Judgment On Jury Verdict was not intended to be "final," but was, instead, a "protective" judgment to ensure that some interest would accrue on the jury's Verdict, while the parties litigated post-trial motions. *See* Order (docket no. 279) (explaining that the Judgment On Jury Verdict (docket no. 278) was not, and was not intended to be, an appealable judgment on less than all of the claims within the meaning of Rule 54(b)). Such a judgment, on less than all of the claims at issue, "d[id] not end the action as to any of the claims or parties and [could] be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). Thus, the Judgment On Jury Verdict ultimately had no more force and effect in ending the litigation—or starting the accrual of postjudgment interest—than the jury's Verdict.

Under the circumstances presented here, the part of the Supreme Court's decision in *Kaiser* that the court finds is applicable is not the "meaningful ascertainment" test, which was used to determine whether an earlier judgment on damages, vacated, without appeal, because it was not supported by the evidence, or a later judgment after a second jury verdict on damages was the trigger for accrual of postjudgment interest. *Kaiser*, 494 U.S. at 836-37. Rather, the applicable part of the decision in *Kaiser* is the part in which the Supreme Court resolved a split in the circuits by holding that, under the plain language of 28 U.S.C. § 961, postjudgment interest runs from the entry of a judgment on a jury's verdict, not from the date of the jury's verdict. *Kaiser*, 494 U.S. at 834-35. Applying the "judgment not verdict" standard for accrual of postjudgment interest in *Kaiser*, this court

6

finds that the pertinent judgment has not yet been entered on the jury's damages Verdict, because the Judgment On Jury Verdict entered shortly after the jury's Verdict was not final.

Thus, the court finds that the non-final Judgment On Jury Verdict should be vacated, *see* FED. R. CIV. P. 54(b) (a non-final judgment may be revised at any time before the entry of final judgment); that prejudgment interest should accrue until the entry of final judgment on the jury's Verdict, pursuant to this order; and that postjudgment interest should accrue from the entry of that final judgment.

Transamerica might complain that the result of this determination is that it is now subject to interest on the jury's Verdict from February 13, 2009, to the entry of judgment pursuant to this order at a higher, prejudgment interest rate (the prime rate, compounded annually), than the rate set in the Judgment On Jury Verdict (the "legal rate," that is, the T-Bill rate pursuant to 28 U.S.C. § 961). However, again, the Judgment On Jury Verdict was not final and was subject to revision at any time pursuant to Rule 54(b), and Transamerica did not enter into the debate about the end date for prejudgment interest, even when given the opportunity to do so during the status conference and to file any post-hearing supplemental authority on the question. Thus, Transamerica waived any objection to a change in the interest rate on the jury's Verdict for the interim period from February to June.

THEREFORE, the Judgment On Jury Verdict (docket no. 278) entered on February 18, 2009, is **vacated**, and the Clerk of Court is directed to **enter final judgment** awarding Lincoln National Life Insurance Company $13,098,349.00 (thirteen million, ninety-eight thousand, three hundred forty-nine dollars) from defendants Transamerica Life Insurance Company, Western Reserve Life Assurance Company of Ohio, and Transamerica Financial Life Insurance Company, with prejudgment interest at the prime rate, compounded

annually, to accrue until the entry of such final judgment, and postjudgment interest at the legal rate pursuant to 28 U.S.C. § 961 to accrue from the date of entry of such final judgment.

**IT IS SO ORDERED.**

**DATED** this 19th day of June, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA