**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

TRANSAMERICA LIFE INSURANCE
COMPANY, WESTERN RESERVE
LIFE ASSURANCE CO. OF OHIO, and
TRANSAMERICA FINANCIAL LIFE
INSURANCE COMPANY,

|             |                    |
|-------------|--------------------|
| Plaintiffs, |  No. C06-110-MWB   |

vs.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

Defendant.

**MEMORANDUM OPINION AND
ORDER REGARDING LINCOLN
NATIONAL LIFE INSURANCE
COMPANY'S BILL OF COSTS**

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A. General Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *B. Risk of Double Recovery* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 6
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *C. Costs for Technology Consultants* . . . . . . . . . . . . . . . . . . . . . . . 15
      *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 15
      *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## *I. INTRODUCTION AND BACKGROUND*

On March 4, 2009, Lincoln filed its Bill of Costs (docket no. 282) with this court, and subsequently, on June 22, 2009, filed its Amended Bill of Costs (docket no. 322) and Itemization in Support of Lincoln's Amended Bill of Costs (docket no. 322-2). The filings followed a February 13, 2009, jury verdict in favor of Lincoln[1]—resulting from a nine day trial and one day of deliberations in this patent infringement lawsuit. In the Amended Bill of Costs, Lincoln seeks the following: $37,531.40 for "Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case;" $67,164.59 for "Fees and disbursements for printing;" $4,452.50 for "Fees for witnesses;" $4,486.50 for "Fees for exemplification and copies of papers necessarily obtained for use in the case;" and $29,595.47 for "Other costs," for a total of $143,230.46 in requested costs. *See* docket no. 322.

On July 9, 2009, Transamerica filed its Resistance to Lincoln's Amended Bill of Costs (docket no. 327), Declaration of Andrew W. Shyjan (docket no. 327-2), and exhibits 1-3 (docket nos. 327-3, 327-4, and 327-5). In Transamerica's resistance, it asserts two main arguments. First, Transamerica argues that awarding Lincoln's entire request for deposition and document discovery costs would create the risk of impermissible double recovery, because many of the costs were incurred, at least in part, for an action pending

---

[1] The verdict was in favor of Lincoln on its claims of infringement by Transamerica of independent claim 35 and dependent claims 36 through 39 and 42 of United States Patent No. 7,089,201 B1 ("the '201 patent"), which is entitled "METHOD AND APPARATUS FOR PROVIDING RETIREMENT INCOME BENEFITS." The jury awarded a "total reasonable royalty" of $13,098,349 for Transamerica's past infringement, at a "royalty rate" of 11 base points, and a "base" of $11,907,589,871. The jury also rejected Transamerica's claims of invalidity of the '201 patent for "anticipation," "obviousness," and "inadequate written description." *See* Verdict Form (docket no. 276).

in the United States District Court for the Northern District of Indiana—Lincoln National Life Insurance v. Transamerica Financial Life Insurance Co., *et al.* (Case No. 1:04-cv-396) (N.D. Ind.) ("the '815 patent"). In order to prevent this potential double recovery, Transamerica proposes either equitably apportioning the costs from both actions or denying all costs incurred in the '815 patent case. Second, Transamerica argues that Lincoln's request for costs relating to pre-trial consulting or trial consulting is improper[2]. Transamerica argues that the $28,211.72 expense for pre-trial or trial consulting, travel, food, and lodging are not authorized by 28 U.S.C. § 1920 and should not be awarded. Transamerica suggests that the consulting was for Lincoln's convenience, or extravagance, and the travel, food, and lodging are clearly not properly considered "exemplification" costs under § 1920.

Lincoln filed its Response to Transamerica's Resistance to the Amended Bill of Costs (docket no. 334), and exhibit 1 (docket no. 334-2), on July 20, 2009. Lincoln claims that it is entitled to recover all costs related to discovery. In response to the "theoretical" risk of double recovery, Lincoln claims to resolve the problem by "agree[ing] that it will not seek the recovery of any duplicative costs after prevailing in the Indiana matter." *See* docket no. 334. Lincoln also claims that it is entitled to recover its trial presentation costs. Lincoln points out that Transamerica also employed a third-party technology vendor to provide courtroom technology services and notes that this court mentioned its appreciation for the parties' use of courtroom technology. According to Lincoln, the costs were for exemplification and resulted in an aid to the jury in

---

[2] Lincoln itemizes the disputed costs in docket no. 322-2, p. 11 (Item No. 60). The invoice for this entry is in docket no. 322-2, p.84.

understanding such a difficult case. As a result, Lincoln believes that it is entitled to all costs stemming from the third-party vendor's exemplification work.

## II. ANALYSIS

### A. General Legal Standards

Federal Rule of Civil Procedure 54 provides that "costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). The Eighth Circuit Court of Appeals has explained that Rule 54(d) "represents a codification of the 'presumption that the prevailing party is entitled to costs.'" *Greaser v. State, Dept. of Corrections*, 145 F.3d 979, 985 (8th Cir. 1998) (quoting *Bathke v. Casey's General Stores, Inc.*, 64 F.3d 340, 347 (8th Cir.1995)); *see also 168th and Dodge, LP v. Rave Reviews Cinemas, L.L.C.*, 501 F.3d 945, 957 (8th Cir. 2007) ("A prevailing party is presumptively entitled to recover all of its costs.") (quoting *In re Derailment Cases*, 417 F.3d 840, 844 (8th Cir.2005)); *Poe v. John Deere Co.*, 695 F.2d 1103, 1108 (8th Cir. 1982) ("Costs, unlike attorney's fees, are awarded to a prevailing party as a matter of course, unless the district court directs otherwise; unusual circumstances need not be present.") (citing *NOW v. Bank of California*, 680 F.2d 1291, 1294 (9th Cir.1982); *Croker v. Boeing Co.*, 662 F.2d 975, 998-99 (3d Cir.1981); *Johnson v. Nordstrom-Larpenteur Agency, Inc.*, 623 F.2d 1279, 1282 (8th Cir. 1980), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *Jones v. City of San Antonio*, 568 F.2d 1224, 1226 (5th Cir.1978)). "Despite this presumption, however, the district court has substantial discretion in awarding costs to a prevailing party." *Id.* (*citing Zotos v. Lindbergh School Dist.*, 121 F.3d 356, 363 (8th Cir.1997)); *see also Pershern v. Fiatallis North America, Inc.*, 834 F.2d 136, 140 (8th Cir. 1987) ("[W]ithin the statutory framework of costs eligible to be taxed, the district court has discretion in determining and awarding costs in

a given case."); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 762 (8th Cir. 2006) ("Rule 54(d) presumes an award of costs to the prevailing party; however, the district court has substantial discretion in awarding costs.") (citing *Computrol, Inc. v. Newtrend, L.P.*, 203 F.3d 1064, 1072 (8th Cir.2000)); *Cross v. General Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983) ("Under Rule 54(d), allocation of costs is within the sound discretion of the trial court.").

"Rule 54(d) is phrased in permissive terms and generally grants a federal court the discretion to refuse to tax costs in favor of the prevailing party." *Marmo*, 457 F.3d at 762; *see also Cross*, 721 F.2d at 1157 (The court cited the plaintiff's "limited financial resources" as a reason to award only a partial award of costs to the defendant.). When a district court denies costs, it must provide a rationale for doing so. *See Thompson v. Wal-Mart Stores, Inc.*, 472 F.3d 515, 517 (8th Cir. 2006). "A general statement of fairness is insufficient, without more, to rebut the Rule 54(d)(1) presumption for an award of costs to the prevailing party." *Id.* If appealed, the Eighth Circuit Court of Appeals will "review the district court's denial of costs for abuse of discretion." *Greaser*, 145 F.3d at 985 (citing *Milton v. City of Des Moines, Iowa*, 47 F.3d 944, 947 (8th Cir.1995)). However, "[a] court of appeals lacks jurisdiction to hear an appeal where the sole issue is that the district court abused its discretion as to the amount of costs awarded." *Poe*, 695 F.2d at 1109.

The following costs are recoverable:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts,

> compensation of interpreters, and salaries, fees, expenses, and
> costs of special interpretation services under section 1828 of
> this title.

28 U.S.C. § 1920. "[F]ederal courts are bound by the limitations set out in section 1920."
*168th and Dodge, LP*, 501 F.3d at 957.

With these general standards in mind, the court will turn to Transamerica's two grounds for resisting Lincoln's Bill of Costs: 1) that a full award of deposition and document discovery costs would present the risk of impermissible double recovery; and 2) that an award of exemplification costs for a third party technology vendor's consulting fees, travel, food, and lodging is not authorized by § 1920. The court will evaluate the parties' arguments under Eighth Circuit Court of Appeals's precedent[3] and other appropriate authority.

## B. Risk of Double Recovery

### 1. Arguments of the parties

Transamerica argues that, in order to avoid double recovery, Lincoln should not be awarded, in full, its request for deposition and discovery costs as some of the costs were incurred for the '815 patent case. The '815 patent case is currently before the United States District Court for the Northern District of Indiana. Transamerica asserts that the '815 patent case raised several issues common to the issues raised in the '201 patent case, and that the parties agreed that discovery obtained from the '815 patent case, including depositions and document discovery, would be used in the '201 patent case. However,

---

[3] The United States Court of Appeals for the Federal Circuit interprets § 1920 by the law of the regional circuit, which in this case is the Eighth Circuit Court of Appeals. *See Kinzenbaw v. Case L.L.C.*, 2006 WL 1096683, *2 (Fed.Cir. 2006).

Transamerica claims that a full award of costs in the '201 case could allow Lincoln to recover the same costs should they prevail in the '815 patent case.

Transamerica proposes two different methods by which the court could reduce Lincoln's costs and prevent the risk of double recovery. First, Transamerica suggests equitable apportionment of Lincoln's costs by the following means: combine the costs from both the '201 patent case and '815 patent case and award half of those costs in the '201 patent case. According to Transamerica, deposition costs would be reduced from $32,696.97 to $16,348.48, and the document discovery costs from $67,164.59 to $33,582.30. This would amount to a total reduction of $49,930.63 in costs. Alternatively, Transamerica asks the court to deny all costs incurred in the '815 patent case and limit recovery to costs incurred in the '201 patent case. According to Transamerica, this denial of costs would result in a reduction of $18,916.73 in deposition costs and $50,278.23 in document discovery costs. The total reduction under this alternative would be $69,194.96[4].

Lincoln does not dispute that there is another lawsuit pending in the Northern District of Indiana and that several of the issues raised in that action are common to the issues raised in this action. Nor does Lincoln contest that there was an agreement between the parties to use discovery obtained from the '815 patent case in Indiana in the '201 patent

---

[4] Transamerica provides the court with a breakdown of which depositions were taken for each case, based on the case number provided in the caption of the deposition or document discovery request. Transamerica claims that the first deposition in the '201 patent case was taken on July 29, 2008, and that all depositions taken prior to that date were incurred for the '815 patent case. Similarly, Transamerica claims that its first request for production of documents in the '201 patent case was served on November 2, 2007, which was long after Lincoln produced documents in the '815 patent case for which it now seeks recovery. Altogether, Transamerica claims that Lincoln is requesting $69,194.96 in costs incurred in the '815 patent case.

case before this court. However, Lincoln maintains that it is entitled to the costs associated with all discovery, including transcripts, necessarily obtained for use in the '201 case, pursuant to 28 U.S.C. § 1920. Lincoln argues that Transamerica has essentially admitted that it was necessary for Lincoln to procure the discovery in question for the '201 patent case. Nevertheless, Lincoln proposes, to address Transamerica's concern about the risk of double recovery, that it will agree not to seek the recovery of any duplicative costs after prevailing in the '815 patent case.

Although Lincoln disputes whether the court should apportion any costs in this '201 patent case, it does recognize the court's ability to apportion costs. For example, Lincoln concedes that depositions taken before the filing of the '201 patent case could be excluded. Should the court decide to exclude costs for the depositions taken before the filing of the '201 patent case, on August 8, 2006, Lincoln claims that its deposition costs would be reduced by $2,254.35 and also notes that 28,497 of its 646,298 documents produced in document discovery could be excluded.

### 2. Analysis

Transamerica does not contest that deposition and discovery costs are recoverable under 28 U.S.C. § 1920, but instead challenges whether all of the costs should be awarded due to risk that the same costs could be recovered in a separate action. "[A] district court has discretion to award [deposition] costs if the deposition was necessarily obtained for use in a case and was not purely investigative." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 889 (8th Cir. 2006) (quoting *Zotos*, 121 F.3d at 363). "'[T]he determination of necessity must be made in light of the facts known at the time of the deposition. . . .'" *Zotos*, 121 F.3d at 363 (citations omitted). Similarly, "[c]opy . . . fees may be awarded if the fees were incurred for items 'necessarily obtained' for use in the case. *Marmo*, 457 F.3d at 763 (citing 28 U.S.C. § 1920(4)).

Transamerica does not attack any of Lincoln's specific requests for deposition or document discovery costs on the basis that the costs were not covered by § 1920 or were unnecessary. Instead, Transamerica admits that it had an agreement with Lincoln whereby discovery obtained from the '815 patent case, including depositions and document discovery, would be used in the '201 patent case. *See* docket no. 327 (" . . . by agreement of the parties, discovery obtained from the '815 action, including depositions and document discovery, were used in this action."). Transamerica does not specify when this agreement was formed, while Lincoln implies that this agreement was present for the entire pendency of the '201 patent case. *See* docket no. 334 (" . . . the vast majority of the depositions were taken and documents produced during the pendency of this matter and at a time when the parties understood that they could be utilized" for both cases.).

Even assuming that the agreement includes all depositions and document discovery during the pendency of the '201 patent case, it was not likely formed prior to the filing of the '201 patent case[5]. Therefore, it is not reasonable to find that the discovery costs incurred, or the depositions taken, prior to the filing of the '201 patent case, on August 8, 2006, were necessarily obtained for use in the yet to be filed case. As Lincoln concedes, other courts have restricted the ability of prevailing parties to recover costs that were incurred before the filing of a case. *See e.g. Jones v. Cargill, Inc.*, 2007 WL 1582640 (N.D.Iowa May 31, 2007) (refusing to award costs for an arbitration transcript that were incurred before the filing of the case); *American Automotive Accessories, Inc. v. Fishman*, 991 F.supp. 995, 996-97 (N.D.Ill 1998) (refusing to award costs for deposition transcripts, although allegedly highly useful in a case, because they were taken in a related state court

---

[5] The '815 patent case was commenced on October 21, 2004, while the '201 patent case, before this court, was commenced on August 8, 2006.

case, before the filing of the case at bar, and were therefore "not actually undertaken *ab initio* for use in presenting evidence to the court in [that] case."). When such costs are incurred before the filing of a case, they appear, without more, to be investigatory and not necessarily obtained for use in the case. As a result, the court will decrease Lincoln's award of costs by $2,620.39[6] for discovery costs and $2,254.35[7] for deposition costs incurred prior to the filing of the '201 patent case, with this court, on August 8, 2006.

Concerning Lincoln's discovery and deposition costs incurred after the filing of the '201 patent case, it is possible that all of the costs incurred for the '815 patent case were necessarily obtained for the '201 patent case, considering the parties' agreement. The court has no way to verify whether each deposition and document produced in discovery was necessarily obtained for use in the '201 patent case. However, Transamerica does not

---

[6] The court reduces Lincoln's total document discovery costs of $59,554.37 by $2,620.39 ($59,554.37 times 4.4 percent). Out of 646,298 documents produced to Transamerica in total, Lincoln claims that it produced 28,497 documents before the filing of the '201 patent case on August 8, 2006. The documents produced prior to the filing of the '201 patent case, 28,497 documents, represent 4.4 percent of the 646,298 documents produced. *See* docket no. 322-2, pp. 7-8. Because Lincoln requests fees in addition to the per document cost, such as conversion fees and hosting/user licenses fees—Transamerica does not argue that the fees are not covered by § 1920—the court reduces Lincoln's request by 4.4 percent in order to, *pro rata*, reduce the recovery of these associated fees.

[7] Lincoln's brief claims that there were three depositions taken prior to the filing of the '201 patent case on August 8, 2006: A. Scott Logan (Defendant's expert) was deposed on March 14, 2006 at a cost of $1,444.15; Denis Schwartz (inventor) was deposed on March 6, 2006, at a cost of $319.00; and Stephen Lewis (inventor) was deposed on March 2, 2006, at a cost of $491.20. *See* docket nos. 322-2 and 334. The sum of these deposition costs is $2254.35.

Lincoln's Itemization in Support of Lincoln's Amended Bill of Costs states that Denis Schwartz was deposed on June 9, 2006, rather than June 6, 2006. Whether the brief or itemization list an erroneous date is irrelevant as both fall before August 8, 2006.

challenge whether specific discovery or deposition costs were necessarily obtained for the '201 patent case—instead, Transamerica claims that an award of costs for the depositions would expose Transamerica to the possibility that they would pay twice for the same costs, should Lincoln prevail in the '815 patent case. If Lincoln obtained this double recovery, it would surely be a windfall to Lincoln as they would be reimbursed twice for costs that they incurred only once. This court, however, is not deciding whether Lincoln should receive a second reimbursement for costs. Lincoln is the prevailing party in the '201 patent case, but not—as of now—in the '815 patent case. Since Transamerica does not challenge whether its request for deposition costs were necessarily obtained for the '201 patent case, the court has discretion to award the costs. *See Smith*, 436 F.3d at 889 (citations omitted).

While the court recognizes an award of Lincoln's requested deposition and document discovery costs presents the risk for double recovery, it is also mindful of several other factors relevant to the award of costs. First, Lincoln is not guaranteed to prevail in the '815 patent case, and should Lincoln fail to be the prevailing party in the '815 case, there is no risk of double recovery. Moreover, if Transamerica is the prevailing party in the '815 patent case then they will presumably recover their full costs as there would be no risk of double recovery from a subsequent fee award. If such a scenario occurred—and this court had reduced Lincoln's award of costs—Lincoln would be disadvantaged by prevailing in the first suit instead of the second, because Transamerica would recover all of its costs in the '815 patent case while Lincoln would have recovered only part of its costs. Second, if Lincoln does prevail in the '815 patent case, the United States District Court for the Northern District of Indiana will have the discretion to award or deny costs in the '815 patent case. The parties will surely provide that district court with evidence of the costs awarded in the '201 patent case, and that court can decide

whether to refuse to award the duplicative costs under a theory of judicial estoppel, or otherwise, in accordance with the discretion district courts have in awarding costs. Third, even if the court halved the costs in this case, the '815 patent case court in the Northern District of Indiana could award full costs to Lincoln, should they prevail, and therefore apportionment would not fully eliminate the risk of double recovery—the court anticipates that the '815 patent case court would not award duplicative costs regardless of whether this court awards full or apportioned costs, but that decision is properly left for the '815 patent case court. Lastly, the court notes that Lincoln has offered to agree "that it will not seek the recovery of any duplicative costs after prevailing in the Indiana matter." Docket no. 334. This court is not interested in entering an order barring Lincoln from seeking recovery of any duplicative costs, should they prevail in the '815 patent case. However, Lincoln's representation, which it would surely follow, would further reduce the probability of double recovery, if not eliminate it.

Transamerica primarily relies on the Eighth Circuit Court of Appeals's precedent in *Marmo* for their argument for apportionment and that the risk of double recovery in this case is impermissible. In *Marmo*, the court upheld a district court's apportionment of copy and exemplification costs among thirteen plaintiffs, finding that it was "equitable" and "reduced the risk of duplicative cost recovery." *Marmo*, 457 F.3d at 764. The plaintiffs' cases in *Marmo* had been consolidated for pretrial purposes, and even though the plaintiffs would have separate trials, the court found that "many of the materials prepared for trial in [plaintiff Marmo's] action—such as graphic and visual aids, as well as materials prepared for electronic display—will be useful in the other twelve cases." *Id.* at 763.

While *Marmo* dealt with multiple plaintiffs that would potentially reuse items that were reflected as exemplification costs, in this case, Lincoln, rather than a separate party, would potentially reuse depositions and discovery documents for a separate case. This

distinction is important because, in *Marmo*, the plaintiffs would be treated inequitably if Marmo were able to recover all of her costs and the other plaintiffs were limited because of Marmo's recovery. However, if Lincoln recovers its costs in the '201 patent case, but does not recover the same costs in the '815 patent case, there will be no similar inequity—because Lincoln's recovery of costs for the '201 patent case will reduce its own recovery of costs in the '815 patent case, assuming the Northern District of Indiana does not award the costs twice.

Transamerica also provides authority from other district court's for its argument that the costs should be apportioned. Transamerica cites *Whirlpool Corp. v. LG Electronics, Inc.*, 2007 WL 2462659 (W.D.Mich. 2007), claiming that the court reduced an "award of deposition costs to account for time spent on issues related to a different case." Docket no. 327. In this case, Transamerica has not argued that any depositions, or portions of depositions, were not necessarily obtained for the '201 patent case and that they were only obtained for the '815 patent case[8]. Instead, Transamerica argues for apportionment of the costs, which is not what the *Whirlpool Corp.* court was doing when it excluded costs "to account for time spent on issues related to a different case"—the *Whirlpool Corp.* parties agreed that the costs should be excluded and the court excluded the costs because they were not necessarily obtained for use in the case. *Whirlpool Corp.*, 2007 WL 2462659 *5 ("Defendants agree with Plaintiff that costs associated with the Van Winkle deposition should be reduced by $2,270.15 to account for time spent on issues related to a different

---

[8] Transamerica does claim that every deposition containing the '815 patent case number was incurred for the '815 patent case. *See* docket no. 327, n. 1. However, the court believes that the parties' agreement to use depositions and document discovery for both cases makes the fact that one case number or the other is reflected on the deposition irrelevant.

case."). Transamerica also cites *Gross v. Town of Cicero*, 2007 WL 188038 (N.D.Ill 2007), where the court does halve the costs requested by the prevailing party. The prevailing party's case had been consolidated with another case for discovery purposes, and the other case had settled, "with each party bearing their own costs and fees." *Gross*, 2007 WL 188038 at *2. In other words, the costs were reduced by half due to a settlement that had occurred prior to the court's decision, which is not true of the case before this court. Had the parties previously settled the '815 patent case and agreed to pay their own costs, *Gross's* facts would be somewhat similar to the facts before the court. Since the '815 case is pending before another court, *Gross* is not particularly insightful.

Alternatively, Transamerica argues that this court could deny all costs incurred[9] in the '815 patent case. Docket no. 327 (citing *American Automotive Accessories, Inc. v. Fishman*, 991 F.Supp. 995 (N.D.Ill. 1998); *Sanders v. City of East Chicago*, 2007 WL 2156076 (N.D.Ind. 2007)). In *American Automotive*, the losing party objected to the prevailing party's transcript costs, claiming that the prevailing party had not presented evidence that the transcripts were necessarily obtained for use in the case at bar. *American Automotive Accessories, Inc.*, 991 F.Supp. at 997. The court refused to award costs for the depositions because they "occurred in a separate state court case and even before [the losing party] filed this action against [the prevailing party]." *Id.* Above, the court excluded the costs for discovery and depositions incurred before the '201 patent case was filed, and, again, Transamerica does not identify any depositions that they believe were

---

[9] As discussed above, Transamerica claims that every deposition containing the '815 patent case number was incurred for the '815 patent case. *See* docket no. 327, n. 1. Although the court found, above, that the parties' agreement to use depositions and document discovery for both cases makes the fact that one case number or the other is reflected on the deposition irrelevant, it will nevertheless analyze Transamerica's alternative argument.

not necessarily obtained for use in the '201 patent case. In the other case Transamerica cites, *Sanders*, the court awarded the prevailing party's requested deposition costs because it had "omitted costs incurred during the same deposition but related to a different case." *Sanders*, 2007 WL 2156076 at *1. The *Sanders* court found that the prevailing party only requested costs "associated solely with this litigation." *Id.* The court explained that this fact "bolstered" the finding that the costs were reasonable and necessary to the prevailing party in the case. *Id.* Although Lincoln's request for costs may have been similarly bolstered had they asked only for fees solely related to the '201 patent case, they are entitled to costs under § 1920 that are necessarily obtained for use in the case, *see Smith*, 436 F.3d at 889, and such bolstering was unnecessary.

For the above reasons, the court awards $56,933.98 in document discovery costs, out of the $59,554.37 requested in docket no. 322-2, pp. 7-8, and $30,442.62 in deposition costs out of the $32,696.97[10] requested in docket no. 322-2, pp. 1-5.

### C. Costs for Technology Consultants

#### 1. Arguments of the parties

Transamerica claims that costs relating to "pre-trial consulting" or "trial consulting," as well as the expenses for the consultant's travel, food, and lodging, are not properly characterized as exemplification costs, under 28 U.S.C. § 1920(4). The consultant was not necessary to present exhibits at trial, according to Transamerica.

---

[10] Lincoln's request for "Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case" is $37,531.40, as it also includes $4,834.43 for transcripts from hearings and trial before this court. Therefore, the total costs awarded under that line will be $35,277.05 ($30,442.62 plus $4,834.43).

Lincoln, first, defends its request for the consultant's costs by pointing out that Transamerica also had a third-party vendor to prepare exhibits and video for the jury. In addition, Lincoln claims that the court provided the capability for the parties to use technology and points out that the court communicated its appreciation to the parties for the way in which the material was presented. According to Lincoln, the technology vendor aided the jury in its understanding of a difficult case, which entitles it to reimbursement for the consultants fees as well as the costs stemming from the consultant's work.

### 2. *Analysis*

"A judge or clerk of any court of the United States may tax as costs . . . [f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). There is a circuit split concerning how broad to construe the term "exemplification" in § 1920(4)—some circuits apply the "broad" definition and some apply the "narrow" definition. *See Kinzenbaw*, 2006 WL 1096683 at *3. The broad definition is taken from a standard English dictionary. *Id.* For example, the Seventh Circuit Court of Appeals defined exemplification as "signif[ying] the act of illustration by example, a connotation broad enough to include a wide variety of exhibits and demonstrative aids." *Id.* (quoting *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427-29 (7th Cir. 2000)). The narrow definition, however, uses "Black's Law Dictionary, which defines exemplification as 'an official transcript of a public record, authenticated as a true copy for use as evidence.'" *Id.* (quoting *Summit Technology, Inc. v. Nidek Co., Ltd.*, 435 F.3d 1371, 1375 (Fed.Cir. 2006). The Eleventh Circuit Court of Appeals, for example, has denied costs for exemplification because "videotape exhibits and. . . computer animation are neither copies of paper nor exemplifications within the meaning of § 1920(4). . . ." *Id.* (quoting *Arcadian Fertilizer, L.P. v. MPW Industrial Services, Inc.*, 249 F.3d 1293, 1296-97 (11th Cir. 2001)). In

*Kinzenbaw*, the Federal Circuit Court of Appeals opined that the Eighth Circuit Court of Appeals would follow the narrow interpretation of exemplification, because "[c]ounsel has not brought to our attention, and we have been unable to find, a decision suggesting whether the Eighth Circuit would follow the broad or narrow interpretation of 'exemplification.'" *Id.* at *4. In the absence of authority, the *Kinzenbaw* court decided that its decision in *Summit Technology, Inc.* supported applying the narrow approach as it "quoted approvingly from Moore's Federal Practice for the proposition that 'a video exhibit or a physical model may not qualify as an "exemplification" if it is essentially explanatory and argumentative, serving merely as an aid to the argument of counsel and the explanations of expert witnesses.'" *Id.* (quoting *Summit Technology, Inc.* at 1377.

Since the *Kinzenbaw* decision, the Eighth Circuit Court of Appeals has provided additional insight concerning whether it would adopt the broad or narrow definition of exemplification. In *Marmo*, decided on August 3, 2006, several months after the Federal Circuit Court of Appeals's April 26, 2006, unpublished decision in *Kinzenbaw*, the Eighth Circuit Court of Appeals upheld apportionment costs as to one plaintiff, whose case had been one of thirteen joined for pretrial purposes, as discussed above. In its opinion, however, the court also cited the district court's reasoning that "many of the materials prepared for trial in this action—such as graphic and visual aids, as well as materials prepared for electronic display—will be useful in the other twelve cases." *Marmo*, 457 F.3d at 763. The Appellant's Brief, 2005 WL 5629586, provides additional information concerning the type of "exemplification" work that was performed at trial:

> [S]everal of these costs expended were for the imaging/scanning of documents, or for the copying of video-based exhibits onto media that could be presented to the jury. These costs were necessary to prepare exhibits for presentation at trial, as exhibits are now presented

> electronically to the Court and the jury, at least in Judge
> Smith-Camp's courtroom.

Appellant's Brief, 2005 WL 5629586. If the Eighth Circuit Court of Appeals's position is that the costs should be apportioned because "graphic and visual aids, as well as materials prepared for electric display" can be used in multiple cases, the court must also recognize these expenses as costs under § 1920—it would be nonsensical to apportion costs that are not even covered by § 1920. Because of this, the court disagrees with the Federal Circuit Court of Appeals's *Kinzenbaw* opinion insofar as it finds that the Eighth Circuit Court of Appeals would apply the narrow definition of "exemplification" found in Black's Law Dictionary, which restricts recovery of exemplification costs to only "an official transcript of a public record, authenticated as a true copy for use as evidence." *Kinzenbaw*, 2006 WL 1096683 at *3 (citations and quotation marks omitted).

Although the parties did not cite the *Kinzenbaw* decision, they do identify other cases that deal with whether costs for a third party technology vendor should be awarded to the prevailing party. *See Wheeler v. Carlton*, 2007 WL 1020481, *10-11 (E.D.Ark. 2007); *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427-29 (7th Cir. 2000). In *Wheeler*, the prevailing party requested $5,145.99 for third party vendor costs to "run the technology at trial." *Id.* at *10. The *Wheeler* court explained that, "[a]lthough the use of the [third party vendor] may have been more efficient and convenient to the parties, and at times even aided the [prevailing party's] presentation, the . . . use of the [third party vendor] was not necessary to present the exhibits and videotapes to the jury." *Id.* at *11.

As mentioned above, in *Cefalu*, the Seventh Circuit Court of Appeals applied the broad definition of exemplification. The court evaluated whether it should award costs "in excess of $27,000 for the cost of a computerized, multi-media system they employed to present their exhibits to the jury." *Cefalu*, 211 F.3d at 427. The district court had found

that "[a]lthough the multi-media presentation no doubt facilitated the *presentation* of various exhibits to the jury, it played no role whatsoever in the production of the exhibits used at trial." *Id.* (original emphasis). The court of appeals, recognizing that the district court judge "drew a line between the physical preparation of a trial exhibit, which would be compensable as exemplification, and the means chosen to present that exhibit to the jury, which she believed would not be [compensable]," agreed that § 1920(4) does not "obligate the losing party to pay for the victor's 'glitz '. . . ." *Id.* at 428. However, the court of appeals remanded the case as it was "not convinced that the line between producing an exhibit and presenting that exhibit to the court is the most appropriate one to draw[11]." *Id.* Instead, the court found that "[s]o long as the means of presentation

---

[11] The court explained that:

Enlarging a crucial document, for example, may be the only practical means of permitting a witness to point out the forensic features of that document. Imagine, for example, the jurors and the judge poring over individual, unenlarged copies of the document with bifocals and magnifying glasses as they try to keep pace with an expert's testimony identifying for them the unique whorls of a fingerprint or swirls of a signature. Yet, the enlargement is simply a bigger version of evidence that already exists; in effect, it serves only to present that evidence in a more effective manner. In a like vein, a witness may require the use of a transparency so that she can explain or highlight the pertinent aspects of a chart she has prepared. That transparency would be worthless without the overhead projector needed to display it to the judge and jury; but the projector plays no role in the production of the exhibit, it is simply the means of presentation. Allowing fees for the cost of preparing the transparency but not for renting the projector would in this sense be a highly formalistic distinction, as each is key to the illustrative function of the

(continued...)

furthers the illustrative purpose of an exhibit, . . . it is potentially compensable as exemplification." *Id.*

In this case, the third party technology vendors were used to prepare exhibits and video for the jury. Having sat through this nine day trial, I observed Lincoln's counsel using his laptop and the courtroom's technology, as retrofitted by the parties' technology consultants, to project exhibits and video on the projection screen positioned in front of the jury. Lincoln's counsel used the technology during his opening statement and closing argument, as well as during his direct and cross examinations. Preparing exhibits and video in order to be able to present them in today's high technology courtrooms, and specifically in this court's courtroom, "furthers the illustrative purpose of the exhibits," *see Cefalu*, 211 F.3d at 428, at least in a complex patent case containing hundreds of exhibits that would not reasonably be presented to the jury in paper form. The projector not only allowed the entire jury to see the same exhibit at the same time, but it also magnified the exhibit and allowed counsel to quickly highlight relevant portions of the exhibit. The use of courtroom technology in this case furthered the parties' ability to present the necessary exhibits in an efficient and effective manner, and the court finds the consultant's work was "exemplification" under § 1920.

A court's finding that the use of a third party technology vendor consisted of exemplification is only a threshold question in determining whether the costs are recoverable, as the exemplification services must also be "necessarily obtained for use in the case." 28 U.S.C. § 1920(4); *see also Goss International Corp. v. Tokyo Kikai*

---

[11](…continued)
     exhibit.

*Cefalu*, 211 F.3d at 428.

*Seisakusho, Ltd.*, 2004 WL 1234130 (N.D.Iowa 2004) ("'So long as the means of presentation furthers the illustrative purpose of an exhibit, . . . it is potentially compensable as exemplification' subject to the determination that the demonstrative aid was necessarily obtained for use in the case pursuant to 28 U.S.C. § 1920(4).") (quoting *Cefalu*, 211 F.3d at 428). Although courts may evaluate a multitude of factors when determining necessity, the *Cefalu* court suggests one factor might be "whether the nature and context of the information being presented genuinely called for the means of illustration that the party employed[:] . . . was the exemplification vital to the presentation of the information, or was it merely a convenience or, worse, an extravagance?" *Cefalu*, 211 F.3d at 428 (citing *McDowell v. Safeway Store, Inc.*, 758 F.2d 1293, 1294 (8th Cir. 1985) (per curium). For example, in *Goss International Corp.*, the court awarded $73,153.05 for the cost of exhibits and software "given the complexity of the issues presented at trial and the enormous amounts of information presented to the jury during trial." *Goss International Corp.*, 2004 WL 1234130 (N.D.Iowa 2004) at * 11.

As Lincoln points out, both parties utilized third party technology vendors and were able to utilize much of the technology available in the courtroom's "evidence corridor." *See* Kirk Schuler, *In the Vanguard of the American Jury: A Case Study of Jury Innovations in the Northern District of Iowa*, 28 NILULR 453, 458 (2008) (describing the "evidence corridor" in the Donald E. O'Brien courtroom in the Northern District of Iowa's federal courthouse, Sioux City, Iowa). In a trial with hundreds of exhibits, many of which were presented during trial through electronic means, the ability to put an exhibit on the court's projection screen is necessary for the efficient and effective presentation of a complex patent case. Even though Transamerica implies that the use of a third party technology vendor was "merely a convenience, or worst, an extravagance," docket no. 327 (citing *Wheeler*, 2007 WL 1020481), this court observed that Transamerica's counsel

was even more dependent on the assistance of its third party technology vendor than Lincoln. While Lincoln's counsel was able to present the exhibits using his laptop, presumably loaded onto his computer by Lincoln's third party technology vendor, Transamerica's counsel needed to tell its technology vendor what exhibit they desired on the projection screen and its vendor would project the exhibit for them. The technology vendors for both parties played a large role in their ability to clearly communicate such a complex patent case to the jury. In other words, the result of the technology consultant's efforts both "further[ed] the illustrative purpose of . . . exhibit[s]," *Cefalu*, 211 F.3d at 428, and were necessary "given the complexity of the issues presented at trial and the enormous amounts of information presented to the jury during trial." *Goss International Corp.*, 2004 WL 1234130 (N.D.Iowa 2004) at * 11.

Transamerica separately emphasizes that the consultant's travel, food, and lodging are not exemplification costs at all and are not authorized under § 1920. Although the nature of the case made necessary the use of a consultant to accomplish the required exemplification tasks, the court does not find a basis to award costs for all expenses incident to the exemplification. The United States Supreme Court has strictly limited the district court's ability to award costs to those set out in § 1920. *See Smith*, 436 F.3d at 889 ("costs must be set out in 28 U.S.C. § 1920 or some other statutory authorization") (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 438, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)). While Congress has provided specific statutory authority to award witness expenses, *see* 28 U.S.C. § 1821, it has not provided the necessary guidance to similarly apply § 1920's award of exemplification costs in today's high technology courtrooms. Although Lincoln may be disadvantaged in this case due to its technology vendor's itemized invoice, the court will not award the separate costs for travel, food, and lodging—the court denies Lincoln's request for travel, food, lodging, and all other

expenses that are not exemplification labor or materials, and awards only $25,192.50 in Lincoln's third party vendor consultant fees contained in docket no. 322-2, p. 84. The remaining $3,019.22[12], billed for travel, food, and lodging is not awarded.

### III. CONCLUSION

THEREFORE, the Clerk of Court is ordered to tax costs against Transamerica and in favor of Lincoln in the total amount of $135,336.50, comprised of the following costs:

1.      Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case:  $35,277.05;

2.      Fees and disbursements for printing:  $64,544.20;

3.      Fees for witnesses:  $4,452.50;

4.      Fees for exemplification and copies of papers necessarily obtained for use in the case:  $4,486.50; and

5.      Other costs:  $26,576.25[13].

---

[12]   Lincoln argues that these costs were for exemplification but listed them as "Other costs," in its Bill of Costs. Therefore, Lincoln's request for "Other costs" in the amount of $29,595.47, will be reduced to $26,576.25 ($29,595.47 minus $3,019.22).

[13]   As explained above, Lincoln included the third party vendor consultant's fees as "Other costs." However, they argued that the costs were actually exemplification costs, and therefore Lincoln could have reflected the costs under "Fees for exemplification and copies of papers necessarily obtained for use in the case." For simplicity's sake, the exemplification costs for the consultant's fees will remain under "Other costs," but will be reduced pursuant to the court's finding that $3,019.22 billed for travel, food, and lodging should not be awarded.

**IT IS SO ORDERED.**

**DATED** this 17th day of August, 2009.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA